Rost C. Olsen, Esq.
Nevada SBN 14410
*Address, Phone Number, and Email*
*Filed Under Seal Pending Court Order*

*Pro Se Plaintiff/Petitioner*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

**\* \* \***

ROST C. OLSEN,

        Plaintiff/Petitioner,

        v.

LINDA MCMAHON, in her official capacity as
Secretary of the United States Department of
Education, and the UNITED STATES
DEPARTMENT OF EDUCATION,

        Defendants/Respondents.

Case No.  3:26-cv-00543

**COMPLAINT FOR INJUNCTIVE AND
DECLARATORY RELIEF AND TO
REQUIRE PERFORMANCE OF A
CONTRACT, OR IN THE
ALTERNATIVE, PETITION FOR
WRIT OF MANDAMUS**

        Petitioner/Plaintiff, Rost C. Olsen ("Mr. Olsen"), in pro se, submits this Complaint for Injunctive and Declaratory Relief and to Require Performance of a Contract, or in the alternative, Petition for a Writ of Mandamus, against Respondents/Defendants Linda McMahon ("Secretary McMahon") in her official capacity as Secretary of the United States Department of Education ("DoEd"), and the DoEd. Mr. Olsen alleges the following:

**PRELIMINARY STATEMENT**

1. This is an action for unreasonable delay and/or unlawful denial of administrative action under the Administrative Procedure Act, breach of contract, declaratory and/or injunctive relief under both federal and Nevada law, or, in the alternative, a mandamus action asking

-1-

this Court to compel Secretary McMahon and DoEd to discharge the balance of Mr. Olsen's federally-held loans pursuant to what is commonly known as "PSLF Buyback."

### JURISDICTION AND VENUE

2. This Court has both subject matter jurisdiction and personal jurisdiction over the parties pursuant to 5 U.S.C. § 702, and 28 U.S.C. § § 1331 & 1367(a).

    a. This Court has subject matter jurisdiction over the federal law claims herein because they arise under the Constitution or laws of the United States.

    b. This Court has subject matter jurisdiction over the claims based on Nevada law because they share a "common nucleus of operative fact" with the federal law claims, such that they would ordinarily be expected to be heard in the same proceeding. *See, e.g., United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

3. The United States has waived its sovereign immunity for actions seeking non-monetary relief against its agencies and officers, such as DoEd and Secretary McMahon. *See* 5 U.S.C. § 702.

4. Venue lies in this district under 28 U.S.C. § 1391 (a)(2) and (e)(1)(B) & (C).

### THE PARTIES

5. Mr. Olsen is a resident of the State of Nevada.

6. The DoEd is an "agency" of the United States Government, as defined by 5 U.S.C. § 701(b)(1).

7. Secretary McMahon is the Secretary of DoEd, and is named solely in her official capacity.

///

///

**FACTUAL ALLEGATIONS**

*Background Facts/Loan Consolidation*

8. In 2007, Congress passed, and President Bush signed into law, the College Cost Reduction and Access Act of 2007. This Act implemented Public Service Loan Forgiveness ("PSLF"), which requires the Secretary of DoEd to cancel the remaining balance of a student loan borrower's PSLF-eligible student loans once the borrower has made 120 qualifying monthly payments after October 1, 2007. 20 U.S.C. 1087e(m).

9. In July 2016, Mr. Olsen executed a DoEd-approved Master Promissory Note ("MPN") in order to consolidate his student loans. The terms of the MPN mandate that the DoEd discharge the remaining balance of principal and interest on Mr. Olsen's student loans consolidated under the MPN once he qualifies for PSLF.

10. Mr. Olsen executed the MPN in the State of Nevada, and resided in the State of Nevada when he executed it.

11. In October 2023, Mr. Olsen applied for an Income Driven Repayment ("IDR") plan; in completing this application, Mr. Olsen used a DoEd-approved tool on DoEd's studentaid.gov website to import his then-most-recent tax return information for purposes of calculating his payment. His adjusted gross income ("AGI") on his 2022 tax return (filed early 2023) was $77,675. Mr. Olsen and his wife filed taxes jointly, and they had one dependent child, bringing the size of his household to 3 persons.

12. There have been no changes in the size of Mr. Olsen's household since he applied for the IDR plan in October 2023.

///

///

-3-

13. Mr. Olsen's application resulted in him being placed on the Saving on a Valuable Education Plan ("SAVE Plan"), with the SAVE Plan formula applied to his income and family size information yielding a monthly payment of $181.17.

*Administrative Issues and SAVE Forbearance*

14. Due to DoEd's servicer, MOHELA, revamping their online platform, Mr. Olsen was placed in an administrative forbearance in May and June 2024, resulting in $0 monthly payments for those two months, which DoEd counted toward the 120-payment PSLF threshold.

15. Due to confusion surrounding potential SAVE Plan litigation, Mr. Olsen also submitted a request to recalculate his payment in June 2024. While DoEd never sent Mr. Olsen any correspondence explicitly approving or denying the request prior to April 2026, DoEd did place Mr. Olsen's account on a two-month administrative forbearance for July and August 2024, which made those months eligible for PSLF credit. *See* 34 CFR § 685.209(b)(9). DoEd has appropriately counted those months toward Mr. Olsen's PSLF progress.

16. Due to a misunderstanding as to the forbearance in May and June 2024, Mr. Olsen made his usual monthly payments for those months, resulting in his account being paid ahead by $362.34.

17. Other litigation resulted in the SAVE Plan being enjoined beginning in July 2024. As a result, the DoEd placed all borrowers in the SAVE Plan on an administrative forbearance (the "SAVE Forbearance"). Due to the administrative forbearance from Mr. Olsen's June 2024 recalculation request, Mr. Olsen's account was placed in the SAVE Forbearance as of September 2024.

18. The resulting $0 payments during the months in the SAVE Forbearance do not count toward PSLF's 120-month forgiveness threshold.

19. Neither Secretary McMahon nor DoEd intends to take action to give borrowers working in public service PSLF credit for those $0 payments during the months of the SAVE Forbearance.

20. During the course of the SAVE Forbearance, DoEd's loan servicer MOHELA, at DoEd's direction, twice sent correspondence to Mr. Olsen delaying his deadline to recertify his income for the purposes of calculating his monthly payment for IDR purposes, ultimately delaying Mr. Olsen's income recertification deadline until October 2027.

21. Upon information and belief, in or around February 2025, DoEd, through MOHELA and its other servicers, delayed income recertification dates for borrowers enrolled in other IDR plans, as well as borrowers enrolled in the SAVE Plan.

22. Due to the delay in the recertification deadline until October 2027, had Mr. Olsen been on an IDR plan not in forbearance during the months of the SAVE Forbearance, and had Mr. Olsen not elected to recertify early, Mr. Olsen's monthly payment would have remained the same from the beginning of the SAVE Forbearance through at least through June, 2025.

*PSLF Buyback Application and Aftermath*

23. As of April 6, 2026, Mr. Olsen has accumulated 111 months of payment credit toward PSLF, needing only 9 more months of payment credit to achieve PSLF forgiveness.

24. Mr. Olsen has maintained PSLF-eligible employment throughout the SAVE Forbearance.

25. In or about July 2023, the DoEd promulgated regulations to enact PSLF Buyback, which allows student loan borrowers to "buy back" months their loans were in a forbearance that would not qualify for PSLF. In order to attain credit for those months to count toward PSLF: (1) the borrower must have held qualifying employment during those months; (2) the amount of the payment must be "equal to or greater than" what the borrower would

have paid on an eligible repayment plan for those months; and (3) buying back the months in forbearance would result in the borrower having the required 120 months for PSLF. *See* 34 CFR 685.219(g)(6).

26. As of April 13, 2026, DoEd's studentaid.gov website instructs borrowers to request an evaluation for PSLF Buyback eligibility through filling out and submitting the electronic PSLF Reconsideration Form. Upon evaluating the borrower's request, DoEd states, "If [the borrower is] eligible to buy back months, [DoEd] will send [the borrower] a buyback agreement with the amount to pay and instructions to pay the full amount within 90 days of [DoEd's] email to [the borrower] with the buyback agreement." *See* https://studentaid.gov/manage-loans/forgiveness-cancellation/public-service/public-service-loan-forgiveness-buyback (accessed April 13, 2026).

27. On April 6, 2026 after DoEd processed forms Mr. Olsen submitted to certify his employment, Mr. Olsen submitted a PSLF Reconsideration Form on the studentaid.gov website to request evaluation for a PSLF Buyback Agreement that same day, pursuant to DoEd's instructions.

28. DoEd sent Mr. Olsen an email acknowledging receipt of his Buyback Request the same day he submitted the request through the PSLF Reconsideration Form.

29. As of the date of this filing, DoEd has yet to send Mr. Olsen a proposed Buyback Agreement with a calculated amount to buy back the nine months he needs to achieve student loan forgiveness through PSLF.

30. The total remaining balance of principal and interest on Mr. Olsen's student loans exceeds the amount nine monthly payments under any PSLF-eligible repayment plan would cost.

///

# FIRST CLAIM FOR RELIEF

**Violations of APA, Unreasonable Delay and/or Unlawful Denial of Agency Action (5 U.S.C. § 706(1))**

*Unreasonable Delay*

31. Mr. Olsen incorporates by reference the statements made in paragraphs 1 to 30 herein.

32. Under the Administrative Procedure Act ("APA"), federal agencies, including Defendant DoEd under the direction of Secretary McMahon, are required to conclude matters pending before them "within a reasonable time." 5 U.S.C. § 555(b). The APA further provides that federal courts "shall . . . compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1).

33. Defendants DoEd and Secretary McMahon have a nondiscretionary duty to process Mr. Olsen's PSLF Buyback Request, and discharge the balance of his loans consolidated under the MPN upon payment of the calculated amount to buy back 9 months of the SAVE Forbearance, for which he held PSLF-qualifying employment. *See* 20 U.S.C. § 1087e(m) *and* 34 CFR 685.219(g)(6).

34. Defendants failed to comply with this obligation by failing to provide a proposed PSLF Buyback Agreement with a calculated amount to buy back the 9 months Mr. Olsen is entitled to buy back to reach the 120-payment PSLF threshold for more than 3 months.

35. Considering the relevant factors, such as:

    a. Defendants' lack of a reasoned system to process the backlog of PSLF Buyback Requests;

    b. the requirement that agencies carry out their tasks in a reasonable timeframe in absence of a statutory mandate issued by Congress;

    c.  the scope and the extent of interests harmed by Defendants' delay, including the health and welfare of Mr. Olsen and his family;

    d.  the lack of evidence that expediting DoEd's action would harm competing priorities, especially in light of Defendants having access to the data needed to make the calculations, and the ease in doing so compared to more complex tasks that other agencies carry out far more efficiently; and

    e.  the evidence put forth in public record by DoEd demonstrating the slow pace that DoEd has processed PSLF Buyback Requests in general, evincing bad faith,

Defendants' delay in this case is unreasonable. *See, e.g., Vaz v. Neal*, 33 F.4th 1131, 1137 (9th Cir. 2022) (citing *Telecommunications Research & Action Center v. FCC*, 750 F.2d 70, 79-80 (D.C. Cir. 1984)).

36. Granting relief would not cause Mr. Olsen to jump a queue of similarly situated petitioners because Defendants have not properly maintained such a queue, nor have they processed Mr. Olsen's PSLF Buyback Request in any proper order. *See, e.g., Gonzalez v. Cuccinelli*, 985 F.3d 357, 375-76 (4th Cir. 2021).

*Unlawful Denial of Agency Action*

37. Further, payments made under the SAVE Plan calculated using the SAVE formula prior to the 8th Circuit's preliminary injunction enjoining the SAVE Plan and its payment formula are PSLF-eligible. *See Missouri v. Biden*, 112 F.4th 531 (8th Cir. 2024); *see also Missouri v. Trump*, 128 F.4th 979 (8th Cir. 2025).

38. The 8th Circuit's preliminary injunction enjoining use of the SAVE formula is no longer in effect due to the conclusion of the litigation challenging the SAVE Plan. *See Missouri v. Trump*, 2026 WL 696770 (8th Cir. 2026).

39. The DoEd's settlement agreement resolving the SAVE Plan litigation in *Missouri v. Trump*, cited above, is silent as to the use of the SAVE formula for the purposes of calculating PSLF Buyback amounts for borrowers seeking to buy back PSLF credit for months from July 2024 through March 2026.

40. Absent the 8th Circuit's injunction in *Missouri v. Biden* and *Missouri v. Trump*, cited above, payments made under the SAVE Plan would have qualified for PSLF.

41. Despite the injunction enjoining the use of the SAVE formula now being dissolved, and the settlement agreement between the DoEd and other parties being silent as to its use in calculating PSLF Buyback amounts for the months from July 2024 through March 2026, DoEd asserts that the amount to buy back months beginning July 1, 2024 "cannot be based on the SAVE Plan formula." *See* https://studentaid.gov/announcements-events/idr-court-actions (accessed April 13, 2026).

42. In refusing to utilize the SAVE Formula to calculate the PSLF Buyback amount for the 9 months Mr. Olsen seeks to buy back, DoEd is refusing to base the Buyback amount on an amount "equal to…the amount [Mr. Olsen] would have paid at that time on a qualifying repayment plan." *See* 34 C.F.R. 685.219(g)(6)(i).

43. DoEd's unequivocal refusal to use the SAVE Formula to calculate PSLF Buyback amounts for months between July 2024 and March 2026 amounts to a refusal to base those amounts on the minimum payments a borrower would have had during those months on a qualifying repayment plan. This, in turn, denies Mr. Olsen the ability to buy back those months at the lowest amount which he is legally-entitled to pay to obtain PSLF credit for those months needed to get to the 120-payment PSLF threshold.

///

44. Without the above-mentioned injunction in place, Defendants have no legal basis to refuse to offer Buyback Agreements for the months between July 2024 and March 2026 utilizing the SAVE Formula.

45. The SAVE Formula would have provided Mr. Olsen the lowest payment for the months he seeks to buy back.

46. Defendants' failure to timely provide a proposed PSLF Buyback Agreement with a calculated amount for Mr. Olsen to pay to achieve the 9 months of PSLF credit he is entitled to purchase constitutes an agency action unlawfully withheld and/or unreasonably delayed in violation of 5 U.S.C. § 706(1).

47. Mr. Olsen is entitled to relief under the APA in the form of an order and/or injunction compelling Defendants to discharge the remaining balance of his student loans, upon DoEd's or its servicer's receipt of the sum equal to 9 months of the lowest IDR payment he would have had during the timeframe of September 2024-June 2025, minus the $362.34 amount Mr. Olsen had paid ahead in May-June 2024, and minus the costs Mr. Olsen incurred to bring this suit.

**SECOND CLAIM FOR RELIEF**

**Nevada State Law Claim, Breach of Contract**

48. Mr. Olsen incorporates by reference the statements made in paragraphs 1 to 47 herein.

49. The MPN Mr. Olsen executed in July 2016 constitutes a valid contract between Mr. Olsen and the DoEd.

50. The MPN permits Mr. Olsen to seek remedies under state law, so long as the remedies are not preempted by federal law.

51. The MPN incorporates PSLF by reference.

*Anticipatory Breach*

52. The MPN mandates Defendants discharge the remaining balance of Mr. Olsen's student loans consolidated under the MPN once Mr. Olsen achieves 120 PSLF-eligible payments.

53. As stated previously, payments made under the SAVE Plan calculated using the SAVE formula prior to the 8th Circuit's preliminary injunction enjoining the SAVE Plan and its payment formula are PSLF-eligible. *See Missouri v. Biden*, 112 F.4th 531 (8th Cir. 2024); *see also Missouri v. Trump*, 128 F.4th 979 (8th Cir. 2025).

54. The 8th Circuit's preliminary injunction enjoining use of the SAVE formula is no longer in effect due to the conclusion of the litigation challenging the SAVE Plan. *See Missouri v. Trump*, 2026 WL 696770 (8th Cir. 2026).

55. The DoEd's settlement agreement resolving the SAVE Plan litigation in *Missouri v. Trump*, cited above, is silent as to the use of the SAVE formula for the purposes of calculating PSLF Buyback amounts for borrowers seeking to buy back PSLF credit for months from July 2024 through March 2026.

56. Absent the 8th Circuit's injunction in *Missouri v. Biden* and *Missouri v. Trump*, cited above, payments made under the SAVE Plan would have qualified for PSLF.

57. Despite the injunction enjoining the use of the SAVE formula now being dissolved, and the settlement agreement between the DoEd and other parties being silent as to its use in calculating PSLF Buyback amounts for the months from July 2024 through March 2026, DoEd asserts that the amount to buy back months beginning July 1, 2024 "cannot be based on the SAVE Plan formula." *See* https://studentaid.gov/announcements-events/idr-court-actions (accessed April 13, 2026).

///

58. In refusing to utilize the SAVE Formula to calculate the PSLF Buyback amount for the 9 months Mr. Olsen seeks to buy back, DoEd is refusing to base the Buyback amount on an amount "equal to…the amount [Mr. Olsen] would have paid at that time on a qualifying repayment plan." *See* 34 C.F.R. 685.219(g)(6)(i).

59. DoEd's unequivocal refusal to use the SAVE Formula to calculate PSLF Buyback amounts for months between July 2024 and March 2026 amounts to a refusal to base those amounts on the minimum payments a borrower would have had during those months on a qualifying repayment plan. This, in turn, denies Mr. Olsen the ability to buy back those months at the lowest amount which he is entitled to pay to obtain PSLF credit for those months needed to get to the 120-payment PSLF threshold.

60. While the MPN entitles Mr. Olsen to the discharge of his loan balances upon attaining 120 PSLF payments, DoEd's actions prohibit Mr. Olsen from attaining 120-months of PSLF credit under the most favorable conditions to which he is legally entitled to receive that credit. Since the MPN incorporates PSLF by reference, the DoEd's refusal to utilize the SAVE Formula for PSLF Buyback for the months Mr. Olsen seeks to buy back, accordingly, constitutes anticipatory breach of the MPN governing Mr. Olsen's student loan balance.

*Violation of Implied Covenant of Good Faith and Fair Dealing*

61. Under Nevada law, every contract has an implied covenant of good faith and fair dealing. *See, e.g., APCO Constr. Inc. v. Helix Electric of Nev., LLC,* 138 Nev. 282, 285, 509 P.3d 49, 53 (Nev. 2022) ("*APCO*") (*quoting A.C. Shaw Constr., Inc. v. Washoe County,* 105 Nev. 913,914, 784 P.2d 9, 10 (Nev. 1989)). A party may prevail on a claim of breaching the covenant of good faith and fair dealing under Nevada law, even without showing a

defendant breached an express term of the underlying contract. *See id.* (*quoting Nev. Dep't of Transp. v. Eighth Judicial Dist. Court,* 133 Nev. 549, 555, 402 P.3d 677, 683 (Nev. 2017) ("*NDOT*")).

62. By delaying the processing of Mr. Olsen's PSLF Buyback Request and failing to use the SAVE Formula to calculate the amount Mr. Olsen would owe to buy back the months Mr. Olsen seeks PSLF credit for, DoEd is committing arbitrary and/or unfair acts that work to Mr. Olsen's disadvantage. *See APCO,* 138 Nev. at 285, 509 P.3d at 53 (*quoting NDOT,* 133 Nev. at 555, 402 P.3d at 683).

63. Accordingly, Defendants' actions result in a breach of the MPN's implied covenant of good faith and fair dealing.

64. Thus, on the basis of anticipatory breach, and/or breach of the implied covenant of good faith and fair dealing, Defendants are in breach of the MPN. As Defendants' sovereign immunity is only waived to the extent Mr. Olsen seeks non-monetary damages, *see* 5 U.S.C. § 702, Mr. Olsen is, in turn, entitled to specific performance and/or injunctive relief to enforce the MPN.

**THIRD CLAIM FOR RELIEF**

**(Declaratory Relief (28 U.S.C. § 2201(a); Nev. Rev. Stat. §§ 30.010 *et seq.*))**

65. Mr. Olsen incorporates by reference the statements made in paragraphs 1 to 64 herein.

66. Under 28 U.S.C. § 2201(a), this Court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

67. Additionally, Nevada law permits any person with an interest in a written contract to obtain a determination of the contract's construction or validity, and "a declaration of rights, status

-13-

or other legal relations thereunder." Nev. Rev. Stat. § 30.040(1). Further, Nevada law permits the Court to construe a contract regardless of whether a party is actually in breach. *See* Nev. Rev. Stat. § 30.050.

68. Mr. Olsen is entitled to declaratory relief from this Court in the form of an order determining that the DoEd's actions and/or inactions as they apply to the discharge of his student loans are in violation of the law.

69. Specifically, whether on the basis of unreasonable delay or unlawful denial in violation of the APA, on the basis of breach of contract regarding the MPN, on the basis of construing and declaring rights under the MPN, or on any combination of those bases, the Court may enter an order declaring Mr. Olsen entitled to the relief he seeks. Namely, the Court can declare Mr. Olsen entitled to discharge of the balance of his student loans upon payment of what he would have paid during the first nine months his loans were in the SAVE Forbearance (if using the SAVE formula, $181.17 x 9 = $1,630.53), minus the amount he paid ahead ($362.34) and the costs incurred to bring this suit (to be determined). If using the SAVE formula, this would result in a sum of $1,268.19 prior to deducting costs of suit.

**ALTERNATIVE, FOURTH CLAIM FOR RELIEF**

**(Writ of Mandamus (28 U.S.C. §§ 1361, 1651))**

70. Mr. Olsen incorporates by reference the statements made in paragraphs 1 to 60 herein.

71. In the alternative, this Court has the authority to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." *See* 28 U.S.C. § 1651(a). This Court also has "original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." *See* 28 U.S.C. § 1361.

-14-

72. The PSLF Buyback Regulation entitles Mr. Olsen to PSLF credit for the nine months of the SAVE Forbearance needed to attain the 120-month threshold for PSLF upon making a payment equal to or greater than what he would have paid under a PSLF-qualifying plan during those months. *See* 34 CFR 685.219(g)(6).

73. Upon attaining the 120-month PSLF threshold, Secretary McMahon has a discrete legal duty to discharge the remaining balance of Mr. Olsen's student loans. *See* 20 U.S.C. § 1087e(m).

74. Should the Court not find any of the other bases asserted in this Complaint as proper grounds for relief, Mr. Olsen would not have any other plain, speedy, and/or adequate remedy available to attain the relief he seeks.

75. In such an instance, the statutory authority combined with the PSLF Buyback regulations clearly and indisputably entitle Mr. Olsen to an issuance of a writ to compel Secretary McMahon and DoEd to discharge the balance of his student loans upon Mr. Olsen paying what he would have paid during the first nine months his loans were in the SAVE Forbearance (if using the SAVE formula, $181.17 x 9 = $1,630.53), minus the amount he paid ahead ($362.34) and the costs incurred to bring this suit (to be determined). If using the SAVE formula, this would result in a sum of $1,268.19 prior to deducting costs of suit.

76. Further, such relief would be appropriate in such an instance, as it would be narrowly tailored to the facts of this case, directly affecting only the parties to this matter.

**PRAYER FOR RELIEF**

Accordingly, Mr. Olsen respectfully requests this Court:

1. Issue an order and/or injunction compelling the DoEd and Secretary McMahon to comply with their duties under regulation and statute to provide the unlawfully withheld or

-15-

unreasonably delayed Buyback Agreement to Mr. Olsen and to discharge the balance of his direct student loans upon receipt of the lowest-required payment by Mr. Olsen to attain PSLF credit for nine months spent in the SAVE Forbearance, calculated using his last-certified AGI provided in October 2023.

2. Issue an order and/or injunction compelling the DoEd and Secretary McMahon to specifically perform their duties under the MPN by performing their regulatory and statutory to provide the unlawfully withheld or unreasonably delayed Buyback Agreement to Mr. Olsen, and to discharge the balance of his direct student loans upon receipt of the lowest-required payment by Mr. Olsen to attain PSLF credit for nine months spent in the SAVE Forbearance, calculated using his last-certified AGI provided in October 2023.

3. Issue an order declaring that:

    a. Mr. Olsen is entitled to receive a Buyback Agreement with a payment amount calculated from the financial information contained in his last-processed Recertification; and

    b. Mr. Olsen is entitled to the discharge of the balance of his direct student loans upon receipt of his payment by either DoEd or the DoEd's contracted servicer MOHELA.

4. Alternatively, issue a writ of mandamus requiring the DoEd to issue the unlawfully withheld or unreasonably delayed Buyback Agreement with a payment amount calculated using financial information from Mr. Olsen's last Recertification in October 2023, and directing Secretary McMahon to discharge the remaining balance of Mr. Olsen's direct student loans upon receipt of Mr. Olsen's payment by the DoEd or the DoEd's contracted servicer.

5. Provide for expeditious proceedings in this action.

6.  Award costs and reasonable attorneys fees incurred in this action; and

7.  Grant such other relief as this Court may deem just and proper.

Dated this 16th day of July, 2026.

ROST C. OLSEN


                           _____*/s/ Rost C. Olsen*_____
                           Rost C. Olsen, Esq.
                           Nevada SBN 14410

                           Petitioner/Plaintiff In Pro Se

-17-