# APPENDIX OF EXHIBITS

# Motion for Preliminary Injunction

# *Olsen v. Dep't. of Ed.*, 3:26-cv-00543-ART-CSD

Pltf. 0001

# EXHIBIT 1

# Declaration of Rost C. Olsen in support of Motion for Preliminary Injunction, Aug. 5, 2026

Pltf. 0002

Rost C. Olsen, Esq.
Nevada SBN 14410
*Address, Phone Number, and Email*
*Filed Under Seal Pending Court Order*

*Pro Se Plaintiff/Petitioner*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| ROST C. OLSEN,<br><br>       Plaintiff/Petitioner,<br><br>    v.<br><br>LINDA MCMAHON, in her official capacity as Secretary of the United States Department of Education, and the UNITED STATES DEPARTMENT OF EDUCATION,<br><br>       Defendants/Respondents. | Case No.  3:26-cv-00543-ART-CSD<br><br>**DECLARATION OF ROST C. OLSEN IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION** |

I, Rost C. Olsen, declare the following:

1.  I am at least 18 years old, of sound mind, and competent to testify to the matters contained in this Declaration.

2.  I am a licensed attorney in good standing in the State of Nevada.

3.  I have personal knowledge of the facts stated in this Declaration, and of their truthfulness, unless identified as stated upon information and belief, in which case I believe them to be true.

4.  I have prepared this Declaration in support of the Motion for Preliminary Injunction ("Motion") filed in the above-captioned matter.

-1-

5. In July of 2016, I executed a U.S. Department of Education ("DoEd")-approved Master Promissory Note ("MPN") for the purposes of consolidating my existing student loans into Consolidated Direct Loans under the DoEd's Direct Loan program. A true and correct copy of that MPN is included in the Appendix to the Motion as Exhibit 2, with the only modifications to that copy of the MPN being the redactions I applied for purposes of filing.

6. As part of DoEd's requirements for Income Driven Repayment ("IDR") programs, I recertified my income in October 2023 to apply for the Saving on a Valuable Education repayment plan (the "SAVE Plan"). My SAVE Plan application resulted in a monthly student loan payment of $181.17. The screenshot included in the Appendix to the Motion as Exhibit 3 is a true and correct copy of the information I accessed and captured from my account on StudentAid.gov on August 3, 2026, and accurately reflects the monthly payment my October 2023 SAVE Plan application yielded.

7. At the time of my October 2023 SAVE Plan application, my household consisted of my wife, our minor daughter, and myself, bringing our household to 3 persons. There have been no changes in the size to our household since.

8. Due to confusion surrounding a forbearance which was ultimately eligible as time towards Public Service Loan Forgiveness ("PSLF") for the months of May and June 2024 due to DoEd servicer MOHELA updating their platform, I ended up paying ahead for those months, even though no payment was ultimately due. This resulted in my account being paid ahead by $362.34.

9. Furthermore, with confusion surrounding SAVE Plan litigation in June of 2024, I submitted a request to recalculate my student loan payment. DoEd did not ask me to

Pltf. 0004

recertify my income at that time, but due to that request, upon information and belief I was put on a PSLF-eligible forbearance for the months of July and August 2024 pursuant to 34 CFR § 685.205(b)(9) and .219(c)(2)(v)(H). Accordingly, while the forbearance due to the enjoining of the SAVE Plan in other litigation (the "SAVE Forbearance") started in July of 2024, it appears that my student loans weren't placed in the SAVE Forbearance until September of 2024. The document in Exhibit 4 of the Appendix to the Motion contains a true and accurate screenshot of the information contained on my StudentAid.gov account showing when my account was placed into the SAVE Forbearance. Every month since 9/2024 appears on my accounts as "ineligible" for credit toward PSLF due to the SAVE Forbearance. Also included in Exhibit 4 is a true and correct copy of an account history of my student loans from MOHELA I obtained from MOHELA on August 3, 2026.

10. During the course of the SAVE Forbearance, DoEd, through MOHELA, sent me two letters delaying the time by which I had to recertify my income for IDR purposes, ultimately delaying that deadline until October 24, 2027. Exhibit 5 in the Appendix to the Motion contains true and correct copies of these two letters that I received from MOHELA, the only alterations being the redactions I applied for purposes of filing.

11. Further, Exhibit 6 in the Appendix to the Motion contains a true and correct copy of information I captured in the form of a screenshot from the StudentAid.gov website on January 6, 2026, from the following source URL: https://studentaid.gov/announcements-events/idr-court-actions.

12. In early April of 2026, I submitted employment certification forms to DoEd for the purposes of updating my employment information with DoEd and updating my PSLF

Pltf. 0005

Qualifying Payment count. Exhibit 7 in the Appendix to the Motion contains a true and correct copy of the PSLF Qualifying Payment Update I received from DoEd on or about April 6, 2026, the only alterations thereto being the redactions I applied for purposes of filing.

13. Having attained the number of months in public service employment where I would be able to attain 120 months of PSLF credit through the PSLF Buyback mechanism, I applied for PSLF Buyback as directed on StudentAid.gov. Exhibit 8 in the Appendix to the Motion contains a true and correct copy of the email I received from DoEd confirming receipt of my PSLF Buyback Request, the only alteration thereto being the redaction I applied for purposes of filing.

14. Exhibit 9 in the Appendix to the Motion contains true and correct copies of Employment Certification Forms I submitted to DoEd, the only alterations thereto being the redactions I applied for purposes of filing.

15. Exhibit 10 in the Appendix to the Motion contains a true and correct copy of information I captured from StudentAid.gov addressing the use of the SAVE Formula for purposes of PSLF Buyback on April 13, 2026, at the source URL: https://studentaid.gov/announcements-events/idr-court-actions. That information still appeared on StudentAid.gov as of when I accessed the website on July 20, 2026.

16. Approximately 45 days after submitting my PSLF Buyback request, I had received no response from DoEd regarding the status of that request. Having heard anecdotally that PSLF Buyback Requests had been taking an exorbitant amount of time to process, I decided to send DoEd a demand letter to process my Buyback Request using calculations I provided under the SAVE Plan formula.

Pltf. 0006

17. Exhibit 11 in the Appendix to the Motion contains a true and correct copy of the demand letter I sent to DoEd, the only alterations thereto being the redactions I applied for the purposes of filing and the omission of the exhibits I sent with the letter.

18. I did not receive any response from DoEd to my demand letter by the date stated within it. Accordingly, I filed this suit.

19. Exhibit 12 in the Appendix to the Motion contains true and correct copies of emails I received from MOHELA on July 1 & 2, 2026, the only alterations thereto being the redactions I applied for the purposes of filing.

20. Exhibit 13 in the Appendix to the Motion contains true and correct copies of screenshots I obtained by inputting my latest tax return and household size information into the Loan Repayment Calculator on August 3, 2026, at the source URL: https://studentaid.gov/repayment-calculator/plan-options.

21. Exhibit 14 in the Appendix to the Motion contains true and correct copies of screenshots of correspondence between MOHELA and me as to leaving my student loan accounts in forbearance pending outcome of my PSLF Buyback Request.

22. My wife and I are the parents of an active six-year-old girl with autism.

23. As our daughter, Dorothy (also known as "Dottie"), has grown up, it has become apparent that our current house is not ideal for her special needs over the long term. With her coping mechanisms requiring a release of energy, such as what is commonly known as "stimming," or being able to run freely in space, along with her verbal limitations, it is surprisingly hard to accommodate those needs in our 1,300 square foot house when two adults and family pets also occupy the residence.

-5-

Pltf. 0007

24. With these considerations in mind, our family is seeking to move in the next 9-18 months in order to be in a location that is more suited to Dottie's special needs, and more easily accessible to the services Dottie uses.

25. Further, the location of our home is still a distance away from the services Dottie utilizes to treat her autism, such as her specialized school program and the speech therapist with whom she is established.

26. The housing market seems to be getting more expensive by the day, and having my student loans balances on my credit report will negatively affect my creditworthiness, and thus, my ability to qualify for a sufficient home mortgage to obtain a new home to more fully meet my family's needs.

27. I have saved money to satisfy what my PSLF Buyback obligation would be according to my calculations, and I am ready and able to do so.

28. Exhibit 15 in the Appendix to the Motion contains a true and correct copy of the Settlement Agreement Resolving *Missouri v. Trump*, E.D. Missouri, case no. 4:24-cv-520-JAR, which I downloaded from the following URL: https://www.ed.gov/media/document/missouri-settlement-112689.pdf. I was able to access the document at that URL on August 5, 2026.

29. Exhibit 16 in the Appendix to the Motion is a summary of data I pulled from status reports filed in *American Federation of Teachers v. U.S. Department of Education*, 1:25-cv-00802 (D.D.C. 2025) ("*AFT*"), and the calculation of the average number of PSLF Buyback Requests decided per month as stated therein is true and correct to the best of my knowledge. Exhibit 17 in the Appendix to the Motion contains true and correct copies of ECF No.'s 36, 37, 38, 39, 42, 58, 60, 61, 62, 63, and 64 filed in *AFT*,

-6-

Pltf. 0008

which I accessed through PACER, and which contain the data I used to create Exhibit 16.

30. Exhibit 18 in the Appendix to the Motion contains a true and correct copy of IRS filing statistics as of the week ending May 8, 2026, which I obtained from the IRS website at https://www.irs.gov/newsroom/filing-season-statistics-for-week-ending-may-8-2026.

31. Exhibit 19 in the Appendix to the Motion contains a true and correct copy in screenshot form of information I obtained from the Office of Personnel Management website at https://data.opm.gov/explore-data/analytics/workforce-size-and-composition on August 3 & 4, 2026.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 5th day of August, 2026.

ROST C. OLSEN


_____/s/ Rost C. Olsen_____
Rost C. Olsen, Esq.
Nevada SBN 14410
Plaintiff/Petitioner In Pro Se

-7-

Pltf. 0009

# EXHIBIT 2

# Master Promissory Note



# Federal Direct Consolidation Loan Application and Promissory Note
## William D. Ford Federal Direct Loan Program

OMB No. 1845-0053
Form Approved
Exp. Date 04/30/2016

**WARNING:** Any person who knowingly makes a false statement or misrepresentation on this form or any accompanying documentation is subject to penalties that may include fines, imprisonment, or both, under the U.S. Criminal Code and 20 U.S.C. 1097.

**BEFORE YOU BEGIN**

Read the Instructions for Completing the Federal Direct Consolidation Loan Application and Promissory Note ("Instructions").
**NOTE: PAGES 1 THROUGH 5 MUST BE SUBMITTED FOR YOUR LOAN REQUEST TO BE PROCESSED.**

**BORROWER INFORMATION**

1. Last Name: Olsen    First Name: Rost    Middle Initial: C

2. Former Name(s):

3. Social Security Number: ▓▓▓▓▓

4. Date of Birth: ▓▓▓▓

5. Permanent Address (Street, City, State, Zip Code) (if P.O. box or general delivery, see Instructions):

▓▓▓▓▓▓▓▓

6. Area Code/Telephone Number: ▓▓▓▓▓

7. E-Mail Address (Optional): ▓▓▓▓▓

8. Driver's License State and Number: ▓▓ ▓ ▓▓ ▓▓▓

9. Employer's Name and Address (Street, City, State, Zip Code):

White Pine County DA 801 Clark Street Ste 3 , Ely, NV, 89301

10. Work Area Code/Telephone Number:

**REFERENCE INFORMATION**

List 2 persons with different U.S. addresses who do not live with you and who have known you for at least 3 years.

11. Last Name: Olsen    First Name: Maxwell    Middle Initial: B

Permanent Address (Street, City, State, Zip Code):

▓▓▓▓▓▓▓▓

E-Mail Address (Optional): ▓▓▓▓▓

Area Code/Telephone Number: ▓▓▓▓

Relationship to You: Brother

12. Last Name: Olsen    First Name: Sylvia    Middle Initial: L

Permanent Address (Street, City, State, Zip Code):

▓▓▓▓▓▓

E-Mail Address (Optional):

Area Code/Telephone Number: ▓▓▓▓

Relationship to You: MOTHER

Pltf. 0011

Borrower's Name: Rost Olsen _____    Social Security Number: ██████████ _____

## LOANS YOU WANT TO CONSOLIDATE

*Read the Instructions before completing this section.* List each federal education loan that you want to consolidate, including any Direct Loan Program loans that you want to include in your Direct Consolidation Loan. If you need more space to list loans, use the Additional Loan Listing Sheet included with this Note. List each loan separately.

We will send you a notice before we consolidate your loans. This notice will **(1)** provide you with information about the loans and payoff amounts that we have verified, and **(2)** tell you the deadline by which you must notify us if you want to cancel the Direct Consolidation Loan, or if you do not want to consolidate one or more of the loans listed in the notice. The notice will include information about loans that you listed in this section. If you have additional loans with a holder of a loan that you listed in this section, the notice may also include information about those additional loans. **See the Instructions for more information about the notice we will send.**

### IN THIS SECTION, LIST ONLY LOANS THAT YOU WANT TO CONSOLIDATE

| 13. Loan Code (see Instructions) | 14. Loan Holder/Servicer Name, Address, and Area Code/Telephone Number (see Instructions) | 15. Loan Account Number | 16. Estimated Payoff Amount |
|---|---|---|---|
| A | DEPT OF ED/GREAT LAKES<br>PO BOX 7860<br>MADISON, WI 537077860 | ████████5300 | $8,799.00 |
| G | DEPT OF ED/GREAT LAKES<br>PO BOX 7860<br>MADISON, WI 537077860 | ████████5300 | $18,047.00 |
| D | DEPT OF ED/GREAT LAKES<br>PO BOX 530229<br>ATLANTA, GA 303530229 | ████████5001 | $9,069.00 |
| L | DEPT OF ED/GREAT LAKES<br>PO BOX 530229<br>ATLANTA, GA 303530229 | ████████5001 | $15,010.00 |
| D | DEPT OF ED/GREAT LAKES<br>PO BOX 530229<br>ATLANTA, GA 303530229 | ████████5001 | $8,723.00 |
| L | DEPT OF ED/GREAT LAKES<br>PO BOX 530229<br>ATLANTA, GA 303530229 | ████████001 | $12,822.00 |
| I | DEPT OF ED/GREAT LAKES<br>PO BOX 530229<br>ATLANTA, GA 303530229 | 5████████5001 | $7,104.00 |
| L | DEPT OF ED/GREAT LAKES<br>PO BOX 530229<br>ATLANTA, GA 303530229 | ████████5002 | $2,928.00 |
| E | DEPT OF ED/GREAT LAKES<br>PO BOX 530229<br>ATLANTA, GA 303530229 | ████████8300 | $1,886.00 |

**17. Grace Period End Date.** If any of the loans you want to consolidate are in a grace period, you can have the processing of your Direct Consolidation Loan delayed until the end of your grace period by entering your expected grace period end date in the space provided.

If you leave this item blank, we will begin processing your Direct Consolidation Loan as soon as we receive this Note and any other required documents. Any loans listed in the **Loans You Want to Consolidate** section that are in a grace period will enter repayment immediately upon consolidation. You will then lose the remaining portion of the grace period on those loans.

**Expected Grace Period End Date (month/year):** 10/2016 _____

Pltf. 0012

Borrower's Name: Rost Olsen _____    Social Security Number: ███████ _____

## LOANS YOU DO NOT WANT TO CONSOLIDATE

***Read the Instructions before completing this section.*** List all education loans that you are not consolidating, but want us to consider when we calculate the maximum repayment period for your Direct Consolidation Loan (see Item 11 of the **Borrower's Rights and Responsibilities Statement** that accompanies this Note). Remember to include any Direct Loan Program loans that you do not want to consolidate. If you need more space to list loans, use the Additional Loan Listing Sheet included with this Note. List each loan separately.

We will send you a notice before we consolidate your loans. This notice will **(1)** provide you with information about the loans and payoff amounts that we have verified, and **(2)** tell you the deadline by which you must notify us if you want to cancel the Direct Consolidation Loan, or if you do not want to consolidate one or more of the loans listed in the notice. The notice may also include information about any loans you listed in this section, but these loans listed will **not** be consolidated. **See the Instructions for more information about the notice we will send.**

### IN THIS SECTION, LIST ONLY LOANS THAT YOU DO NOT WANT TO CONSOLIDATE

| 18. Loan Code (see Instructions) | 19. Loan Holder/Servicer Name, Address, and Area Code/Telephone Number (see Instructions) | 20. Loan Account Number | 21. Current Balance |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |

## REPAYMENT PLAN SELECTION

To understand your repayment plan options, carefully read the repayment plan information in Item 11 of the **Borrower's Rights and Responsibilities Statement** that accompanies this Note and in any supplemental materials you receive with this Note. Then select a repayment plan for your Direct Consolidation Loan:

- To select the Standard Repayment Plan, the Graduated Repayment Plan, or the Extended Repayment Plan, complete the **Repayment Plan Selection** form that accompanies this Note.
- To select the Income-Based Repayment Plan (IBR Plan), the Pay As You Earn Repayment Plan (Pay As You Earn Plan), or the Income-Contingent Repayment Plan (ICR Plan), visit StudentLoans.gov to complete the application online or complete the **Income-Driven Repayment Plan Request** form that accompanies this Note.

**NOTE: You must** select the IBR Plan, the Pay As You Earn Plan, or the ICR Plan for repayment of your Direct Consolidation Loan if:

1. You want to consolidate a defaulted loan and you have not made a satisfactory repayment arrangement with your current loan holder(s); or
2. You are consolidating a delinquent Federal Consolidation Loan that the lender has submitted to the guaranty agency for default aversion, or you are consolidating a defaulted Federal Consolidation Loan, and you are not consolidating any additional eligible loans.

## BORROWER UNDERSTANDINGS, CERTIFICATIONS, AND AUTHORIZATIONS

22. I understand that:

**A.** Applying for a Direct Consolidation Loan does not obligate me to agree to take the loan. The U.S. Department of Education (ED) will provide me with:

- The deadline by which I must notify ED if I want to cancel the Direct Consolidation Loan, or if I do not want to consolidate any of the loans that ED has verified; and
- A notice containing information about the loans and payoff amounts that ED has verified with the holders of my loans or through ED's National Student Loan Data System (NSLDS) before the actual payoffs occur.

The notice that ED sends will include information about the loans I listed in the **Loans You Want to Consolidate** section of this Note. If I have additional loans that are with a holder of a loan listed in the **Loans You Want to Consolidate** section, but I did not list those loans in that section, the notice may also include information about those additional loans. **I must inform ED by the deadline specified in the notice if I do not want all of the loans listed in the notice to be consolidated.**

The notice that ED sends may also include information about loans I listed in the **Loans You Want to Consolidate** section of this Note, but these loans will **not** not be consolidated.

Pltf. 0013

Borrower's Name: Rost Olsen _____ Social Security Number: ████████ _____

**BORROWER UNDERSTANDINGS, CERTIFICATIONS, AND AUTHORIZATIONS (CONTINUED)**

**B.** If ED accepts this application for a Direct Consolidation Loan, I understand that ED will send funds to the holders of the loans that I want to consolidate to pay off those loans. The amount of my Direct Consolidation Loan will be the sum of the balances of my outstanding eligible loans that I have chosen to consolidate. The payoff amount may be greater than or less than the estimated total balance I have indicated in the **Loans You Want to Consolidate** section.

The outstanding balance on each loan to be consolidated includes unpaid principal, unpaid accrued interest and late charges as defined by federal regulations and as certified by the loan holder. Collection costs may also be included. For a Direct Loan Program or Federal Family Education Loan (FFEL) Program loan that is in default, the amount of any collection costs that may be included in the payoff balances of the loans is limited to a maximum of 18.5% of the outstanding principal and interest. For any other defaulted federal education loans, all collection costs that are owed may be included in the payoff balances of the loans.

**C.** If the amount ED sends to my loan holders is more than the amount needed to pay off the balances of the selected loans, the holders will refund the excess amount to ED and this amount will be applied against the outstanding balance of my Direct Consolidation Loan. If the amount that ED sends to my holders is less than the amount needed to pay off the balances of the loans selected for consolidation, ED will include the remaining amount in my Direct Consolidation Loan.

**D.** If I am consolidating loans made under the FFEL, Direct Loan, or Federal Perkins Loan (Perkins Loan) programs, the outstanding balance of my Direct Consolidation Loan counts against the applicable aggregate loan limits for each type of loan. Under the Act ("the Act" is defined under "Governing Law" in the Note Terms and Conditions section of this Note), the percentage of the original amount of my Direct Consolidation Loan that is attributable to each loan type is counted against the loan limit for that type of loan.

**E.** I must agree to repay my Direct Consolidation Loan under the IBR Plan, the Pay As You Earn Plan, or the ICR Plan if:

- I am consolidating a defaulted loan and I have not made a satisfactory repayment arrangement with the current holder of the defaulted loan, or
- I am consolidating a delinquent Federal Consolidation Loan (a consolidation loan made under the FFEL Program) that the lender has submitted to the guaranty agency for default aversion or a defaulted Federal Consolidation loan, and I am not including another eligible loan in the consolidation.

**F.** I may not consolidate an existing Direct Consolidation Loan unless I include at least one additional eligible loan in the consolidation. I may consolidate an existing Federal Consolidation Loan without including an additional eligible loan in the consolidation if I am:

- Consolidating a delinquent Federal Consolidation Loan that the lender has submitted to the guaranty agency for default aversion, or consolidating a defaulted Federal Consolidation Loan, and I agree to repay my new Direct Consolidation Loan under the IBR Plan, the Pay As You Earn Plan, or the ICR Plan;
- Consolidating a Federal Consolidation Loan to use the Public Service Loan Forgiveness Program; or
- Consolidating a Federal Consolidation Loan to use the no accrual of interest benefit for active duty service members.

**G.** If I consolidate my loans, I may no longer be eligible for certain deferments, subsidized deferment periods, certain types of loan discharges or loan forgiveness, reduced interest rates, or repayment incentive programs that were available on the loans I am consolidating.

**H.** If I am consolidating a Perkins Loan:

- I will no longer be eligible for interest-free periods while I am enrolled in school at least half time, in the grace period on my loan, and during deferment periods; and
- I will no longer be eligible for full or partial loan cancellation under the Perkins Loan Program based on years of service in one of the following occupations: teacher in a low-income elementary or secondary school; staff member in an eligible preschool program; special education teacher; member of the Armed Forces who qualifies for special pay; Peace Corps volunteer or volunteer under the Domestic Volunteer Service Act of 1973; law enforcement or corrections officer; attorney in an eligible defender organization; teacher of mathematics, science, foreign languages, bilingual education or any other high-need field; nurse or medical technician providing health care services; employee of a public or private nonprofit child or family service agency that services high-risk children from low-income families and their families; fire fighter; faculty member at a Tribal College or University; librarian; or speech language pathologist.

**I.** Any payments I made on the loans I am consolidating before the date of consolidation will not count toward:

- The number of years of qualifying repayment required for loan forgiveness under the IBR Plan, the Pay As You Earn Plan, or the ICR Plan (see Item 11 of the **Borrower's Rights and Responsibilities Statement**), or
- The 120 qualifying payments required for Public Service Loan Forgiveness (see Item 18 of the **Borrower's Rights and Responsibilities Statement**).

**J.** If I am consolidating a Direct PLUS Loan or a Federal PLUS Loan that I obtained to help pay for my child's undergraduate education, I will not be eligible to repay my Direct Consolidation Loan under the IBR Plan or the Pay As You Earn Plan. However, I may repay my Direct Consolidation Loan under the ICR Plan.

**K.** If I am consolidating a Direct Loan Program loan first disbursed before July 1, 2012 on which I received an up-front interest rebate, and I have not yet made the first 12 required on-time payments on that loan at the time the loan is consolidated, I will lose the rebate. This means that the rebate amount will be added back to the principal balance of the loan before it is consolidated.

**L.** ED will give me the opportunity to pay the interest that accrues on the unsubsidized portion of my Direct Consolidation Loan during deferment periods (including in-school deferment periods) and on the entire portion of my Direct Consolidation Loan during forbearance periods. If I do not pay the interest that accrues during these periods, ED may add the unpaid interest that accrues to the principal balance of my loan (this is called "capitalization") at the end of the deferment or forbearance period. Capitalization will increase the principal balance on my loan and the total amount of interest I must pay.

Pltf. 0014

Borrower's Name: Rost Olsen                                      Social Security Number: ▮▮▮▮▮▮

## BORROWER UNDERSTANDINGS, CERTIFICATIONS, AND AUTHORIZATIONS (CONTINUED)

M. ED has the authority to verify information reported on this Note with other federal agencies.

23. Under penalty of perjury, I certify that:

A. The information that I have provided on this Note is true, complete, and correct to the best of my knowledge and belief and is made in good faith.

B. All of the loans I have selected for consolidation have been used to finance my education or the education of one or more of my children.

C. All of the loans I have selected for consolidation are in a grace period or in repayment ("in repayment" includes loans in deferment or forbearance).

D. If I owe an overpayment on a Federal Perkins Loan, Federal Pell Grant, Federal Supplemental Educational Opportunity Grant, Academic Competitiveness Grant (ACG), National Science and Mathematics Access to Retain Talent (SMART) Grant, or Leveraging Educational Assistance Partnership Grant, I have made satisfactory arrangements to repay the amount owed.

E. If I am in default on any loan I am consolidating, I have either made a satisfactory repayment arrangement with the holder of that defaulted loan, or I will repay my Direct Consolidation Loan under the IBR Plan, the Pay As You Earn Plan, or the ICR Plan, except that I **must** repay my Direct Consolidation Loan under the IBR Plan, the Pay As You Earn Plan, or the ICR Plan under the conditions described above in Item 22.E.

F. If I have been convicted of, or if I have pled *nolo contendere* (no contest) or guilty to, a crime involving fraud in obtaining funds under Title IV of the Higher Education Act of 1965, as amended (HEA), I have fully repaid the funds to ED or to the loan holder in the case of a Title IV federal student loan.

24. I make the following authorizations:

A. I authorize ED to contact the holders of the loans I have selected for consolidation to determine the eligibility for consolidation and the payoff amounts of:
- The loans listed in the **Loans You Want to Consolidate** section of this Note, and
- Any of my other federal education loans that are held by a holder of a loan listed in the **Loans You Want to Consolidate** section.

B. I authorize ED to issue the proceeds of my Direct Consolidation Loan to the holders of the selected loans to pay off those loans.

C. I authorize ED to investigate my credit record and report information about my loan status to persons and organizations permitted by law to receive that information.

D. I authorize my schools, ED, and their agents and contractors to release information about my Direct Consolidation Loan to the references on the loan and to my immediate family members, unless I submit written directions otherwise.

E. I authorize my schools, ED, and their agents and contractors to share information about my loan with each other.

F. I authorize my schools, ED, and their agents and contractors to contact me regarding my loan request or my loan, including repayment of my loan, at the number that I provide on this Note or any future number that I provide for my cellular telephone or other wireless device using automated dialing equipment or artificial or prerecorded voice or text messages.

## PROMISE TO PAY

25. I promise to pay ED all sums disbursed under the terms of this Note to pay off my prior loan obligations, plus interest and other charges and fees that may become due as provided in this Note.

26. If I do not make a payment on my Direct Consolidation Loan when it is due, I will also pay reasonable collection costs, including but not limited to attorney fees, court costs, and other fees.

27. My signature on this Note serves as my authorization to pay off the balances of the loans I have selected for consolidation as provided by the holders of the loans.

28. I will not sign this Note before reading the entire Note, even if I am told not to read it, or told that I am not required to read it. I am entitled to an exact copy of this Note and the **Borrower's Rights and Responsibilities Statement.**

29. My signature certifies that I have read, understand, and agree to the terms and conditions of this Note, including the **Borrower Understandings, Certifications, and Authorizations** section, and the **Borrower's Rights and Responsibilities Statement.**

**I UNDERSTAND THAT THIS IS A LOAN THAT I MUST REPAY.**

**30. Borrower's Signature**

Rost C Olsen

**Today's Date(mm-dd-yyyy):** 07-06-2016

Pltf. 0015

**THIS PAGE IS INTENTIONALLY BLANK**

Pltf. 0016

**NOTE TERMS AND CONDITIONS**

**GOVERNING LAW**

The terms of this Federal Direct Consolidation Loan Application and Promissory Note (Note) will be interpreted in accordance with the Higher Education Act of 1965, as amended (20 U.S.C. 1070 *et seq.*), the U.S. Department of Education's (ED's) regulations, any amendments to the HEA and the regulations in accordance with the effective date of those amendments, and other applicable federal laws and regulations (collectively referred to as the "Act").

Under applicable state law, except as preempted by federal law, you may have certain borrower rights, remedies, and defenses in addition to those stated in this Note and in the **Borrower's Rights and Responsibilities Statement**.

**DISCLOSURE OF LOAN TERMS**

This Note applies to a Federal Direct Consolidation Loan (Direct Consolidation Loan). Under this Note, the principal amount that you owe and are required to repay will be equal to all sums disbursed to pay off your prior loan obligations, plus any unpaid interest that is capitalized and added to the principal balance.

Although you will have a single Direct Consolidation Loan, your loan may have up to two separate loan identification numbers depending on the loans you consolidate. These loan identification numbers will represent prior subsidized loans and prior unsubsidized loans. Each applicable loan identification number is represented by this Note.

When the loans you are consolidating are paid off, a disclosure statement will be provided to you. The disclosure will identify the amount of your Direct Consolidation Loan, the loan identification number(s), and additional terms of the loan, such as the interest rate and repayment schedule. If you have questions about the information disclosed, you may contact your servicer. The **Borrower's Rights and Responsibilities Statement** accompanying this Note also contains important additional information. The **Borrower's Rights and Responsibilities Statement** and any disclosure you receive in connection with the loan made under this Note are hereby incorporated into this Note.

ED may use a servicer to handle billing and other communications related to your loan.

**INTEREST**

Unless ED notifies you in writing that a different rate will apply, the interest rate on your Direct Consolidation Loan is a fixed rate that is calculated in accordance with a formula specified in the Act. The interest rate for a Direct Consolidation Loan is based on the weighted average of the interest rates on the loans being consolidated, rounded to the nearest higher one-eighth of one percent. There is no cap on the interest rate that is determined under this formula. This is a fixed interest rate, which means that the rate will remain the same throughout the life of the loan.

Except as provided under the Act, you must pay the interest that accrues on your Direct Consolidation Loan during all periods, from the date of disbursement until the loan is paid in full or discharged.  You are not required to pay the interest that accrues during deferment periods on the portion of your Direct Consolidation Loan that repaid subsidized loans, except as explained under the heading "Responsibility for Paying All Interest on All or Part of the Subsidized Portion of a Direct Consolidation Loan (for First-Time Borrowers on or after July 1, 2013)."

You will be given the opportunity to pay the interest that accrues during deferment, forbearance, or other periods as provided under the Act. If you do not pay this interest, ED may capitalize the interest (add it to the principal balance of your loan) at the end of the deferment, forbearance, or other period.

**RESPONSIBILITY FOR PAYING ALL INTEREST ON ALL OR PART OF THE SUBSIDIZED PORTION OF A DIRECT CONSOLIDATION LOAN (FOR FIRST-TIME BORROWERS ON OR AFTER JULY 1, 2013)**

If you were a **first-time borrower on or after July 1, 2013** when you received a Direct Subsidized Loan and you are now consolidating that loan, you may be responsible for paying the interest that accrues during all periods on the portion of your Direct Consolidation Loan that repaid the Direct Subsidized Loan. See Item 9 of the **Borrower's Rights and Responsibilities Statement** that accompanies this Note for more information.

**LATE CHARGES AND COLLECTION COSTS**

ED may collect from you:

- A late charge of not more than six cents for each dollar of each late payment if you fail to make any part of a required installment payment within 30 days after it becomes due, and
- Any other charges and fees that are permitted by the Act related to the collection of your Direct Consolidation Loan.

If you default on your loan, you must pay reasonable collection costs, plus court costs and attorney fees.

**REPAYMENT**

You must repay the full amount of the Direct Consolidation Loan made under this Note, plus accrued interest. You will repay your loan in monthly installments during a repayment period that begins on the date of the first disbursement of the loan, unless the loan is in a deferment or forbearance period. Generally, payments that you make or that someone else makes on your behalf will be applied first to late charges and collection costs that are due, then to interest that has not been paid, and finally to the principal amount of the loan. However, any payments made under the Income-Based Repayment Plan or the Pay As You Earn Repayment Plan will be applied first to interest that is due, then to fees that are due, and then to the principal amount.

ED will provide you with a choice of repayment plans. The **Borrower's Rights and Responsibilities Statement** includes information on these repayment plans. You must select a repayment plan. If you do not select a repayment plan, ED will choose a plan for you in accordance with the Act.

ED will provide you with a repayment schedule that identifies your payment amounts and due dates. Your first payment will be due within 60 days of the first disbursement of your Direct Consolidation Loan unless the loan is in a deferment or forbearance period. If you intend to repay your loan but are unable to make your scheduled loan payments, ED may grant you a forbearance that allows you to temporarily stop making payments, or to temporarily make a smaller payment amount, which extends the time for making payments.

ED may adjust payment dates on your Direct Consolidation Loan or may grant you a forbearance to eliminate a delinquency that remains even though you are making scheduled installment payments.

Pltf. 0017

**NOTE TERMS AND CONDITIONS (CONTINUED)**

You may prepay all or any part of the unpaid balance on your loan at any time without penalty. After you have repaid your Direct Consolidation Loan in full, ED will send you a notice telling you that you have paid off your loan.

**ACCELERATION AND DEFAULT**

At ED's option, the entire unpaid balance of your Direct Consolidation Loan will become immediately due and payable (this is called "acceleration") if either of the following events occurs:

1. You make a false representation that results in your receiving a loan for which you are not eligible; or
2. You default on the loan.

The following events will constitute a default on your loan:

1. You do not pay the entire unpaid balance of the loan after ED has exercised its option under item 1 above;
2. You do not make installment payments when due and your failure to make payments has continued for at least 270 days; or
3. You do not comply with other terms of the loan, and ED reasonably concludes that you no longer intend to honor your repayment obligation.

If you default, ED may capitalize all outstanding interest. This will increase the principal balance of your loan, and the full amount of the loan, including the new principal balance and collection costs, will become immediately due and payable.

If you default, the default will be reported to nationwide consumer reporting agencies (credit bureaus) and will significantly and adversely affect your credit history. A default will have additional adverse consequences as explained in the **Borrower's Rights and Responsibilities Statement**. Following default, you may be required to repay the loan (potentially including amounts in excess of the principal and interest) under the Income-Based Repayment Plan or the Income-Contingent Repayment Plan in accordance with the Act.

**LEGAL NOTICES**

Any notice required to be given to you will be effective if sent by first class mail to the most recent address that ED has for you, by electronic means to an address you have provided, or by any other method of notification that is permitted or required by applicable statute or regulation.

You must immediately notify ED of a change in your contact information or status as specified in the **Borrower's Rights and Responsibilities Statement** under "Information you must report to us."

If ED does not enforce or insist on compliance with any term of this Note, this does not waive any right of ED. No provision of this Note may be modified or waived except in writing by ED. If any provision of this Note is determined to be unenforceable, the remaining provisions will remain in force.

Information about your loan will be submitted to the National Student Loan Data System (NSLDS). Information in NSLDS is accessible to schools, lenders, and guarantors for specific purposes as authorized by ED.

Pltf. 0018

## IMPORTANT NOTICES

### Gramm-Leach-Bliley Act Notice

In 1999, Congress enacted the Gramm-Leach-Bliley Act (Public Law 106-102). This Act requires that lenders provide certain information to their customers regarding the collection and use of nonpublic personal information.

We disclose nonpublic personal information to third parties only as necessary to process and service your loan and as permitted by the Privacy Act of 1974. See the Privacy Act Notice below. We do not sell or otherwise make available any information about you to any third parties for marketing purposes.

We protect the security and confidentiality of nonpublic personal information by implementing the following policies and practices. All physical access to the sites where nonpublic personal information is maintained is controlled and monitored by security personnel. Our computer systems offer a high degree of resistance to tampering and circumvention. These systems limit data access to our staff and contract staff on a "need-to-know" basis, and control individual users' ability to access and alter records within the systems. All users of these systems are given a unique user ID with personal identifiers. All interactions by individual users with the systems are recorded.

### Privacy Act Notice

The Privacy Act of 1974 (5 U.S.C. 552a) requires that the following notice be provided to you:

The authority for collecting the requested information from and about you is §451 et seq. of the Higher Education Act (HEA) of 1965, as amended (20 U.S.C. 1087a et seq. ) and the authorities for collecting and using your Social Security Number (SSN) are §484(a)(4) of the HEA (20 U.S.C. 1091(a)(4)) and 31 U.S.C. 7701(b). Participating in the William D. Ford Federal Direct Loan (Direct Loan) Program and giving us your SSN are voluntary, but you must provide the requested information, including your SSN, to participate.

The information in your file may be disclosed, on a case-by-case basis or under a computer matching program, to third parties as authorized under routine uses in the appropriate systems of records notices. The routine uses of this information include, but are not limited to, its disclosure to federal, state, or local agencies, to private parties such as relatives, present and former employers, business and personal associates, to consumer reporting agencies, to financial and educational institutions, and to guaranty agencies in order to verify your identity, to determine your eligibility to receive a loan or a benefit on a loan, to permit the servicing or collection of your loan(s), to enforce the terms of the loan(s), to investigate possible fraud and to verify compliance with federal student financial aid program regulations, or to locate you if you become delinquent in your loan payments or if you default. To provide default rate calculations, disclosures may be made to guaranty agencies, to financial and educational institutions, or to state agencies. To provide financial aid history information, disclosures may be made to educational institutions. To assist program administrators with tracking refunds and cancellations, disclosures may be made to guaranty agencies, to financial and educational institutions, or to federal or state agencies. To provide a standardized method for educational institutions to efficiently submit student enrollment status, disclosures may be made to guaranty agencies or to financial and educational institutions. To counsel

you in repayment efforts, disclosures may be made to guaranty agencies, to financial and educational institutions, or to federal, state, or local agencies. In the event of litigation, we may send records to the Department of Justice, a court, adjudicative body, counsel, party, or witness if the disclosure is relevant and necessary to the litigation. If this information, either alone or with other information, indicates a potential violation of law, we may send it to the appropriate authority for action. We may send information to members of Congress if you ask them to help you with federal student aid questions. In circumstances involving employment complaints, grievances, or disciplinary actions, we may disclose relevant records to adjudicate or investigate the issues. If provided for by a collective bargaining agreement, we may disclose records to a labor organization recognized under 5 U.S.C. Chapter 71. Disclosures may be made to our contractors for the purpose of performing any programmatic function that requires disclosure of records. Before making any such disclosure, we will require the contractor to maintain Privacy Act safeguards. Disclosures may also be made to qualified researchers under Privacy Act safeguards.

### Financial Privacy Act Notice

Under the Right to Financial Privacy Act of 1978 (12 U.S.C. 3401-3421), ED will have access to financial records in your student loan file maintained in compliance with the administration of the Direct Loan Program.

### Paperwork Reduction Notice

According to the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless the collection displays a valid OMB control number. The valid OMB control number for this information collection is 1845-0053. Public reporting burden for this collection of information is estimated to average 30 minutes (0.5 hours) per response, including time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. The obligation to respond to this collection is required to obtain a benefit in accordance with 34 CFR 685.201(c)(1).

**If you have comments or concerns regarding the status of your individual submission of this form, contact:**

FedLoan Consolidation Department
P.O. Box 69186
Harrisburg
PA, 17106-9186

Pltf. 0019

**BORROWER'S RIGHTS AND RESPONSIBILITIES STATEMENT**

*Important Notice:*

*This Borrower's Rights and Responsibilities Statement provides additional information about the terms and conditions of the loan you will receive under the accompanying Federal Direct Consolidation Loan (Direct Consolidation Loan) Application and Promissory Note (Note).* **Please keep a copy of the Note and this Borrower's Rights and Responsibilities Statement for your records.** *You may request another copy of this Borrower's Rights and Responsibilities Statement at any time by contacting your servicer.*

*Throughout this Borrower's Rights and Responsibilities Statement, the words "we," "us," and "our" refer to the U.S. Department of Education.*

**1. THE WILLIAM D. FORD FEDERAL DIRECT LOAN PROGRAM**

The William D. Ford Federal Direct Loan (Direct Loan) Program includes the following types of loans, known collectively as "Direct Loans":

- Federal Direct Stafford/Ford Loans (Direct Subsidized Loans)
- Federal Direct Unsubsidized Stafford/Ford Loans (Direct Unsubsidized Loans)
- Federal Direct PLUS Loans (Direct PLUS Loans)
- Federal Direct Consolidation Loans (Direct Consolidation Loans)

The Direct Loan Program is authorized by Title IV, Part D, of the Higher Education Act of 1965, as amended (HEA), 20 U.S.C. 1070 *et seq.*

Direct Loans are made by the U.S. Department of Education. We contract with servicers to process Direct Loan payments, deferment and forbearance requests, and other transactions, and to answer questions about Direct Loans. We will provide you with the address and telephone number of the servicer for your loan.

**2. LAWS THAT APPLY TO THIS NOTE**

The terms and conditions of loans made under this Note are determined by the HEA and other applicable federal laws and regulations. These laws and regulations are referred to as "the Act" throughout this Borrower's Rights and Responsibilities Statement. Under applicable state law, except as preempted by federal law, you may have certain borrower rights, remedies, and defenses in addition to those stated in the Note and this Borrower's Rights and Responsibilities Statement.

**NOTE: Any amendment to the Act that affects the terms of this Note will be applied to your loan in accordance with the effective date of the amendment.**

**3. DIRECT CONSOLIDATION LOAN IDENTIFICATION NUMBERS**

Depending on the type(s) of federal education loan(s) that you choose to consolidate, your Direct Consolidation Loan may have up to two individual loan identification numbers. However, you will have only one Direct Consolidation Loan and will receive only one bill.

**3a.** The subsidized portion of your Direct Consolidation Loan ("Direct Subsidized Consolidation Loan") will have one loan identification number representing the amount of the following types of loans that you consolidate:

- Subsidized Federal Stafford Loans
- Direct Subsidized Loans
- Subsidized Federal Consolidation Loans
- Direct Subsidized Consolidation Loans
- Federal Insured Student Loans (FISL)
- Guaranteed Student Loans (GSL)

**3b.** The unsubsidized portion of your Direct Consolidation Loan ("Direct Unsubsidized Consolidation Loan") will have one identification number representing the amount of the following types of loans that you consolidate:

- Unsubsidized and Nonsubsidized Federal Stafford Loans
- Direct Unsubsidized Loans
- Unsubsidized Federal Consolidation Loans
- Direct Unsubsidized Consolidation Loans
- Federal PLUS Loans (for parents or for graduate and professional students)
- Direct PLUS Loans (for parents or for graduate and professional students)
- Direct PLUS Consolidation Loans
- Federal Perkins Loans
- National Direct Student Loans (NDSL)
- National Defense Student Loans (NDSL)
- Federal Supplemental Loans for Students (SLS)
- Parent Loans for Undergraduate Students (PLUS)
- Auxiliary Loans to Assist Students (ALAS)
- Health Professions Student Loans (HPSL)
- Health Education Assistance Loans (HEAL)
- Nursing Student Loans (NSL)
- Loans for Disadvantaged Students (LDS)

**4. ADDING ELIGIBLE LOANS TO YOUR DIRECT CONSOLIDATION LOAN**

You may add eligible loans to your Direct Consolidation Loan by submitting a request to us within 180 days of the date your Direct Consolidation Loan is made. (Your Direct Consolidation Loan is "made" on the date we pay off the first loan that you are consolidating.) After we pay off any loans that you add during the 180-day period, we will notify you of the new total amount of your Direct Consolidation Loan and of any adjustments that must be made to your monthly payment amount and/or interest rate.

If you want to consolidate any additional eligible loan(s) after the 180-day period, you must apply for a new Direct Consolidation Loan.

**5. LOANS THAT MAY BE CONSOLIDATED**

*General*

Only the federal education loans listed in Items 3a.and 3b. of this Borrower's Rights and Responsibilities Statement may be consolidated into a Direct Consolidation Loan. You may only consolidate loans that are in a grace period or in repayment (including loans in deferment or forbearance). At least one of the loans that you consolidate must be a Direct Loan Program loan or a Federal Family Education Loan (FFEL) Program loan.

*Defaulted loans*

You may consolidate a loan that is in default if:

- You first make satisfactory repayment arrangements with the holder of the defaulted loan, or
- You agree to repay your Direct Consolidation Loan under the IBR Plan, the Pay As You Earn Plan, or the ICR Plan (see Item 11).

*Existing consolidation loans*

If you want to consolidate an existing Direct Consolidation Loan, you must include an additional eligible loan in the consolidation. However, you may consolidate an existing Federal Consolidation Loan into a new Direct Consolidation Loan without including an additional loan if you are:

Pltf. 0020

**BORROWER'S RIGHTS AND RESPONSIBILITIES STATEMENT**

- Consolidating a delinquent Federal Consolidation Loan that the lender has submitted to the guaranty agency for default aversion, or consolidating a defaulted Federal Consolidation Loan, and you agree to repay your new Direct Consolidation Loan under the IBR Plan, the Pay As You Earn Plan, or the ICR Plan;
- Consolidating a Federal Consolidation Loan to use the Public Service Loan Forgiveness program described in Item 18 of this Borrower's Rights and Responsibilities Statement; or
- Consolidating a Federal Consolidation Loan to use the no accrual of interest benefit for active duty service members described in Item 8.

You may not consolidate an existing joint consolidation loan. A joint consolidation loan is a Direct Consolidation Loan or Federal Consolidation that was made jointly to you and your spouse.

**6. INFORMATION YOU MUST REPORT TO US**

Until your loan is repaid, you must notify your servicer if you:

- Change your address or telephone number;
- Change your name (for example, maiden name to married name);
- Change your employer or your employer's address or telephone number changes; or
- Have any other change in status that would affect your loan (for example, if you receive a deferment while you are unemployed, but you find a job and therefore no longer meet the eligibility requirements for the deferment).

**7. INTEREST RATE**

The interest rate on your Direct Consolidation Loan will be the weighted average of the interest rates on the loans you are consolidating, rounded to the nearest higher one-eighth of one percent. There is no cap on the interest rate that is determined under this formula. We will send you a notice that tells you the interest rate on your loan.

The interest rate on a Direct Consolidation Loan is a fixed rate. This means that the interest rate will remain the same throughout the life of your loan.

If you qualify under the Servicemembers Civil Relief Act, the interest rate on your loans obtained prior to military service may be limited to 6% during your military service. Contact your servicer for information about how to request this benefit.

**8. PAYMENT OF INTEREST**

*General*

In general, interest accrues on a Direct Consolidation Loan from the date the loan is made until it is paid in full or discharged. You are responsible for paying the interest that accrues as explained below.

***Payment of interest on a Direct Subsidized Consolidation Loan***

Except as explained in Item 9 of this Borrower's Rights and Responsibilities Statement, you are not required to pay the interest that accrues on a Direct Subsidized Consolidation Loan (see Item 3a. of this Borrower's Rights and Responsibilities Statement) during deferment periods, and during certain periods of repayment under the IBR Plan and the Pay As You Earn Plan. Except as explained below under *No accrual of interest benefit for active duty service members*, you must pay the interest that accrues on a Direct Subsidized Consolidation Loan during all other periods.

If you were a first-time borrower on or after July 1, 2013 when you received a Direct Subsidized Loan that you are now consolidating, you may be responsible for paying the interest that accrues during all periods on the

portion of your Direct Consolidation Loan that repaid the Direct Subsidized Loan, as explained in Item 9 of this Borrower's Rights and Responsibilities Statement.

***Payment of interest on a Direct Unsubsidized Consolidation Loan***

Except as explained below for certain borrowers who are active duty service members, you must pay the interest that accrues on a Direct Unsubsidized Consolidation Loan (see Item 3b. of this Borrower's Rights and Responsibilities Statement) during all periods.

***No accrual of interest benefit for active duty service members***

Under the no accrual of interest benefit for active duty service members, you are not required to pay the interest that accrues during periods of qualifying active duty military service (for up to 60 months) on the portion of a Direct Consolidation Loan that repaid a Direct Loan Program or FFEL Program loan first disbursed on or after October 1, 2008.

***Interest capitalization***

If you do not pay the interest as it accrues on either a Direct Subsidized Consolidation Loan or a Direct Unsubsidized Consolidation Loan (during periods when you are responsible for paying the interest), we will add the accrued interest to the unpaid principal balance of your loan at the end of the deferment or forbearance period. This is called "capitalization." Capitalization increases the unpaid principal balance of your loan, and interest then accrues on the increased principal balance.

The chart that follows shows the difference in the total amount you would repay on a $15,000 Direct Unsubsidized Consolidation Loan if you pay the interest as it accrues during a 12-month deferment or forbearance period, compared to the amount you would repay if you do not pay the interest and it is capitalized.

The example in the chart shows payments made under the Standard Repayment Plan (with a repayment period of 15 years based on the amount of the Direct Consolidation Loan) at an interest rate of 8.25%. In this example, you would pay $12 less per month and $2,150 less altogether if you pay the interest as it accrues during a 12-month deferment or forbearance period.

|  | If you pay the interest as it accrues… | If you do not pay the interest and it is capitalized… |
|---|---|---|
| **Loan Amount** | $15,000 | $15,000 |
| **Interest for 12 Months** | $1,238 (paid as accrued) | $1,238 (unpaid and capitalized) |
| **Principal to be Repaid** | $15,000 | $16,238 |
| **Monthly Payment** | $146 | $158 |
| **Number of Payments** | 180 | 180 |
| **Total Repaid** | $26,209 | $28,359 |

***Federal income tax deduction***

You may be able to claim a federal income tax deduction for interest payments you make on Direct Loans. For further information, refer to IRS Publication 970, which is available at http://www.irs.ustreas.gov.

**9. RESPONSIBILITY FOR PAYING ALL INTEREST ON ALL OR PART OF THE SUBSIDIZED PORTION OF A DIRECT CONSOLIDATION LOAN (FOR FIRST-TIME BORROWERS ON OR AFTER JULY 1, 2013)**

If you were a **first-time borrower on or after July 1, 2013** (see Note below) when you received a Direct Subsidized Loan and you are now consolidating that loan, you may be responsible for paying the interest that accrues

Pltf. 0021

**BORROWER'S RIGHTS AND RESPONSIBILITIES STATEMENT**

during all periods on the portion of your Direct Consolidation Loan that repaid the Direct Subsidized Loan, as explained below.

There is a limit on the maximum period of time (measured in academic years) for which a first-time borrower on or after July 1, 2013 can receive Direct Subsidized Loans. In general, a first-time borrower may not receive Direct Subsidized Loans for more than 150% of the published length of his or her program of study. This is called the "maximum eligibility period."

Generally, a first-time borrower on or after July 1, 2013 will become responsible for paying the interest that accrues during all periods on previously received Direct Subsidized Loans if the borrower:

- Continues to be enrolled in any undergraduate program after having received Direct Subsidized Loans for his or her maximum eligibility period, or
- Enrolls in another undergraduate program that is the same length as or shorter than the borrower's previous program.

There are a few exceptions to this rule. Your school or servicer can provide you with more information about this requirement and the exceptions.

You must pay the interest that accrues during all periods (including deferment periods) on the portion of your Direct Consolidation Loan that repaid a Direct Subsidized Loan you received as a first-time borrower on or after July 1, 2013 if:

- Before consolidating the Direct Subsidized Loan, you become responsible for paying all interest that accrues on that loan, as explained above; or
- After consolidating the Direct Subsidized Loan you become responsible for paying all interest that accrues on that loan, as explained above.

**Note:** A first-time borrower on or after July 1, 2013 is an individual who has no outstanding balance on a Direct Loan Program loan or a Federal Family Education Loan (FFEL) Program loan on July 1, 2013, or who has no outstanding balance on a Direct Loan or FFEL program loan on the date he or she obtains a Direct Loan Program loan after July 1, 2013.

**10. REPAYMENT INCENTIVE PROGRAMS**

A repayment incentive is a benefit that we offer to encourage you to repay your loan on time. The repayment incentive program described below may be available to you.

*Interest rate reduction for automatic withdrawal of payments*

Under the automatic withdrawal option, your bank automatically deducts your monthly loan payment from your checking or savings account and sends it to us. Automatic withdrawal helps to ensure that your payments are made on time. In addition, you receive a 0.25% interest rate reduction while you repay under the automatic withdrawal option. Your servicer will provide you with information about the automatic withdrawal option. You can also get the information on your servicer's web site, or by calling your servicer. Your servicer's web site address and toll-free telephone number are provided on correspondence that your servicer sends you.

**Note:** Another repayment incentive program, the up-front interest rebate, was available on Direct Subsidized Loans, Direct Unsubsidized Loans, and Direct PLUS Loans that were first disbursed before July 1, 2012. The rebate is equal to a percentage of the loan amount, and is the same amount that would result if the interest rate on the loan were lowered by a specific percentage. To permanently keep an up-front interest rebate, a borrower must make each of the first 12 required monthly payments on time when the loan enters repayment. If you consolidate a Direct Loan on which you received an up-front interest rebate before you have permanently earned

the rebate (the correspondence you received about your loan will tell you if you received a rebate), you will lose the rebate. The rebate amount will be added back to the principal balance of the loan before it is consolidated.

**11. REPAYING YOUR LOAN**

*General*

Unless you receive a deferment or forbearance on your loan (see Item 17), your first payment will be due within 60 days of the first disbursement of your Direct Consolidation Loan. Your servicer will notify you of the date your first payment is due.

You must make payments on your loan even if you do not receive a bill or repayment notice.

You must repay all of your Direct Loans under the same repayment plan, unless you want to repay your loans under the IBR Plan, the Pay As You Earn Plan, or the ICR Plan (see below) and you have other Direct Loans that do not qualify for repayment under those plans. In that case, you may select the IBR, Pay As You Earn, or ICR plan for the loans that are eligible for repayment under those plans, and may select a different repayment plan for the loans that may not be repaid under the IBR, Pay As You Earn, or ICR plan.

*Repayment plans for all Direct Consolidation Loans*

You may choose the Standard Repayment Plan, the Graduated Repayment Plan, the Extended Repayment Plan, or the Income-Contingent Repayment Plan to repay any Direct Consolidation Loan.

*Standard Repayment Plan –* Under this plan, you will make fixed monthly payments and repay your loan in full within 10 to 30 years (not including periods of deferment or forbearance) from the date the loan entered repayment, depending on the amount of your Direct Consolidation Loan and the amount of your other student loan debt (not to exceed the amount you are consolidating) as listed in the **Loans You Do Not Want to Consolidate** section of your Note (see the chart below). Your payments must be at least $50 a month ($600 a year) and will be more, if necessary, to repay the loan within the required time period.

*Graduated Repayment Plan –* Under this plan, you will usually make lower payments at first, and your payments will gradually increase over time. You will repay your loan in full within 10 to 30 years (not including periods of deferment or forbearance) from the date the loan entered repayment, depending on the total amount of your Direct Consolidation Loan and the amount of your other student loan debt (not to exceed the amount you are consolidating) as listed in **Loans You Do Not Want to Consolidate** section of your Note (see the chart below). Your monthly payment must at least be equal to the amount of interest that accrues each month. No single payment will be more than three times greater than any other payment.

Pltf. 0022

**BORROWER'S RIGHTS AND RESPONSIBILITIES STATEMENT**

| Standard and Graduated Plans: Maximum Repayment Periods | |
|---|---|
| **Total Education Loan Indebtedness** | **Maximum Repayment Period** |
| Less than $7,500 | 10 years |
| $7,500 to $9,999 | 12 years |
| $10,000 to $19,999 | 15 years |
| $20,000 to $39,999 | 20 years |
| $40,000 to $59,999 | 25 years |
| $60,000 or more | 30 years |

***Extended Repayment Plan*** – You are eligible for this plan only if: **(1)** you have an outstanding balance on Direct Loan Program Loans that exceeds $30,000; and **(2)** you had no outstanding balance on a Direct Loan Program loan as of October 7, 1998, or on the date you obtained a Direct Loan Program loan on or after October 7, 1998.

Under this plan, you will repay your loan in full over a repayment period not to exceed 25 years (not including periods of deferment or forbearance) from the date the loan entered repayment. You may choose to make fixed monthly payments or graduated monthly payments that start out lower and gradually increase over time. If you make fixed monthly payments, your payments must be at least $50 a month ($600 a year) and will be more, if necessary, to repay the loan within the required time period. If you make graduated monthly payments, you will usually make lower payments at first, and your payments will gradually increase over time. If you make graduated payments, your monthly payment must at least be equal to the amount of interest that accrues each month, and no single payment will be more than three times greater than any other payment.

***Income-Contingent Repayment Plan (ICR Plan)*** – Under this plan, your monthly payment amount will be either 20% of your discretionary income or a percentage of what you would repay under a Standard Repayment Plan with a 12-year repayment period, whichever is less. Discretionary income for this plan is the difference between your adjusted gross income and the poverty guideline amount for your state of residence and family size. If you are married and file a joint federal income tax return, the income used to determine your ICR Plan payment amount will be the combined adjusted gross income of you and your spouse. Until we obtain the information needed to calculate your monthly payment amount, your payment will equal the amount of interest that accrues monthly on your loan unless you request a forbearance.

While you are repaying under the ICR Plan, you must annually provide documentation of your income and certify your family size. Your monthly payment amount may be adjusted annually based on the updated income and family size information that you provide.

Under the ICR Plan, if your loan is not repaid in full after you have made the equivalent of 25 years of qualifying monthly payments and at least 25 years have elapsed, any remaining loan amount will be forgiven. You may have to pay federal income tax on the loan amount that is forgiven.

***Additional repayment plans for Direct Consolidation Loans that did not repay parent PLUS loans***

In addition to the four repayment plans listed above that are available for any Direct Consolidation Loan, if you are not consolidating any parent Direct PLUS Loans or parent FFEL PLUS Loans you may also choose the **Income-Based Repayment Plan** or the **Pay As You Earn Repayment Plan** to repay your Direct Consolidation Loan. A parent PLUS loan is a PLUS loan that you obtained to help pay for your child's undergraduate education. You may not choose the Income-Based Repayment Plan or the Pay As You Earn Plan if you are consolidating a parent PLUS loan, but you may choose the Income-Contingent Repayment Plan (see above).

***Income-Based Repayment Plan (IBR Plan)*** – Under the IBR Plan, your monthly payment amount is generally 15% (10% if you are a new borrower; see Note below) of your annual discretionary income, divided by 12. Discretionary income for this plan is the difference between your adjusted gross income and 150% of the poverty guideline amount for your state of residence and family size. If you are married and file a joint federal income tax return, the income used to determine your IBR Plan payment amount will be the combined adjusted gross income of you and your spouse.

To initially qualify for the IBR Plan and to continue to make payments that are based on your income, the amount you would be required to pay on your eligible student loans under the IBR Plan (as described above) must be less than the amount you would have to pay under the Standard Repayment Plan. If your IBR Plan payment amount is less than the amount you would have to pay under the Standard Repayment Plan, you are considered to have a "partial financial hardship."

If you are married and file a joint federal income tax return, the loan amount we use to determine whether you have a partial financial hardship will include your eligible loans and your spouse's eligible loans.

While you are repaying under the IBR Plan, you must annually provide documentation of your income and certify your family size so that we may determine whether you continue to have a partial financial hardship. Your monthly payment amount may be adjusted annually based on the updated income and family size information that you provide. If we determine that you no longer have a partial financial hardship, you may remain on the IBR Plan, but your monthly payment will no longer be based on your income. Instead, your monthly payment will be what you would be required to pay under the Standard Repayment Plan, based on the amount you owed on your eligible loans at the time you entered the IBR Plan.

Under the IBR Plan, if your loan is not repaid in full after you have made the equivalent of 25 years (20 years if you are a new borrower) of qualifying monthly payments and at least 25 years (20 years if you are a new borrower) have elapsed, any remaining loan amount will be forgiven. You may have to pay federal income tax on the loan amount that is forgiven.

**Note:** You are a **new borrower** for the IBR Plan if you have no outstanding balance on a Direct Loan Program or FFEL Program loan on July 1, 2014, or if you have no outstanding balance on a Direct Loan Program or FFEL Program loan on the date you obtain a Direct Loan Program loan after July 1, 2014. Your servicer will determine whether you are a new borrower based on the information about your loans in the U.S. Department of Education's National Student Loan Data System.

***Pay As You Earn Repayment Plan (Pay As You Earn Plan)*** – Under the Pay As You Earn Plan, your monthly payment amount is generally 10% of your annual discretionary income, divided by 12. Discretionary income for this plan is the difference between your adjusted gross income and 150% of the poverty guideline amount for your state of residence and family size. If you are married and file a joint federal income tax return, the income used to determine your Pay As You Earn Plan payment amount will be the combined adjusted gross income of you and your spouse.

The Pay As You Earn Plan is available only to new borrowers. You are a new borrower for the Pay As You Earn Plan if:

1. You had no outstanding balance on a Direct Loan Program or FFEL Program loan as of October 1, 2007, or you have no outstanding balance on a Direct Loan Program or FFEL Program loan when you obtain a new loan on or after October 1, 2007, and

**BORROWER'S RIGHTS AND RESPONSIBILITIES STATEMENT**

2.  You receive a disbursement of a Direct Subsidized Loan, Direct Unsubsidized Loan, or student Direct PLUS Loan (a Direct PLUS Loan made to a graduate or professional student) on or after October 1, 2011, or you receive a Direct Consolidation Loan based on an application received on or after October 1, 2011. However, you are not considered to be a new borrower for the Pay As You Earn Plan if the Direct Consolidation Loan you receive repays loans that would make you ineligible under part 1 of this definition.

In addition to being a new borrower, to initially qualify for the Pay As You Earn Plan and to continue to make payments that are based on your income, the amount you would be required to pay on your eligible student loans under the Pay As You Earn Plan (as described above) must be less than the amount you would have to pay under the Standard Repayment Plan. If your Pay As You Earn Plan payment amount is less than the amount you would have to pay under the Standard Repayment Plan, you are considered to have a "partial financial hardship."

If you are married and file a joint federal income tax return, the loan amount we use to determine whether you have a partial financial hardship will include your eligible loans and your spouse's eligible loans.

While you are repaying under the Pay As You Earn Plan, you must annually provide documentation of your income and certify your family size so that we may determine whether you continue to have a partial financial hardship. Your monthly payment amount may be adjusted annually based on the updated income and family size information that you provide. If we determine that you no longer have a partial financial hardship, you may remain on the Pay As You Earn Plan, but your monthly payment will no longer be based on your income. Instead, your monthly payment will be what you would be required to pay under the Standard Repayment Plan, based on the amount you owed on your eligible loans at the time you entered the Pay As You Earn Plan.

Under the Pay As You Earn Plan, if your loan is not repaid in full after you have made the equivalent of 20 years of qualifying monthly payments and at least 20 years have elapsed, any remaining loan amount will be forgiven. You may have to pay federal income tax on the loan amount that is forgiven.

*Additional repayment plan information*

If you can show to our satisfaction that the terms and conditions of the repayment plans described above are not adequate to meet your exceptional circumstances, we may provide you with an alternative repayment plan.

If you do not choose a repayment plan, we will place you on the Standard Repayment Plan.

You may change repayment plans at any time after you have begun repaying your loan. There is no penalty if you make loan payments before they are due, or pay more than the amount due each month (prepayments).

We apply your payments made under any plan other than the IBR Plan and the Pay As You Earn Plan in the following order:

1.  Late charges and collection costs,
2.  Outstanding interest, and
3.  Outstanding principal.

We apply your payments made under the IBR Plan or the Pay As You Earn Plan in the following order:

1.  Outstanding interest,

2.  Late charges and collection costs, and
3.  Outstanding principal.

We apply any prepayments in accordance with the Act. Your servicer can provide more information about how prepayments are applied.

When you have repaid your loan in full, your servicer will send you a notice telling you that you have paid off your loan. You should keep this notice in a safe place.

**12. TRANSFER OF LOAN**

We may transfer the servicing of one or all of your loans to another servicer without your consent. If there is a change in the address to which you must send payments or direct communications, we will notify you of the new servicer's name, address and telephone number, the effective date of the transfer, and the date when you must begin sending payments or directing communications to that servicer. Transfer of a loan to a different servicer does not affect your rights and responsibilities under that loan.

**13. LATE CHARGES AND COLLECTION COSTS**

If you do not make any part of a payment within 30 days after it is due, we may require you to pay a late charge. This charge will not be more than six cents for each dollar of each late payment. If you do not make payments as scheduled, we may also require you to pay other charges and fees involved in collecting your loan.

**14. DEMAND FOR IMMEDIATE REPAYMENT**

The entire unpaid amount of your loan becomes due and payable (this is called "acceleration") if you:

*   Make a false statement that causes you to receive a loan that you are not eligible to receive; or
*   Default on your loan.

**15. DEFAULTING ON YOUR LOAN**

Default (failing to repay your loan) is defined in detail under "Acceleration and Default" in the **Note Terms and Conditions** section of this Note. If you default:

*   We will require you to immediately repay the entire unpaid amount of your loan.
*   We may sue you, take all or part of your federal and state tax refunds and other federal or state payments, and/or garnish your wages so that your employer is required to send us part of your salary to pay off your loan.
*   We will require you to pay reasonable collection fees and costs, plus court costs and attorney fees.
*   You will lose eligibility for other federal student aid and assistance under most federal benefit programs.
*   You will lose eligibility for loan deferments.

We will report your default to nationwide consumer reporting agencies (see Item 16). This will harm your credit history and may make it difficult for you to obtain credit cards, home or car loans, or other forms of consumer credit.

**16. CONSUMER REPORTING AGENCY NOTIFICATION**

We will report information about your loan to nationwide consumer reporting agencies (commonly known as "credit bureaus") on a regular basis. This information will include the disbursement dates, amount, and repayment status of your loan (for example, whether you are current or delinquent in making payments). Your loan will be identified as an education loan.

Pltf. 0024

**BORROWER'S RIGHTS AND RESPONSIBILITIES STATEMENT**

If you default on a loan, we will report this to nationwide consumer reporting agencies. We will notify you at least 30 days in advance that we plan to report default information to a consumer reporting agency unless you resume making payments on the loan within 30 days of the date of the notice. You will be given a chance to ask for a review of the debt before we report it.

If a consumer reporting agency contacts us regarding objections you have raised about the accuracy or completeness of any information we have reported, we are required to provide the agency with a prompt response.

**17. DEFERMENT AND FORBEARANCE (POSTPONING PAYMENTS)**

*General*

If you meet certain requirements, you may receive a **deferment** that allows you to temporarily stop making payments on your loan.

If you cannot make your scheduled loan payments, but do not qualify for a deferment, we may give you a **forbearance**. A forbearance allows you to temporarily stop making payments on your loan, temporarily make smaller payments, or extend the time for making payments.

*Deferment*

You may receive a deferment:

- While you are enrolled at least half time at an eligible school;
- While you are in a full-time course of study in a graduate fellowship program;
- While you are in an approved full-time rehabilitation program for individuals with disabilities;
- While you are unemployed (for a maximum of three years; you must be diligently seeking, but unable to find, full-time employment);
- While you are experiencing an economic hardship (including Peace Corps service), as defined in the Act (for a maximum of three years);
- While you are serving on active duty during a war or other military operation or national emergency or performing qualifying National Guard duty during a war or other military operation or national emergency and, if you were serving on or after October 1, 2007, for an additional 180-day period following the demobilization date for your qualifying service; or
- If you are a member of the National Guard or other reserve component of the U.S. Armed Forces (current or retired) and you are called or ordered to active duty while you are enrolled at least half time at an eligible school or within 6 months of having been enrolled at least half time, during the 13 months following the conclusion of your active duty service, or until you return to enrolled student status on at least a half-time basis, whichever is earlier.

You may be eligible to receive additional deferments if, at the time you received your first Direct Loan, you had an outstanding balance on a loan made under the FFEL Program before July 1, 1993. If you meet this requirement, contact your servicer about additional deferments that may be available.

You may receive a deferment based on your enrollment in school on at least a half-time basis if:

1. You submit a deferment request to your servicer along with documentation of your eligibility for the deferment, or
2. Your servicer receives information from the school you are attending that indicates you are enrolled at least half time.

If your servicer processes a deferment based on information received from your school, you will be notified of the deferment and will have the option of canceling the deferment and continuing to make payments on your loan.

For all other deferments, you (or, for a deferment based on active duty military service or qualifying National Guard duty during a war or other military operation or national emergency, a representative acting on your behalf) must submit a deferment request to your servicer, along with documentation of your eligibility for the deferment. In certain circumstances, you may not be required to provide documentation of your eligibility if your servicer confirms that you have been granted the same deferment for the same period of time on a FFEL Program loan. Your servicer can provide you with a deferment request form that explains the eligibility and documentation requirements for the type of deferment you are requesting. You may also obtain deferment request forms and information on deferment eligibility requirements from your servicer's web site.

If you are in default on your loan, you are not eligible for a deferment.

You are not responsible for paying the interest on a Direct Subsidized Consolidation Loan during a period of deferment, except as explained in Item 9 of this Borrower's Rights and Responsibilities Statement. However, you are responsible for paying the interest on a Direct Unsubsidized Consolidation Loan during a period of deferment.

*Forbearance*

We may give you a forbearance if you are temporarily unable to make your scheduled loan payments for reasons including, but not limited to, financial hardship and illness.

We will give you a forbearance if:

- You are serving in a medical or dental internship or residency program, and you meet specific requirements;
- The total amount you owe each month for all of the student loans you received under Title IV of the Act (Direct Loan Program loans, FFEL Program loans, and Federal Perkins Loans) is 20% or more of your total monthly gross income (for a maximum of three years);
- You are serving in a national service position for which you receive a national service education award under the National and Community Service Act of 1993. In some cases, the interest that accrues on a qualified loan during the service period will be paid by the Corporation for National and Community Service;
- You are performing service that would qualify you for loan forgiveness under the Teacher Loan Forgiveness program that is available to certain Direct Loan and FFEL program borrowers;
- You qualify for partial repayment of your loans under a student loan repayment program administered by the Department of Defense; or
- You are called to active duty in the U.S. Armed Forces.

To request a forbearance, contact your servicer. Your servicer can explain the eligibility and documentation requirements for the type of forbearance you are requesting. You may also obtain information on forbearance eligibility requirements from your servicer's web site.

Under certain circumstances, we may also give you a forbearance without requiring you to submit a request or documentation. These circumstances include, but are not limited to, the following:

- Periods necessary for us to determine your eligibility for a loan discharge;

Pltf. 0025

**BORROWER'S RIGHTS AND RESPONSIBILITIES STATEMENT**

- A period of up to 60 days in order for us to collect and process documentation related to your request for a deferment, forbearance, change in repayment plan, or consolidation loan (we do not capitalize the interest that is charged during this period); or
- Periods when you are involved in a military mobilization, or a local or national emergency.

You are responsible for paying the interest that accrues on your entire Direct Consolidation Loan during a period of forbearance.

**18. DISCHARGE (HAVING YOUR LOAN FORGIVEN)**

*Loan discharge due to death, bankruptcy, total and permanent disability, school closure, false certification, identity theft, or unpaid refund*

We will discharge (forgive) your loan if:

- You die. Your servicer must receive acceptable documentation (as defined in the Act) of your death. We will also discharge the portion of a Direct Consolidation Loan that repaid one or more Direct PLUS Loans or Federal PLUS Loans obtained on behalf of a child who dies.
- Your loan is discharged in bankruptcy after you have proven to the bankruptcy court that repaying the loan would cause undue hardship. Direct Loans are not otherwise automatically discharged if you file for bankruptcy.
- You become totally and permanently disabled (as defined in the Act) and meet certain other requirements.

In certain cases, we may also discharge all or a portion of your loan if:

- One or more Direct Loan Program, FFEL Program, or Federal Perkins Loan Program loans that you consolidated was used to pay for a program of study that you (or the child for whom you borrowed a Direct PLUS Loan or Federal PLUS Loan) were unable to complete because the school closed;
- Your eligibility (or the eligibility of the child for whom you borrowed a Direct PLUS Loan or Federal PLUS Loan) for one or more of the Direct Loan Program or FFEL Program loans that you consolidated was falsely certified by the school;
- Your eligibility for one or more of the Direct Loan Program or FFEL Program loans that you consolidated was falsely certified as a result of a crime of identity theft; or
- The school did not pay a required refund of one or more Direct Loan Program or FFEL Program loans that you consolidated.

*Teacher Loan Forgiveness*

We may forgive a portion of your Direct Consolidation Loan that repaid Direct Subsidized Loans or Direct Unsubsidized Loans you received after October 1, 1998, or subsidized or unsubsidized Federal Stafford Loans you received under the FFEL program after October 1, 1998 if you:

- Teach full time for five consecutive years in certain low-income elementary or secondary schools, or for low-income educational service agencies;
- Meet certain other qualifications; and
- Did not owe a Direct Loan or a FFEL program loan as of October 1, 1998, or as of the date you obtain a loan after October 1, 1998.

*Public Service Loan Forgiveness*

A Public Service Loan Forgiveness program is also available. Under this program, we will forgive the remaining balance due on your eligible Direct Loan Program loans after you have made 120 payments on those loans

(after October 1, 2007) under certain repayment plans while you are employed full-time in certain public service jobs.

*Additional loan discharge information*

The Act may provide for certain loan forgiveness or repayment benefits on your loans in addition to the benefits described above. If other forgiveness or repayment options become available, your servicer will provide information about these benefits.

For a discharge based on your death or the death of the child on whose behalf you obtained a Direct PLUS Loan or Federal PLUS Loan that was consolidated, a family member must contact your loan servicer. To request a loan discharge based on one of the other conditions described above (except for a discharge due to bankruptcy), you must complete an application. Your servicer can tell you how to obtain an application.

In some cases, you may assert, as a defense against collection of your loan, that the school did something wrong or failed to do something that it should have done. You can make such a defense against repayment only if the school's act or omission directly relates to your loan or to the educational services that the loan was intended to pay for, and if what the school did or did not do would give rise to a legal cause of action against the school under applicable state law. If you believe that you have a defense against repayment of your loan, contact your servicer.

We do not guarantee the quality of the academic programs provided by schools that participate in federal student financial aid programs. You must repay your loan even if you do not complete your education, are unable to obtain employment in the field of study for which the school provided training, or are dissatisfied with, or do not receive, the education you paid for with the loan.

**19. DEPARTMENT OF DEFENSE AND OTHER FEDERAL AGENCY LOAN REPAYMENT**

Under certain circumstances, military personnel may have their federal education loans repaid by the Secretary of Defense. This benefit is offered as part of a recruitment program that does not apply to individuals based on their previous military service or to those who are not eligible for enlistment in the U.S. Armed Forces. For more information, contact your local military service recruitment office.

Other agencies of the federal government may also offer student loan repayment programs as an incentive to recruit and retain employees. Contact the agency's human resources department for more information.

***END OF BORROWER'S RIGHTS AND RESPONSIBILITIES STATEMENT***

Pltf. 0026

# EXHIBIT 3

# Screenshot of Recertification Summary

Pltf. 0027



## Income-Driven Repayment (IDR) Plan

✓ Completed

### Application Information

| Request Type | Requested Payment Plan | Monthly Payment Amount | Application Method |
|---|---|---|---|
| New Applicant | SAVE Repayment Plan | $181.17 | Manual |

### Status Tracker

**Application Created**
Completed on Sep 22, 2023

**Application Submitted**
Completed on Sep 22, 2023

**Application Review**
Completed on Sep 23, 2023

**Application Processed**
Completed on Oct 4, 2023

Your loan servicer has completed their review of your application.

| Created on | Completed on |
|---|---|
| Sep 22, 2023 | Oct 4, 2023 |

### More Resources

Help and Info

Explore Loan Consolidation

Loans, Grants, and Work-Study Programs

Explore Public Service Loan Forgiveness

Repayment Calculator

🦉 Hi! Need help?

Source URL: https://studentaid.gov/my-activity/cases-and-applications/case-details/idr/43656475 (accessed August 3, 2026)

Pltf. 0028

# EXHIBIT 4

# Screenshot of Mr. Olsen's PSLF Qualifying Payment Summary, obtained from studentaid.gov and MOHELA Payment History Summary

Pltf. 0029



Source URL: https://studentaid.gov/my-aid/public-service-loan-forgiveness-payments/payment-history
Accessed August 4, 2026

**◌MOHELA®** | Official Servicer of Federal **Student** **Aid**                                    Menu

# Account History

The information contained on this page is current as of the day the information is requested. Transactions in your Account History may change due to normal account processing, such as a change in payment allocation or a retroactive change in your account status. After a transaction has been reapplied, you will no longer be able to view prior applications.

## Display

| By Transaction | ▾ |
|---|---|

## Date Range

| Last 5 years | ▾ |
|---|---|

## History ⓘ

| Date ▾ | Description ▾ | Principal ▾ | Interest ▾ | Fees ▾ | Total ▾ |
|---|---|---|---|---|---|
| ⊕ 11/01/2024 | Capitalized Interest | $0.00 | $0.00 | $0.00 | $0.00 |
| ⊕ 08/31/2024 | Capitalized Interest | $0.00 | $0.00 | $0.00 | $0.00 |
| ⊕ 08/25/2024 | Capitalized Interest | $0.00 | $0.00 | $0.00 | $0.00 |
| ⊕ 08/25/2024 | Capitalized Interest | $0.00 | $0.00 | $0.00 | $0.00 |
| ⊕ 07/25/2024 | Capitalized Interest | $0.00 | $0.00 | $0.00 | $0.00 |
| ⊕ 07/25/2024 | Capitalized Interest | $0.00 | $0.00 | $0.00 | $0.00 |
| ⊕ 07/25/2024 | Capitalized Interest | $0.00 | $0.00 | $0.00 | $0.00 |
| ⊕ 07/01/2024 | Capitalized Interest | $0.00 | $0.00 | $0.00 | $0.00 |
| ⊕ 06/18/2024 | Capitalized Interest | $0.00 | $0.00 | $0.00 | $0.00 |
| ⊕ 05/29/2024 | Payment | $0.00 | -$362.34 | $0.00 | -$362.34 |
| ⊕ 05/03/2024 | Adjustment | $0.00 | $0.00 | $0.00 | $0.00 |
| ⊕ 05/02/2024 | Payment | $0.00 | $0.00 | $0.00 | $0.00 |
| ⊕ 05/02/2024 | Payment | $0.00 | -$181.17 | $0.00 | -$181.17 |

**◌MOHELA®**

  

**Federal Student Loan Management**

Postpone Payments
Loan Forgiveness & Discharge
Loan Consolidation
Military Benefits

**Help & Support**

Contact Us
Info Center
FAQs

Pltf. 0031

**Sitemap**

**About Us**

**New to MOHELA**

**About MOHELA**

**Careers**

**Feedback**

**Contact Info**

1-888-866-4352 (Toll Free)
636-532-0060 (International)
TTY: Dial 711

Fax
866-222-7060
636-787-4038 (International)

Public Service Loan Forgiveness
800-4-FEDAID (Toll Free)

Official Servicer *of*

Federal **Student Aid**
*An OFFICE of the U.S. DEPARTMENT of EDUCATION*

Federal Student Aid (FSA) is your federal loan provider. FSA uses servicers (private companies) like Mohela to manage billing, questions, and payments, and to help you enroll in the best repayment plan for you.

**Learn more about Federal Student Aid** ⬏

**See your repayment options with** *Repayment Calculator* ⬏

**Privacy Policy**

**Security**

**Accessibility**

**Disclaimer of Endorsement**

**Massachusetts State Ombudsman**

**usa.gov** ⬏

**ed.gov** ⬏

**StudentAid.gov** ⬏

**NMLS Resource Center** ⬏
NMLS # 1442770

*Copyright © 2024 Higher Education Loan Authority of the State of Missouri (MOHELA). All Rights Reserved.*

Pltf. 0032

# EXHIBIT 5

# Letters from MOHELA Delaying Recertification, Feb. 22, 2025 & Oct. 11, 2025

Pltf. 0033

 

® | Official Servicer of
FederalStudentAid

633 Spirit Drive, Chesterfield, MO 63005

February 22, 2025

ACCT NUMBER: ▮▮▮▮▮▮

ROST C OLSEN
▮▮▮▮▮▮▮▮

ROST C OLSEN:

**You now have additional time to recertify your Income-Driven Repayment (IDR) plan**

As a result of a court action affecting income driven repayment, MOHELA at the direction of the Department of Education, has changed the date by which you need to recertify your current IDR plan to 10/24/26.

This change will have no impact on your current loan repayment status or your current monthly payment amount. For instance, this means if you are currently in a forbearance, this change does not affect your forbearance.

Based upon this change to your IDR plan recertification date, you will not need to recertify your IDR plan prior to 10/24/26. You should submit your recertification information to MOHELA at least 30 days prior to your new recertification date of 10/24/26. MOHELA will send you a reminder prior to this date to ensure documentation is submitted on time.

You may also visit StudentAid.gov/idr and provide consent for auto-recertification of your IDR plan if you are eligible. By doing so, your IDR plan may be recertified automatically on your IDR plan recertification date.

**Beware of scams.** You **never** have to pay a fee for help with your federal student aid. If you have questions or concerns about your loan payments, you can contact MOHELA for free help through mohela.studentaid.gov or by calling 1-888-866-4352 (Toll Free). You might be contacted by a company via phone, email, or postal mail saying they will help you get loan discharge, forgiveness, cancellation, or debt relief for a fee. Make sure you work **only** with the U.S. Department of Education's loan servicers, like MOHELA and **never** reveal your personal information or account password to anyone. Learn to avoid student aid scams. Our emails to borrowers come from noreply@mohela.studentaid.gov or info@mohela.studentaid.gov. You can report scam attempts to the Federal Trade Commission by calling 1-877-382-4357 or by visiting reportfraud.ftc.gov.

**<u>HOW TO CONTACT US</u>**

For information regarding your student loan(s) and the forgiveness process, please contact us at 1-888-866-4352 (Toll Free), or at mohela.studentaid.gov.

Sincerely,
MOHELA

H157

MOHELA is an official servicer of Federal Student Aid, an office of the U.S. Department of Education.

Learn more at StudentAid.gov

MOHELA | NMLS #1442770 | PO Box 790453 | St. Louis, MO 63179-0453
1-888-866-4352 (Toll Free) | mohela.studentaid.gov
in @MOHELA ✖ @MOHELA 🅵 @MOHELA.usa

Pltf. 0034

This message, from a debt collector, is an attempt to collect a debt and any information obtained will be used for that purpose.

**California residents:** The state Rosenthal Fair Debt Collection Practices Act and the Federal Fair Debt Collection Practices Act require that, except under unusual circumstances, collectors may not contact you before 8 a.m. or after 9 p.m. They may not harass you by using threats of violence or arrest or by using obscene language. Collectors may not use false or misleading statements or call you at work if they know or have reason to know that you may not receive personal calls at work. For the most part, collectors may not tell another person, other than your attorney or spouse, about your debt. Collectors may contact another person to confirm your location or enforce a judgement. For more information about debt collection activities, you may contact the Federal Trade Commission at 1-877-382-4357 or ftc.gov.

**Massachusetts residents**: If you are struggling with your student loans, please visit mass.gov/ago/studentloans to get help from the Ombudsman's Student Loan Assistance Unit.

  **MOHELA**® | *Official Servicer of* FederalStudentAid

633 Spirit Drive, Chesterfield, MO 63005

October 11, 2025

ACCT NUMBER: ███████

ROST C OLSEN
████████████████

ROST C OLSEN:

**You now have additional time to recertify your Income-Driven Repayment (IDR) plan**

As a result of a court action affecting income driven repayment, MOHELA at the direction of the Department of Education, has changed the date by which you need to recertify your current IDR plan to 10/24/27.

This change will have no impact on your current loan repayment status or your current monthly payment amount. For instance, this means if you are currently in a forbearance, this change does not affect your forbearance.

Based upon this change to your IDR plan recertification date, you will not need to recertify your IDR plan prior to 10/24/27. You should submit your recertification information to MOHELA at least 30 days prior to your new recertification date of 10/24/27. MOHELA will send you a reminder prior to this date to ensure documentation is submitted on time.

You may also visit StudentAid.gov/idr and provide consent for auto-recertification of your IDR plan if you are eligible. By doing so, your IDR plan may be recertified automatically on your IDR plan recertification date.

**Beware of scams.** You **never** have to pay a fee for help with your federal student aid. If you have questions or concerns about your loan payments, you can contact MOHELA for free help through mohela.studentaid.gov or by calling 1-888-866-4352 (Toll Free). You might be contacted by a company via phone, email, or postal mail saying they will help you get loan discharge, forgiveness, cancellation, or debt relief for a fee. Make sure you work **only** with the U.S. Department of Education's loan servicers, like MOHELA and **never** reveal your personal information or account password to anyone. Learn to avoid student aid scams. Our emails to borrowers come from noreply@mohela.studentaid.gov or info@mohela.studentaid.gov. You can report scam attempts to the Federal Trade Commission by calling 1-877-382-4357 or by visiting reportfraud.ftc.gov.

**HOW TO CONTACT US**

For information regarding your student loan(s) and the forgiveness process, please contact us at 1-888-866-4352 (Toll Free), or at mohela.studentaid.gov.

Sincerely,
MOHELA

H157

MOHELA is an official servicer of Federal Student Aid, an office of the U.S. Department of Education.

Learn more at StudentAid.gov

MOHELA | NMLS #1442770 | PO Box 790453 | St. Louis, MO 63179-0453
1-888-866-4352 (Toll Free) | mohela.studentaid.gov
in @MOHELA  ✖ @MOHELA  f @MOHELA.usa

This message, from a debt collector, is an attempt to collect a debt and any information obtained will be used for that purpose.

**California residents:** The state Rosenthal Fair Debt Collection Practices Act and the Federal Fair Debt Collection Practices Act require that, except under unusual circumstances, collectors may not contact you before 8 a.m. or after 9 p.m. They may not harass you by using threats of violence or arrest or by using obscene language. Collectors may not use false or misleading statements or call you at work if they know or have reason to know that you may not receive personal calls at work. For the most part, collectors may not tell another person, other than your attorney or spouse, about your debt. Collectors may contact another person to confirm your location or enforce a judgement. For more information about debt collection activities, you may contact the Federal Trade Commission at 1-877-382-4357 or ftc.gov.

**Massachusetts residents**: If you are struggling with your student loans, please visit mass.gov/ago/studentloans to get help from the Ombudsman's Student Loan Assistance Unit.

# EXHIBIT 6

Screenshot of Information from StudentAid.gov regarding Delaying of Recertification Deadlines, source URL: https://studentaid.gov/announcements-events/idr-court-actions (accessed January 6, 2026)

Pltf. 0038

## The IDR application was temporarily unavailable. How does this affect my IDR recertification deadline?

The IDR application's temporary unavailability affected borrowers in different ways depending on each borrower's circumstances.

### If your recertification date was on or before March 17, 2025 ⌄

### If your recertification date was on or after March 18, 2025 ⌃

If your recertification date was on or after March 18, 2025, you were due to recertify on or after Feb. 21, 2025.

- If you were due to submit a recertification request on or after Feb. 21, 2025, but before Feb. 1, 2026, then your recertification date has been extended by one year. You do not need to submit a recertification request at this time. In some instances, borrowers who should have had their recertification date extended were moved to a monthly payment amount that is not based on their income and family size. Loan servicers are actively working to move those affected borrowers back to the monthly payment amount based on their income and family size.

- If you have a recertification date on or after Feb. 1, 2026, then your recertification date has **not** been extended. You are still required to recertify by your existing recertification deadline.

https://studentaid.gov/announcements-events/idr-court-actions

Accessed 1/6/2026

# EXHIBIT 7

# PSLF Qualifying Payment Update sent from DoEd to Mr. Olsen, April 6, 2026

Pltf. 0040


*An* OFFICE *of the* U.S. DEPARTMENT *of* EDUCATION

04-06-2026

Rost Olsen
███████████████
███████████████████

Dear Rost,

This message is to inform you about a change regarding your progress toward Public Service Loan Forgiveness (PSLF) or Temporary Expanded PSLF (TEPSLF).

**PSLF/TEPSLF Status**

| Loan Disbursement Date | Loan Type | Balance | Servicer | PSLF EPs | PSLF QPs | TEPSLF EPs | TEPSLF QPs |
|---|---|---|---|---|---|---|---|
| 11/04/2016 | Direct Consolidation Unsubsidized | 308638.75 | DEPT OF ED/MOHELA | 116 | 111 | 116 | 111 |
| 11/04/2016 | Direct Consolidation Subsidized | 46523.14 | DEPT OF ED/MOHELA | 116 | 111 | 116 | 111 |

*The information above was generated as of the date of this letter and may not reflect real-time activity since the submission of your most recent PSLF form.*

The table above includes your eligible payments that require employment certification and your PSLF/TEPSLF qualifying payments.

- An eligible payment (EP) meets qualifying monthly payment requirements for PSLF or TEPSLF, but employment has not yet been certified for that month.

- Once certified employment has been approved, it is matched to an EP and results in a PSLF/TEPSLF qualifying payment (QP). However, if you consolidate your loans on or after September 1, 2024, and the dates of your employment are prior to the consolidation, a weighted average will be applied to determine your QP count from the loans included in your consolidation loan.

- To receive PSLF/TEPSLF, you need 120 months of qualifying payments.

- If you have questions about payments that are not eligible, contact your servicer. You can find their contact information on your account dashboard or on our list of servicers at https://studentaid.gov/servicer.

- If you have any questions about your PSLF form submission, this letter, or the PSLF or TEPSLF programs, please visit StudentAid.gov/publicservice to learn more or call us at 1-888-303-7818.

To view your certified employment and PSLF payment history, log in to StudentAid.gov/login with your

account username and password. After you log in, navigate to My Aid where you can get this information as soon as it is updated. You may also access prior PSLF form submissions on your account through My Activity.


Sincerely,
Federal Student Aid
U.S. Department of Education

# EXHIBIT 8

# Email Confirming Receipt of Mr. Olsen's Buyback Request

Pltf. 0043

From: **Public Service Loan Forgiveness**
customerservice@studentaid.gov
Subject: **PSLF Reconsideration Case #: 34197214**
Date: **Apr 6, 2026 at 8:59:29 AM**
To:



Dear Rost Olsen,

Thank you for submitting a Public Service Loan Forgiveness Reconsideration request.  Your case number is #34197214.

Please retain this number for reference.

Because of the number of requests, reconsideration reviews may take some time. We will provide the status or results of your reconsideration request via email, and thank you for your patience.

Sincerely,

Federal Student Aid

This email was sent by: Office of Federal Student Aid
U.S. Department of Education
400 Maryland Ave. SW,
Washington, DC, 20002, US

Pltf. 0044

If you wish to contact us, please use the StudentAid.gov contact page. For more information about financial aid, visit StudentAid.gov.

CONFIDENTIALITY NOTICE: This e-mail message, including any attachments, is for the sole use of the intended recipient and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message.

Pltf. 0045

# EXHIBIT 9

# Employment Certification Forms

Pltf. 0046

Docusign Envelope ID: 2B55C817-B8C7-4705-8EA4-99A820135CE9



# Public Service Loan Forgiveness (PSLF) & Temporary Expanded PSLF (TEPSLF) Certification & Application

**PSLF**

### William D. Ford Federal Direct Loan (Direct Loan) Program

OMB No. 1845-0110
Form Approved
Exp. Date: 12/31/2026

**WARNING:** Any person who knowingly makes a false statement or misrepresentation on this form or on any accompanying document is subject to penalties that may include fines, imprisonment, or both, under the U.S. Criminal Code and 20 U.S.C. 1097.

## Section 1: Borrower Information

Social Security Number (SSN): █████████

Date of Birth: ████████

Name: Rost Olsen

Address: ███████████

City: ████████    State: ██    Zip Code: ████████

Telephone – Primary: ███████

Email: ████████

> For more information on PSLF, visit **StudentAid.gov/publicservice**. To apply online, visit **StudentAid.gov/PSLF**.

## Section 2: Borrower Request, Understandings, and Certification

**I request (1)** that the U.S. Department of Education (the Department) consider this form an application for loan forgiveness to determine whether I qualify for PSLF or TEPSLF, and discharge any qualifying loans that I have, and **(2)** if none of my loans qualify for PSLF or TEPSLF forgiveness when I submit this form, determine how many qualifying payments I have made toward PSLF and TEPSLF.

☐ I believe I qualify for forgiveness now and request a forbearance while my application is being processed. I understand this period of forbearance will not count toward forgiveness, if the Department determines I am not yet eligible for forgiveness.

5169820969533 9417

Pltf. 0047

**Borrower Name:** Rost Olsen                                    **Borrower SSN:** ▇▇▇▇▇▇▇

**I understand** that:

1.  To qualify for forgiveness, I must have made 120 qualifying payments on my Direct Loans while employed full-time by a qualifying employer. Neither the 120 qualifying payments nor the qualifying employment have to be consecutive.

2.  To qualify for forgiveness, I must be employed full-time by a qualifying employer when I apply for forgiveness.

3.  If the Department determines that I appear to be eligible for forgiveness, the Department may contact my employer before granting forgiveness to ensure that I was employed by the employer at the time I applied for forgiveness.

4.  If I am eligible for forgiveness, the amount forgiven will be the principal and interest that was due on my eligible Direct Loans when I made my final qualifying payment. Any amount that I pay on those loans after I have made my final qualifying payment will be treated as an overpayment. I must continue to make payments on any of my other loans.

5.  If I am not yet eligible for forgiveness, I will be notified of the determination, why it was made, and how many qualifying payments I have made toward PSLF and TEPSLF. If I requested my loans be placed in forbearance while this determination was being made, they will be placed back into repayment.

**I certify** that all the information I have provided on this form and in any accompanying document is true, complete, and correct to the best of my knowledge and belief.

**Borrower's Signature:** _____ Rost Olsen _____ **Date (mm/dd/yyyy):** 09/17/2025 _____

| Pages 1 and 2 of this form must be completed in their entirety. |
| --- |

## Section 3: Before You Begin

*   We highly recommend that you complete this form online by going to **StudentAid.gov/pslf**. Doing so allows you to search for your employer using the PSLF Employer Database to prepopulate this form, provide your own electronic signature, request that your employer sign electronically, and, once your employer signs electronically, submit this form directly to the Department on your behalf.

*   You should complete this form annually or any time you change employers or have a change in your employment status.

*   Review the instructions in Section 6 before you complete the remainder of this form.

Pltf. 0048

Docusign Envelope ID: 2B55C817-B8C7-4705-8EA4-99A820125CE9

**Borrower Name:** Rost Olsen                 **Borrower SSN:** ▮▮▮▮

## Section 4: Employer Information (to be completed by the borrower or employer)

1. Federal Employer Identification Number (FEIN/EIN): ▮▮▮▮
2. Employer Name: STATE OF NEVADA
3. Employer Address:

   Street: 100 N. Carson St

   City: Carson City          State: NV          Zip Code: 89701

   Employer Website (if any):
4. Employment Period:

   Employment or Certification Begin Date (mm/dd/yyyy): 10/28/2019

   Employment or Certification End Date (mm/dd/yyyy): 08/29/2025     OR  ☐ Still Employed
5. Employment Status: ☒ Full-Time    ☐ Part-Time
6. Average hours per week: 40          (round up to nearest whole number)

☐ Check this box if your employer cannot be contacted because the organization has closed or is unable to certify your employment, and skip to Section 5B.

## Section 5A: Employer Certification (to be completed by the employer)

Terms in **Bold** are defined in Section 7.

By providing an **acceptable signature** below, I certify that (1) the information in Section 4 is true, complete, and correct to the best of my knowledge and belief (see Section 6 for instructions), (2) I am an **authorized official** of the organization named in Section 4, and (3) the borrower named in Section 1 is or was a **direct employee** of the organization named in Section 4; or is or was employed under a contract in a position or providing services that, under applicable state law, cannot be filled or provided by a direct employee of the organization named in Section 4.

> If any of the information is crossed out or altered in Section 4 or 5A, the authorized official must initial those changes.

Official's Name: Kylie Curl                 Official's Phone: 775-687-9095

Official's Title: HR Tech 2

Official's Email: voe@admin.nv.gov

**Authorized Official's Signature:** *Kylie Curl*          **Date (mm/dd/yyyy):** 9/17/2025



# Public Service Loan Forgiveness (PSLF) & Temporary Expanded PSLF (TEPSLF) Certification & Application

**PSLF**

## William D. Ford Federal Direct Loan (Direct Loan) Program

OMB No. 1845-0110
Form Approved
Exp. Date: 12/31/2026

**WARNING:** Any person who knowingly makes a false statement or misrepresentation on this form or on any accompanying document is subject to penalties that may include fines, imprisonment, or both, under the U.S. Criminal Code and 20 U.S.C. 1097.

## Section 1: Borrower Information

Social Security Number (SSN): █████████

Date of Birth: ████████

Name: Rost Olsen

Address: ████████

City: ████████    State: ██    Zip Code: ████████

Telephone – Primary: ████████

Email: ████████

> For more information on PSLF, visit **StudentAid.gov/publicservice**. To apply online, visit **StudentAid.gov/PSLF**.

## Section 2: Borrower Request, Understandings, and Certification

**I request (1)** that the U.S. Department of Education (the Department) consider this form an application for loan forgiveness to determine whether I qualify for PSLF or TEPSLF, and discharge any qualifying loans that I have, and **(2)** if none of my loans qualify for PSLF or TEPSLF forgiveness when I submit this form, determine how many qualifying payments I have made toward PSLF and TEPSLF.

☐ I believe I qualify for forgiveness now and request a forbearance while my application is being processed. I understand this period of forbearance will not count toward forgiveness, if the Department determines I am not yet eligible for forgiveness.

31132735099088267

**Borrower Name:** Rost Olsen _____    **Borrower SSN:** ████████ _____

**I understand** that:

1.  To qualify for forgiveness, I must have made 120 qualifying payments on my Direct Loans while employed full-time by a qualifying employer. Neither the 120 qualifying payments nor the qualifying employment have to be consecutive.

2.  To qualify for forgiveness, I must be employed full-time by a qualifying employer when I apply for forgiveness.

3.  If the Department determines that I appear to be eligible for forgiveness, the Department may contact my employer before granting forgiveness to ensure that I was employed by the employer at the time I applied for forgiveness.

4.  If I am eligible for forgiveness, the amount forgiven will be the principal and interest that was due on my eligible Direct Loans when I made my final qualifying payment. Any amount that I pay on those loans after I have made my final qualifying payment will be treated as an overpayment. I must continue to make payments on any of my other loans.

5.  If I am not yet eligible for forgiveness, I will be notified of the determination, why it was made, and how many qualifying payments I have made toward PSLF and TEPSLF. If I requested my loans be placed in forbearance while this determination was being made, they will be placed back into repayment.

**I certify** that all the information I have provided on this form and in any accompanying document is true, complete, and correct to the best of my knowledge and belief.

**Borrower's Signature:** _____   Rost Olsen   _____   **Date (mm/dd/yyyy):** 04/01/2026 _____

> Pages 1 and 2 of this form must be completed in their entirety.

## Section 3: Before You Begin

-   We highly recommend that you complete this form online by going to **StudentAid.gov/pslf**. Doing so allows you to search for your employer using the PSLF Employer Database to prepopulate this form, provide your own electronic signature, request that your employer sign electronically, and, once your employer signs electronically, submit this form directly to the Department on your behalf.

-   You should complete this form annually or any time you change employers or have a change in your employment status.

-   Review the instructions in Section 6 before you complete the remainder of this form.

**Borrower Name:** Rost Olsen     **Borrower SSN:** ████

## Section 4: Employer Information (to be completed by the borrower or employer)

1. Federal Employer Identification Number (FEIN/EIN): ████

2. Employer Name: WASHOE COUNTY

3. Employer Address:

   Street: 1001 E Ninth St

   City: Reno     State: NV     Zip Code: 89512

   Employer Website (if any): washoecounty.gov

4. Employment Period:

   Employment or Certification Begin Date (mm/dd/yyyy): 09/02/2025

   Employment or Certification End Date (mm/dd/yyyy): _____ OR [x] Still Employed

5. Employment Status: [x] Full-Time     [ ] Part-Time

6. Average hours per week: 40     (round up to nearest whole number)

[ ] Check this box if your employer cannot be contacted because the organization has closed or is unable to certify your employment, and skip to Section 5B.

## Section 5A: Employer Certification (to be completed by the employer)

Terms in **Bold** are defined in Section 7.

By providing an **acceptable signature** below, I certify that (1) the information in Section 4 is true, complete, and correct to the best of my knowledge and belief (see Section 6 for instructions), (2) I am an **authorized official** of the organization named in Section 4, and (3) the borrower named in Section 1 is or was a **direct employee** of the organization named in Section 4; or is or was employed under a contract in a position or providing services that, under applicable state law, cannot be filled or provided by a direct employee of the organization named in Section 4.

| If any of the information is crossed out or altered in Section 4 or 5A, the authorized official must initial those changes. |
| --- |

Official's Name: Lorna McPalmer     Official's Phone: 775-328-2081

Official's Title: Administrative Assistant II

Official's Email: hremployeerecords@washoecounty.gov

**Authorized Official's Signature:** *Lorna McPalmer*     **Date (mm/dd/yyyy):** 4/1/2026

Pltf. 0052

# EXHIBIT 10

Screenshot from StudentAid.gov regarding use of SAVE Plan, source URL: https://studentaid.gov/announcements-events/idr-court-actions (accessed April 13, 2026 and July 20, 2026)

Pltf. 0053

## How does the most recent court action affect Public Service Loan Forgiveness (PSLF) buyback?

Part of determining the amount of PSLF buyback requires an analysis of the repayment plan that a borrower was on before or after a period of deferment or forbearance.

If the start or end date for the period of deferment or forbearance that is being bought back is on or after July 1, 2024, then the amount required to buy back that period of time cannot be based on the SAVE Plan formula.

If the borrower was not on the IBR, PAYE, or ICR Plan on either side of the period of time being bought back, then we will request income and family size information from the borrower to determine the appropriate buyback amount.

Source URL: https://studentaid.gov/announcements-events/idr-court-actions (accessed April 13, 2026)

# EXHIBIT 11

# Legal Demand Letter from Mr. Olsen to DoEd, May 28, 2026 (exhibits thereto omitted)

Pltf. 0055



**Rost C. Olsen, Esq.**



May 28, 2026

U.S. Department of Education
ATTN: Office of the General Counsel
400 Maryland Avenue, SW
Washington, D.C. 20202
OGC.MainPhone@ed.gov

*Sent via Certified Mail and Email*


RE: Legal Demand – PSLF Reconsideration Case #34197214


Dear Sir or Madam:

I am writing to respectfully demand the Department of Education ("DoEd") process my Public Service Loan Forgiveness ("PSLF") Buyback application, utilizing the Saving on a Valuable Education Plan ("SAVE Plan") formula and the tax information I submitted when I last recertified my income in October 2023. I currently have 111 PSLF-qualifying payments on my student loans,[1] and I am seeking to buy back nine months that my loans were in forbearance (September 2024-May 2025). **Specifically, I am seeking a Buyback Agreement directing DoEd to discharge the balance of my consolidated student loans pursuant to PSLF, upon me making a payment of $1,268.19[2] to MOHELA, the servicer handling my student loans.**

In July 2016, I executed a DoEd-approved Master Promissory Note ("MPN") to consolidate my student loans. I was living in and executed the MPN in the state of Nevada. The MPN incorporated PSLF by reference.[3]

In October 2023, I recertified my income and applied to be on the SAVE Plan. With my income and family size, my monthly payment on the SAVE Plan was $181.17. From May-June 2024, MOHELA placed my student loans in a PSLF-eligible forbearance in order to facilitate a change of platform of some sorts. However, due to a misunderstanding regarding this forbearance, I made two monthly payments, resulting in my account being paid ahead in the amount of $362.34.

Also in June 2024, due to another misunderstanding surrounding potential SAVE litigation, I submitted a request to recalculate my payment. This resulted in another two-month PSLF-eligible forbearance.[4] In July 2024, a court enjoined the SAVE Plan, and the DoEd placed all borrowers

---

[1] *See* PSLF Qualifying Payment Update, April 6, 2026, attached as Exhibit 1.
[2] Calculation of this amount explained on page 2 herein.
[3] Relevant excerpt of the MPN attached as Exhibit 2.
[4] *See* 34 CFR § 685.209(b)(9).

1 of 6

on the SAVE Plan in a forbearance that is not PSLF-eligible (the "SAVE Forbearance"). As my PSLF-eligible forbearance ended in August 2024, my student loans were placed in the SAVE Forbearance beginning September 2024.

During the SAVE Forbearance, I received communication from MOHELA, twice delaying the date by which I had to recertify my income for Income Driven Repayment ("IDR") purposes due to ongoing litigation affecting the SAVE Plan and other IDR plans.[5] Upon information and belief, borrowers in various IDR plans received this delay, regardless of whether they were in the SAVE Plan. Accordingly, borrowers not in the SAVE Forbearance who had their income recertification dates delayed maintained the same monthly payment through their new recertification dates, regardless of whether their incomes increased or decreased.

In March 2026, DoEd settled the on-going SAVE Plan litigation (the "Settlement Agreement").[6] Notably, while the Settlement Agreement prohibits prospective use of the SAVE Plan, it is silent as to using the SAVE Plan formula to calculate PSLF Buyback amounts for the months from the beginning of the SAVE Forbearance until the court's entry of judgment ratifying the Settlement Agreement. With the conclusion of the litigation, the injunction prohibiting the use of the SAVE Plan formula for those pre-settlement months was dissolved. Nonetheless, as of April 13, 2026, the StudentAid.gov website claims that Buyback calculations for months in forbearance after July 1, 2024 "cannot be based on the SAVE formula."[7]

On April 6, 2026, in accordance with the PSLF Buyback regulations and the guidance on StudentAid.gov, I submitted a PSLF Reconsideration Request (my "Buyback Request"). I received an email confirming submission of the request, but I have yet to receive any updates as to the status of my Buyback Request, other than a standard email stating updates are unavailable..

I have maintained PSLF-eligible employment during the SAVE Forbearance, and have submitted verification of my employment during the months I seek to buy back.[8]

Based on the foregoing facts, **I respectfully request that the DoEd provide me a proposed PSLF Buyback Agreement confirming that they will discharge the balance of my consolidated student loans under the MPN upon my payment of $1,268.19 to MOHELA**, the student loan servicer that is servicing my loans (9 months x payment amount of $181.17 – paid-ahead amount of $362.34).

///

///

///

---

[5] *See* attached correspondence and screenshot from studentaid.gov addressing delay, attached as Exhibit 3.

[6] https://www.ed.gov/media/document/missouri-settlement-112689.pdf; *see also Missouri v. Trump,* 2026 WL 696770 (8th Cir. 2026).

[7] *See* https://studentaid.gov/announcements-events/idr-court-actions (accessed April 13, 2026). A copy is attached as Exhibit 4.

[8] *See* redacted copy of Employment Certification Forms, attached as Exhibit 5.

2 of 6

I do not wish to litigate this matter, but I see several legal issues that I would be prepared to litigate if need be, including, but not limited to, the following:

1) **Unreasonable delay of agency action, in violation of the Administrative Procedure Act (5 U.S.C. § 706(1))**

The Secretary of the DoEd has a non-discretionary duty to discharge loans once a borrower qualifies for PSLF.[9] Further, PSLF regulations entitle a borrower to buy back and receive PSLF credit for months in forbearance if: (1) the borrower held PSLF-eligible employment for those months; (2) the borrower pays at least what they *would have paid* on an IDR plan for those months if they were not in forbearance; and (3) obtaining credit for those months would result in the borrower achieving the 120 months of qualifying payments needed to obtain forgiveness.[10]

The Administrative Procedure Act ("APA") mandates that courts "compel agency action unlawfully withheld or unreasonably delayed."[11] In evaluating an APA claim for unreasonable delay, the court must consider the so-called *TRAC* factors: (1) rule of reason; (2) congressional timetables; (3) effect on human health and welfare; (4) competing agency priorities; (5) prejudiced interests; and (6) agency bad faith.[12]

In evaluating the facts here under the *TRAC* factors, there appears to be a strong case for unreasonable delay. In evaluating other litigation involving PSLF Buyback, there does not appear to be any ordered reasoning in the processing of Buyback Requests; anecdotally, some folks have been waiting almost two years for their requests to be processed, while others have had theirs processed in mere weeks.

While Congress does not provide a timetable for PSLF or Buyback, this delay does affect the health and welfare of my family and is prejudicial to our interests. For instance, we are looking to move to a house that more suitably meets the needs of our child with special needs; having this balance on my credit report unnecessarily impacts our ability to qualify for a mortgage and make a competitive offer.

Regarding agency priorities, DoEd already possesses the data needed to calculate and process a Buyback Agreement with no disruption to other agency priorities. On a macro-level, this is a process that could be largely automated, even.

But, regarding agency bad faith, unfortunately, there is evidence that shows bad faith on the part of DoEd in how it has handled PSLF Buyback Requests in general. Status Reports filed in the *AFT* litigation shows an ever-growing backlog of Buyback Requests with slow progress; most months'

---

[9] 20 U.S.C. § 1087e(m).

[10] 34 CFR § 685.219(g)(6).

[11] 5 U.S.C. § 706(1).

[12] *Telecommunications Research & Action Center v. FCC*, 750 F.2d 70, 79-80 (D.C. Cir. 1984) ("*TRAC*"); *see also Vaz v. Neal, 33* F.4th 1131, 1137 (9th Cir. 2022).

3 of 6

status reports show DoEd receiving more Buyback Requests than they process.[13] According to the *AFT* Status Reports, DoEd has only processed an average of approximately 3,073 Buyback Requests per month.[14] In comparison, as of May 8, 2026, the IRS has processed roughly 144 million income tax returns this year (roughly 36 million tax returns per month, on average), despite even a simple Form 1040 requiring significantly more information than a PSLF Buyback Request.[15]

From these numbers, even when accounting for the difference in size of the agencies (the IRS has roughly 75,000 employees[16], compared to DoEd's approximately 2,000 employees[17]), the IRS is still processing approximately 480 tax returns per employee per month, while DoEd is only processing approximately *1.5* Buyback Requests per employee per month.[18]

So, in evaluating this case under the *TRAC* factors, it appears there is an unreasonable delay on the part of the DoEd in processing my Buyback Request.

2)  **Breach of Contract – Anticipatory Breach (Nevada State Law Claim)**

The MPN constitutes a valid contract under Nevada law. As discussed earlier, the MPN incorporates PSLF by reference, and binds DoEd to perform in accordance with PSLF statutory and regulatory authority.

Anticipatory repudiation is "the promisor's renunciation of a 'contractual duty *before* the time fixed in the contract for…performance.'"[19] "A contractual anticipatory repudiation must be clear, positive, and unequivocal."[20] "Whether specific conduct or language is sufficiently clear to constitute an anticipatory repudiation [of a contract] must be decided in light of the total factual context of the individual case."[21] A party may choose to sue another party for breach of contract immediately upon an anticipatory repudiation, even if the contracted time for performance has not occurred. In *Schwartz v. Wasserburger*, the Nevada Supreme Court held that "a cause of action in contract cases involving a wholly anticipatory repudiation accrues either on the date that

---

[13] *See American Federation of Teachers v. U.S. Department of Education*, D.C. Dist. Ct. No. 1:25-cv-00802, ECF no.'s 36, 37, 38, 39, 42, 58, 60, 61, 62, 63, & 64.

[14] *See id.*

[15] *See* https://www.irs.gov/newsroom/filing-season-statistics-for-week-ending-may-8-2026.

[16] *See* https://www.govexec.com/workforce/2026/03/after-shedding-25000-employees-irs-chief-says-his-agency-now-has-perfect-staffing-level/411890/ (accessed May 26, 2026).

[17] *See* https://www.insidehighered.com/news/government/student-aid-policy/2025/10/10/trump-fires-more-education-dept-employees (accessed May 26, 2026).

[18] Notably, the backlog of Buyback Requests sits at 88,000 pursuant to the latest Status Report in the AFT lawsuit. *See* n. 13, ECF 64, *supra*. If DoEd processed Buyback Requests at only 1/10th of the efficiency the IRS has processed tax returns so far this year (48 Buyback Requests per employee per month), DoEd would clear the 88,000 backlog in less than a month.

[19] *Franconia Associates v. U.S.*, 536 U.S. 129, 143 (2002) (emphasis in original) (quoting 4 A. Corbin, Contracts § 959, p. 855 (1951)).

[20] *Covington Bros. v. Valley Plastering, Inc.,* 93 Nev. 355, 360, 566 P.2d 814, 917 (1977).

[21] *Id.*

4 of 6

performance under the contract is due or, if the plaintiff so elects, on the date that the plaintiff sues upon the anticipatory breach."[22]

Here, as of April 13, 2026, DoEd maintains on StudentAid.gov that Buyback calculations for months in forbearance after July 1, 2024 "cannot be based on the SAVE formula."[23]

But that's wrong.

Upon concluding the SAVE Plan litigation, the injunction enjoining the use of the SAVE Plan formula to calculate student loan payments dissolved as a matter of law. Yet, in the Settlement Agreement, DoEd and the other parties to that litigation did not include any provision addressing the use of the SAVE Plan formula to calculate PSLF Buyback Agreements for borrowers seeking to buy back months from the beginning of the SAVE Forbearance through the date the court ratified the Settlement Agreement.[24] Additionally, the court's order ratifying the Settlement Agreement did not preclude such a use either.[25]

As a result, with the litigation concluded, the injunction dissolved, and the Settlement Agreement's silence on the matter, there is no legal obstacle to utilizing the SAVE Plan formula to calculate Buyback Agreements for months between September 2024 and March 2026.

Accordingly, as those regulations remain in effect for those months without the injunction, the SAVE Plan is an eligible IDR plan to use to calculate a Buyback Agreement for the months I seek to buy back. Further, as the SAVE Plan formula provides the lowest payment amount for those months, I am entitled to a Buyback Agreement stipulating discharge of the balance of my loans upon payment of what I would have paid during those months on the SAVE Plan, minus the amount my account was already paid ahead.[26]

In light of this, because the MPN incorporates PSLF and binds DoEd to follow its enacted statutes and regulations (such as Buyback and SAVE when it was in effect),[27] DoEd's statement that it "cannot" use the SAVE Plan formula to calculate the Buyback Agreement to which I am entitled constitutes a "clear, positive, and unequivocal" refusal to abide by the MPN's terms.[28]

Thus, independent of any action under the APA, I have a claim against DoEd for breach of contract.

///

///

---

[22] 117 Nev. 703, 707, 30 P.3d 1114, 1116 (2001).

[23] *See* n. 7, *supra*.

[24] *See* n. 6, *supra*.

[25] *See id.*

[26] *See* 20 U.S.C. § 1087e(m) *and* 34 CFR § 685.219(g)(6).

[27] *See* n. 2, *supra*.

[28] *See Covington*, n. 20, *supra*.

5 of 6

In conclusion, I sincerely wish not to litigate this matter. I am hopeful that we can come to an amicable resolution. However, should I not receive a response to this letter by **July 15, 2026**, I will have no choice but to pursue my legal options.

Sincerely,

Rost C. Olsen, Esq.

Pltf. 0061

# EXHIBIT 12

# Emails from MOHELA to Mr. Olsen, July 1-2, 2026

Pltf. 0062



**Rost Olsen** ████████████████████

## You Have 90 Days to Select a New Repayment Plan

1 message

**MOHELA** <edelivery@mohela.studentaid.gov>                    Wed, Jul 1, 2026 at 6:24 PM
To: ████████████████



New Plan Required: 90 Days

A recent legal settlement ended the Saving on a Valuable Education (SAVE) Plan, and it is no longer available to borrowers. As a result of the settlement, MOHELA was directed by the U.S. Department of Education (ED) to move all borrowers out of the SAVE Plan. **You must now select a new repayment plan.** If you're currently enrolled in the SAVE Plan but don't submit a new application for a different repayment plan within 90 days, you will be placed on the Standard Repayment Plan. If you have a new loan in repayment on or after July 1, 2026, we will place you on the Tiered Standard Plan.

Visit StudentAid.gov/repayment-calculator to estimate monthly payments, determine your eligibility, and choose the repayment plan that best meets your needs and goals.

You can find more information about the settlement at StudentAid.gov/courtactions.

If you have questions, contact MOHELA.

**Apply Faster by Sharing Your Federal Tax Information**
If you have eligible loans, applying for a new income-driven repayment (IDR) plan is quick and easy if you provide consent for ED to obtain your federal tax information directly from the IRS. This allows ED to process your application faster and eliminates

Pltf. 0063

the time-consuming work of manually uploading your income information.

By providing consent for ED to access your federal tax information, ED can automatically recertify your IDR plan.

Visit StudentAid.gov/idr to begin your application.

**Lower Your Interest Rate on Auto Pay**
If you're not already on auto pay, sign up now to lower your interest rate on eligible federal student loans. Starting July 1, 2026, when you sign up for auto pay, the interest rate will be reduced by 1%. This interest rate reduction means you'll accrue less interest and pay off your loans faster.

To get this benefit, you must

- have Direct Loans disbursed on or after July 1, 2012,
- enroll in auto pay by 11:59 p.m. Eastern time on Sept. 30, 2026, and
- remain on auto pay and stay in active repayment on your federal student loans.

After June 30, 2028, your interest rate discount will automatically revert to 0.25%, the standard auto pay interest rate reduction.

**Beware of Scams**
Avoid student aid scams. You might be contacted by a company saying they will help you get loan discharge or cancellation for a fee. Make sure you work only with ED's office of Federal Student Aid (FSA) and its official loan servicers (like us). We will always help you for free. Our emails come only from noreply@mohela.studentaid.gov and info@mohela.studentaid.gov, and emails from FSA come only from noreply@studentaid.gov.

Never reveal your personal information or account password to anyone.

**How to Contact Us**
Visit Mohela.studentaid.gov/contact for our contact information.

Sincerely,
MOHELA

Pltf. 0064



MOHELA is a servicer for Federal Student Aid. We're here to assist you with managing your loans.

**Resources**

StudentAid.gov                    *Loan Simulator*

This email was sent by:

MOHELA

NMLS 1442770

633 Spirit Drive

Chesterfield, MO 63005

Pltf. 0065

This email is an attempt to communicate timely information to you. You received this message because you are a MOHELA customer and signed up for our eDelivery of your notifications. Replies to this message will not be read or responded to. If you want to contact us or cancel your participation in our eDelivery program, log into mohela.studentaid.gov or contact customer service at 1-888-866-4352 (Toll Free).

Privacy Policy

This message is an attempt to collect a debt and any information obtained will be used for that purpose.

California residents: The state Rosenthal Fair Debt Collection Practices Act and the federal Fair Debt Collection Practices Act require that, except under unusual circumstances, collectors may not contact you before 8 a.m. or after 9 p.m. They may not harass you by using threats of violence or arrest or by using obscene language. Collectors may not use false or misleading statements or call you at work if they know or have reason to know that you may not receive personal calls at work. For the most part, collectors may not tell another person, other than your attorney or spouse, about your debt. Collectors may contact another person to confirm your location or enforce a judgment. For more information about debt collection activities, you may contact the Federal Trade Commission at 1-877-FTC-HELP or www.ftc.gov.

Massachusetts residents: If you are struggling with your student loans, please visit www.mass.gov/ago/studentloans to get help from the Ombudsman's Student Loan Assistance Unit.

Feedback

Pltf. 0066



**Rost Olsen** <span style="background:black">        </span>

## Your SAVE Plan Application Has Been Denied

1 message

**MOHELA** <edelivery@mohela.studentaid.gov>        Thu, Jul 2, 2026 at 12:51 PM
To:<span style="background:black">      </span>



The SAVE Plan Ended - Take Action

A recent legal settlement ended the Saving on a Valuable Education (SAVE) Plan, and it is no longer available to borrowers. As a result of the settlement, MOHELA was directed by the U.S. Department of Education (ED) to deny all SAVE Plan applications. Visit StudentAid.gov/courtactions for more information about the settlement.

MOHELA records show that you submitted an income-driven repayment (IDR) plan application and requested either

- the SAVE Plan or
- the SAVE Plan and another plan.

**You must now select a new repayment plan.** If you're not currently enrolled in the SAVE Plan and don't submit a new application for a different repayment plan within 90 days, your SAVE forbearance will end and you will be required to resume payments on the plan you were on before you applied for SAVE. If you're currently enrolled in the SAVE Plan, you will be placed on either the Standard Repayment Plan or the Tiered Standard Plan, depending on your circumstances.

Visit StudentAid.gov/repayment-calculator to estimate monthly payments, determine your eligibility, and choose the repayment plan that meets your needs and goals.

Pltf. 0067

If you have questions, contact MOHELA.

**Apply Faster by Sharing Your Federal Tax Information**
If you have eligible loans, applying for a new IDR plan is quick and easy if you provide consent for ED to obtain your federal tax information directly from the IRS. This allows ED to process your application faster and eliminates the time-consuming work of manually uploading your income information.

By providing consent for ED to access your federal tax information, ED can automatically recertify your IDR plan.

Visit StudentAid.gov/idr to begin your application.

**Lower Your Interest Rate on Auto Pay**
If you're not already on auto pay, sign up now to lower your interest rate on eligible federal student loans. Starting July 1, 2026, when you sign up for auto pay, the interest rate will be reduced by 1%. This interest rate reduction means you'll accrue less interest and pay off your loans faster.

To get this benefit, you must
- have Direct Loans disbursed on or after July 1, 2012;
- enroll in auto pay by 11:59 p.m. Eastern time on Sept. 30, 2026; and
- remain on auto pay and stay in active repayment on your federal student loans.

After June 30, 2028, your interest rate discount will automatically revert to 0.25%, the standard auto pay interest rate reduction.

**Beware of Scams**
Avoid student aid scams. You might be contacted by a company saying they will help you get loan discharge or cancellation for a fee. Make sure you work only with ED's office of Federal Student Aid (FSA) and its official loan servicers (like us). We will always help you for free. Our emails come only from noreply@mohela.studentaid.gov and info@mohela.studentaid.gov, and emails from FSA come only from noreply@studentaid.gov.

Never reveal your personal information or account password to anyone.

**How to Contact Us**

Pltf. 0068

Visit Mohela.studentaid.gov/contact for our contact information.

Sincerely,
MOHELA

View My Document



MOHELA is a servicer for Federal Student Aid. We're here to assist you with managing your loans.

**Resources**

StudentAid.gov                    Loan Simulator

This email was sent by:

MOHELA

NMLS 1442770

633 Spirit Drive

Chesterfield, MO 63005

This email is an attempt to communicate timely information to you. You received this message because you are a MOHELA customer and signed up for our eDelivery of your notifications. Replies to this message will not be read or responded to. If you want to contact us or cancel your participation in our eDelivery program, log into mohela.studentaid.gov or contact customer service at 1-888-866-4352 (Toll Free).

Privacy Policy

This message is an attempt to collect a debt and any information obtained will be used for that purpose.

California residents: The state Rosenthal Fair Debt Collection Practices Act and the federal Fair Debt Collection Practices Act require that, except under unusual circumstances, collectors may not contact you before 8 a.m. or after 9 p.m. They may not harass you by using threats of violence or arrest or by using obscene language.

Pltf. 0069

Collectors may not use false or misleading statements or call you at work if they know or have reason to know that you may not receive personal calls at work. For the most part, collectors may not tell another person, other than your attorney or spouse, about your debt. Collectors may contact another person to confirm your location or enforce a judgment. For more information about debt collection activities, you may contact the Federal Trade Commission at 1-877-FTC-HELP or www.ftc.gov.

Massachusetts residents: If you are struggling with your student loans, please visit www.mass.gov/ago/studentloans to get help from the Ombudsman's Student Loan Assistance Unit.

Feedback

Pltf. 0070

# EXHIBIT 13

Screenshot from StudentAid.gov upon using Repayment Calculator Tool, source URL: https://studentaid.gov/repayment-calculator/plan-options (accessed August 3, 2026)

Pltf. 0071

## Standard Repayment Plan

Monthly Payment ⑦

# $2,476

Fixed monthly payments are usually set at a 10-year repayment term, with longer terms possible for consolidation loans.

Total To Be Paid ⑦

## $735,938

| Principal Paid ⑦ | Interest Paid ⑦ |
| --- | --- |
| $364,063 | $371,875 |

Discharge Amount ⑦

## $0

End of Term Date ⑦

## Dec 2051

Apply

Pltf. 0072

## Lowest Monthly Payment

### Repayment Assistance Plan

Monthly Payment ⑦

# $1,264

Monthly payments are based on a percentage of your Adjusted Gross Income (AGI), ranging from 1% to 10% depending on your income level, with a minimum payment of $10 per month.

Total To Be Paid ⑦

## $732,407

| Principal Paid ⑦ | Interest Paid ⑦ |
|---|---|
| $116,037 | $616,370 |

Discharge Amount ⑦
## $197,997

End of Term Date ⑦
## Jul 2056

Apply

# EXHIBIT 14

# Screenshot of MOHELA Correspondence

# Read Message                                                                    ✕

**Subject:**                    Deferment and Forbearance
**Received Date:**              07/21/2026

Thank you for contacting MOHELA,

Your account is on the SAVE Forbearance due to being enrolled in the SAVE plan. Borrowers enrolled in the now-defunct SAVE plan must select a new repayment plan. A letter will be sent with your deadline to select a new plan.

You may compare repayment plans by using the "Loan Simulator" at StudentAid.gov/loan-simulator. You can use this tool to estimate your monthly payment amount on the different repayment plans available and compare plans side by side. For further assistance you may call us to speak with a Customer Service Representative regarding options that may be available to you.

If you have any additional questions, contact us using the information below.
Thank you,
MOHELA

Phone: 1-888-866-4352 (Toll Free) or 636-532-0600 (International)
**TDD Dial** 711 **Fax:** 866-222-7060

Correspondence
633 Spirit Drive, Chesterfield, MO, 63005-1243

Payments
Department of Education – MOHELA, P.O. Box 790453, St. Louis, MO, 63179-0453

**This message, from a debt collector, is an attempt to collect a debt and any information obtained will be used for that purpose.**

*Massachusetts residents: If you are struggling with your student loans, please fill out the form located at: **https://www.mass.gov/forms/submit-a-student-loan-help-request** to get help from the Ombudsman's Student Loan Assistance Unit.*

*California residents: The state Rosenthal Fair Debt Collection Practices Act and the federal Fair Debt Collection Practices Act require that, except under unusual circumstances, collectors may not contact you before 8 a.m. or after 9 p.m. They may not harass you by using threats of violence or arrest or by using obscene language. Collectors may not use false or misleading statements or call you at work if they know or have reason to know that you may not receive personal calls at work. For the most part, collectors may not tell another person, other than your attorney or spouse, about your debt. Collectors may contact another person to confirm your location or enforce a judgment. For more information about debt collection activities, you may contact the Federal Trade Commission at 877.FTC.HELP or **www.ftc.gov.***

Original message:

Pl. 0063
Pltf. 0075

Thank you for contacting MOHELA,

Your account is on the SAVE Forbearance due to being enrolled in the SAVE plan. Borrowers enrolled in the now-defunct SAVE plan must select a new repayment plan. A letter will be sent with your deadline to select a new plan.

You may compare repayment plans by using the "Loan Simulator" at StudentAid.gov/loan-simulator. You can use this tool to estimate your monthly payment amount on the different repayment plans available and compare plans side by side. For further assistance you may call us to speak with a Customer Service Representative regarding options that may be available to you.

If you have any additional questions, contact us using the information below.
Thank you,
MOHELA

**Phone:** 1-888-866-4352 (Toll Free) or 636-532-0600 (International)
**TDD Dial** 711 **Fax:** 866-222-7060

Correspondence
633 Spirit Drive, Chesterfield, MO, 63005-1243

Payments
Department of Education – MOHELA, P.O. Box 790453, St. Louis, MO, 63179-0453

**This message, from a debt collector, is an attempt to collect a debt and any information obtained will be used for that purpose.**

*Massachusetts residents: If you are struggling with your student loans, please fill out the form located at: **https://www.mass.gov/forms/submit-a-student-loan-help-request** to get help from the Ombudsman's Student Loan Assistance Unit.*

*California residents: The state Rosenthal Fair Debt Collection Practices Act and the federal Fair Debt Collection Practices Act require that, except under unusual circumstances, collectors may not contact you before 8 a.m. or after 9 p.m. They may not harass you by using threats of violence or arrest or by using obscene language. Collectors may not use false or misleading statements or call you at work if they know or have reason to know that you may not receive personal calls at work. For the most part, collectors may not tell another person, other than your attorney or spouse, about your debt. Collectors may contact another person to confirm your location or enforce a judgment. For more information about debt collection activities, you may contact the Federal Trade Commission at 877.FTC.HELP or **www.ftc.gov.***

Original message:

Hello -- I am currently in the SAVE Forbearance. I am awaiting the processing of my PSLF Buyback Request by DoED, and I would like to remain in forbearance until that is processed.

Close

Pltf. 0076

# EXHIBIT 15

Settlement Agreement Resolving *Missouri v. Trump*, E.D. Missouri, case no. 4:24-cv-520-JAR, accessed at [https://www.ed.gov/media/document/missouri-settlement-112689.pdf](https://www.ed.gov/media/document/missouri-settlement-112689.pdf)

Pltf. 0077

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

STATE OF MISSOURI, *et al.*,

          *Plaintiffs*,

v.

DONALD J. TRUMP, in his official capacity
as President of the United States, *et al.*,

          *Defendants*.

Case No. 4:24-cv-520-JAR

## SETTLEMENT AGREEMENT

The States of Missouri, Arkansas, Florida, Georgia, North Dakota, Ohio, and Oklahoma ("Plaintiffs") and the United States Department of Education, Linda E. McMahon (in her official capacity as Secretary of Education), and President Donald J. Trump (in his official capacity as President of the United States) ("Defendants" and collectively "the Parties") hereby enter into this Settlement Agreement.

### Plaintiffs' Release and Dismissal of Claims

1.      Upon the execution of this Settlement Agreement, Plaintiffs hereby release and forever discharge Defendants, their successors, the United States of America, and any department, agency, or establishment of the United States, and any officers, employees, agents, successors, or assigns of such department, agency, or establishment, from any and all claims and causes of action that Plaintiffs assert or could have asserted in this litigation, or which hereinafter could be asserted by reason of, or with respect to, or in connection with, or which arise out of, the causes of action alleged in the Complaint.

2.      Upon the execution of this Settlement Agreement, Plaintiffs hereby release and forever discharge Defendants, their successors, the United States of America, and any department, agency, or establishment of the United States, and any officers, employees, agents, successors, or assigns of such

1

department, agency, or establishment, from any and all past, present, or future claims for attorneys' fees, costs, or litigation expenses in connection with the above-captioned litigation.

**Definitions**

3. The "SAVE Plan" is defined as the income-contingent repayment plan, also known as "Saving on a Valuable Education," created in 2023 as a revision to the "REPAYE Plan"[1] under the authority of Section 455 of the Higher Education Act of 1965, 20 U.S.C. § 1087e(d)(1)(D), *see Improving Income Driven Repayment for the William D. Ford Federal Direct Loan Program and the Federal Family Education Loan (FFEL) Program*, 88 Fed. Reg. 43820 (July 10, 2023).

4. The "SAVE Plan Final Rule" is defined as the Final Rule published on July 10, 2023, *Improving Income Driven Repayment for the William D. Ford Federal Direct Loan Program and the Federal Family Education Loan (FFEL) Program*, 88 Fed. Reg. 43820 (July 10, 2023).

5. The "REPAYE Plan" is defined as the income-contingent repayment plan, also known as "Revised Pay As You Earn," created in 2015 under the authority of Section 455 of the Higher Education Act of 1965, 20 U.S.C. § 1087e(d)(1)(D), *see Student Assistance General Provisions, Federal Family Education Loan Program, and William D. Ford Federal Direct Loan Program*, 80 Fed. Reg. 67204 (Oct. 30, 2015), and modified in 2023 by the SAVE Plan Final Rule.

6. The "PAYE Plan" is defined as the income-contingent repayment plan, also known as "Pay As You Earn," created in 2012 under the authority of Section 455 of the Higher Education

---

[1] The SAVE Plan was created by amending the existing REPAYE plan. *See Improving Income Driven Repayment for the William D. Ford Federal Direct Loan Program and the Federal Family Education Loan (FFEL) Program*, 88 Fed. Reg 43820, 43822 (July 10, 2023) ("The Department initially contemplated creating another repayment plan. After considering concerns about the complexity of the student loan repayment system and the challenges of navigating multiple IDR plans, we instead decided to reform the current REPAYE plan to provide greater benefits to borrowers. However, given the extensive improvements being made to REPAYE, we have decided to rename REPAYE as the Saving on a Valuable Education (SAVE) plan. This new name will reduce confusion for borrowers as we transition from the existing terms of the REPAYE plan. Borrowers currently enrolled on the REPAYE plan will not have to do anything to receive the benefits of the SAVE plan, and the new name will be reflected on written and electronic forms and records over time.").

2

Pltf. 0079

Act of 1965, 20 U.S.C. § 1087e(d)(1)(D), *see Federal Perkins Loan Program, Federal Family Education Loan Program, and William D. Ford Federal Direct Loan Program*, 77 Fed. Reg. 66088 (Nov. 1, 2012).

7.      The "Original ICR Plan" is defined as the income-contingent repayment plan, also known as "Income-Contingent Repayment," created in 1994 under the authority of Section 455 of the Higher Education Act of 1965, 20 U.S.C. § 1087e(d)(1)(D), *see William D. Ford Direct Loan Program*, 59 Fed. Reg. 61664 (Dec. 1, 1994).

**Plaintiffs' Duties and Obligations**

8.      Concurrent with the execution of this Settlement Agreement, Plaintiffs' counsel shall file the Joint Motion for Entry of Final Judgment that is attached to this Settlement Agreement. Plaintiffs shall not include this Settlement Agreement as an attachment to that filing.

**Defendants' Duties and Obligations**

9.      Defendants will not forgive loans under the SAVE Plan (or under the REPAYE plan) using the Department of Education's income-contingent repayment (ICR) authority, Higher Education Act of 1965 § 455, 20 U.S.C. § 1087e, as it was interpreted by the SAVE Plan Final Rule. However, nothing in this Settlement Agreement shall prevent the Department of Education from forgiving loans of individuals currently enrolled in the SAVE Plan using a separate source of legal authority, such as Borrower Defense to Repayment discharges, discharges due to the borrower's death, Total and Permanent Disability Discharges, Closed School Discharges, or Public Service Loan Forgiveness.

10.     With one exception, Defendants will not implement any provisions of the SAVE Plan Final Rule. The exception is for the provision concerning the periods of deferment or forbearance that are counted towards eligibility for loan forgiveness under income-driven repayment plans, which is codified at 34 C.F.R. § 685.209(k)(4)(iv), which took effect on July 1, 2024, and the legality of which was never challenged in this case. That provision will remain in effect.

11.     Defendants will not enroll any new borrowers in the SAVE Plan, will deny any pending enrollment applications for the SAVE Plan, and will continue working to move all current borrowers

3

out of the SAVE Plan. Defendants will likewise not enforce the original REPAYE rule or otherwise enroll any borrowers, including SAVE borrowers, into the original REPAYE Plan.

12.    Defendants will pursue negotiated rulemaking to effectuate this settlement. As part of that negotiated rulemaking, the Department of Education will consider: (a) a formal and complete repeal of the SAVE Plan Final Rule, (b) sunsetting the Original ICR Plan under 34 C.F.R. § 685.209(a)(4), and (c) sunsetting the PAYE Plan under 34 C.F.R. § 685.209(a)(3), consistent with Section 82001(c) of the One Big Beautiful Bill Act (OBBBA), Pub. L. No. 119–21, 139 Stat. 72, 340–41 (July 4, 2025). Defendants have not prejudged the outcome of that negotiated rulemaking process, to the extent that the Department of Education retains any policy discretion on these subjects in the aftermath of the enactment of the OBBBA.

13.    Any time that Defendants plan to or have reason to believe that they will cancel or forgive more than $10 billion in federal student loans within a one-month period, the Department of Education or its successors shall provide written notice to the Office of the Attorney General of Missouri at least 30 days before cancellation or forgiveness, identifying the basis for Defendants' legal authority and how much they estimate will be forgiven or cancelled. If Defendants do not provide written notice under the previous sentence, but actually did forgive more than $10 billion in federal student loans within a one-month period, the Department of Education or its successors shall provide written notice to the Office of the Attorney General of Missouri within 30 days after the end of such month. This provision will expire ten years after the date of this Settlement Agreement.

**Miscellaneous Provisions**

14.    Each undersigned representative certifies that he or she is fully authorized to enter into the terms and conditions of this Settlement Agreement and to execute and legally bind the Parties he or she represents to this document.

15.    The parties acknowledge that this Settlement Agreement is entered into solely for the purpose of settling and compromising the claims in this action without further litigation, and that it shall not be construed as evidence or as an admission regarding any issues of law or fact, or regarding

4

the truth or validity of any allegation or claim raised in this action, or as evidence or as an admission by Defendants regarding Plaintiffs' entitlement to any relief (including attorneys' fees or other litigation costs), or regarding the propriety of venue in this district.

16.     This Settlement Agreement is not intended to create, and does not create, any third-party beneficiary rights or any other kind of right or privilege for any person, group, or entity.

17.     Nothing contained in this Settlement Agreement shall impose on Defendants any duty, obligation, or requirement, the performance of which would be inconsistent with federal law in effect at the time of such performance.

18.     This Settlement Agreement constitutes the entire agreement among the Parties and supersedes all prior representations, agreements, and understandings, whether oral or written, concerning the subject matter of the Settlement Agreement.

19.     This Settlement Agreement may be executed in counterparts, and is effective on the date by which all parties have executed this Agreement.  Facsimiles and PDF versions of signatures (including electronic signatures or "/s/" signatures) shall constitute acceptable, binding signatures for purposes of this Agreement.

20.     This Settlement Agreement is binding on the Parties, their successors in office, employees, representatives, delegates, agents, and assigns, and all persons acting on their behalf, to the extent permitted by law or required by this Settlement Agreement.

21.     Failure by any party to enforce this entire Settlement Agreement or any provision thereof shall not be construed as a waiver, including of its right to enforce other provisions of this Settlement Agreement.

*     *     *

SO STIPULATED AND AGREED this 9th day of December, 2025.

5

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

MICHELLE R. BENNETT
Assistant Branch Director
Federal Programs Branch

/s/ Stephen M. Pezzi
STEPHEN M. PEZZI
Florida Bar No. 1041279
Senior Trial Counsel
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20005
Tel: (202) 305-8576
Email: stephen.pezzi@usdoj.gov

*Counsel for Defendants*

CATHERINE L. HANAWAY
Missouri Attorney General

/s/ Louis J. Capozzi III
Louis J. Capozzi, III, #77756(MO)
  *Solicitor General*
Peter F. Donohue Sr., #758835(MO)
  *Deputy Director of Special Litigation*
Graham Miller #77656(MO)
  *Deputy Solicitor General*
Missouri Attorney General
815 Olive Street, Suite #200
St. Louis, MO 65101
(314) 340-7652 Phone
Louis.Capozzi@ago.mo.gov
Peter.Donohue@ago.mo.gov
Graham.Miller@ago.mo.gov

*Counsel for State of Missouri*
*Lead Counsel for State Plaintiffs*

TIM GRIFFIN
Arkansas Attorney General

Autumn Hamit Patterson
  *Solicitor General*
Dylan L. Jacobs
  *Deputy Solicitor General*
Office of the Arkansas Attorney General
323 Center Street, Suite 200
Little Rock, AR 72201
(501) 682-3661
Autumn.Patterson@arkansasag.gov
Dylan.Jacobs@arkansasag.gov

*Counsel for State of Arkansas*

6

JAMES UTHMEIER
Florida Attorney General

Christine Kimberly Pratt
Office of the Attorney General
The Capitol, Pl-01
Tallahassee, Florida 32399-1050
(850) 414-3300
(850) 410-2672 (fax)
christine.pratt@myfloridalegal.com

*Counsel for State of Florida*

CHRISTOPHER CARR
Georgia Attorney General

Stephen J. Petrany
  *Solicitor General*
Office of the Attorney General
40 Capitol Square, SW
Atlanta, Georgia 30334
(404) 458-3408
spetrany@law.ga.gov

*Counsel for State of Georgia*

DREW H. WRIGLEY
North Dakota Attorney General

Philip Axt
  *Solicitor General*
North Dakota Attorney General's Office
600 E. Boulevard Ave., Dept. 125
Bismarck, ND 58505
Telephone: (701) 328-2210
pjaxt@nd.gov

*Counsel for State of North Dakota*

DAVE YOST
Ohio Attorney General

Mathura J. Sridharan
  *Solicitor General*
Office of the Attorney General
365 East Broad Street
Columbus, Ohio 43215
Phone: (614) 466-8980
mathura.sridharan@ohioago.gov

*Counsel for Plaintiff State of Ohio*

Pltf. 0084

GENTNER DRUMMOND
Oklahoma Attorney General

Gentner Drummond, OBA #16645
   *Attorney General*
Garry M. Gaskins, II, OBA #20212
   *Solicitor General*
Office of the Attorney General
State of Oklahoma
313 N.E. 21st Street
Oklahoma City, OK 73105
Phone: (405) 521-3921
Fax: (405) 522-4815
gentner.drummond@oag.ok.gov
garry.gaskins@oag.ok.gov

*Counsel for State of Oklahoma*

8

# EXHIBIT 16

# Summary of PSLF Buyback Requests Backlog from *American Federation of Teachers v. U.S. Department of Education*, 1:25-cv-00802 (D.D.C. 2025) ("*AFT*")

Pltf. 0086

Summary of PSLF Buyback Requests Processed and Received, pursuant to Status Reports Filed
in *American Federation of Teachers v. U.S. Dept. of Education*, 1:25-cv-00802 (Dist. DC)

(Through ECF No. 64 filed 5/13/2026)

| ECF | Status Report Date | Buybacks Decided | Buybacks Received | Cumulative Total |
|---|---|---|---|---|
| 36 | 5/15/25 | 1472 | | 49,318 |
| 37 | 6/17/25 | 3312 | | 58761 |
| 38 | 7/16/25 | 2224 | | 65448 |
| 39 | 8/15/25 | 3280 | | 72730 |
| 42 | 9/15/25 | 5600 | | 74510 |
| 58 | 12/15/25 | 2960 | 3960 | 80210 |
| 60 | 1/14/26 | 1930 | 5090 | 83370 |
| 61 | 2/13/26 | 2430 | 5030 | 86520 |
| 62 | 3/16/26 | 2520 | 4180 | 88170 |
| 63 | 4/15/26 | 3280 | 4660 | 89720 |
| 64 | 5/13/26 | 4790 | 6870 | 88000 |
| | Average | 3072.545455 | | |

**Note: While they indicated the cumulative total of outstanding Buyback Requests for their respective time periods, ECF No.'s 36, 37, 38, 39, and 42 did not specify how many Buyback Requests they received during the time periods they covered.**

# EXHIBIT 17

# Status Reports from *AFT*

Pltf. 0088

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

AMERICAN FEDERATION
OF TEACHERS,

        Plaintiff,

    v.

U.S. DEPARTMENT OF EDUCATION,
*et al.*,

        Defendants.

No. 1:25-cv-802-RBW

## STATUS REPORT

Pursuant to the Court's order of April 28, 2025, ECF No. 34, the United States Department of Education and Linda McMahon (in her official capacity as Secretary of Education) hereby provide the following information, which was provided to undersigned counsel by the Department of Education:

| Income-Driven Repayment (IDR) Applications | |
|---|---|
| IDR applications decided (*i.e.*, approved or denied) during April 1-30, 2025 | 79,349 |
| IDR applications pending as of April 30, 2025 | 1,985,726 |

| Public Service Loan Forgiveness (PSLF) Buy Back Requests | |
|---|---|
| PSLF Buy Back requests decided (*i.e.*, for which the Department of Education has completed processing) during April 1-30, 2025 | 1,472 |
| PSLF Buy Back requests pending as of April 30, 2025 | 49,318 |

Pltf. 0089

| Types of Forbearance Eligible for PSLF Buy Back | | | | |
|---|---|---|---|---|
| Citation (34 C.F.R § __ ) | Forbearance Type | Forbearance Period | Eligible if Forbear-ance is be-fore July 1, 2023[1] | Eligible if Forbear-ance is on or after July 1, 2023 |
| 685.205(a)(1) | The Secretary determines that, due to poor health or other acceptable reasons, the borrower or endorser is currently unable to make scheduled payments | The period estab-lished in the terms of the forbearance agreement (not to ex-ceed 12-month incre-ments), no maximum. | Y | Y |
| 685.205(a)(1) | Cancer Treatment forbear-ance – no qualifying loans | The period of the cancer treatment plus six months. | Y | Y |
| 685.205(a)(3) | Medical or Dental Intern-ship/Residency | Actual period during which the borrower is eligible if the bor-rower has exhausted any eligibility for old-borrower intern-ship/residency defer-ment; 12-month in-crements; no maxi-mum. | Y | Y |
| 685.205(a)(9) | Department of Defense Stu-dent Loan Repayment Pro-grams | Actual period during which the borrower is eligible; 12-month in-crements; no maxi-mum. | Y | N/A[2] |

[1] In other words, this column addresses the question of eligibility when the period of forbearance for which PSLF credit is being claimed occurred before July 1, 2023. The next column answers the same question for periods of forbearance occurring on or after July 1, 2023.

[2] On this chart, N/A means that this type of forbearance is not eligible for buy back because it is automatically counted towards PSLF eligibility.

2

Pltf. 0090

| Types of Forbearance Eligible for PSLF Buy Back | | | | |
|---|---|---|---|---|
| **Citation (34 C.F.R § __ )** | **Forbearance Type** | **Forbearance Period** | **Eligible if Forbear-ance is be-fore July 1, 2023[1]** | **Eligible if Forbear-ance is on or after July 1, 2023** |
| 685.205(a)(4) | AmeriCorps | Actual period during which the borrower is eligible; 12-month in-crements; no maxi-mum. | Y | N/A |
| 682.205(a)(7) | Active Military State Duty | Actual period during which the borrower is eligible if borrower qualifies for a post-active-duty deferment but not a military de-ferment; 12-month increments; no maxi-mum. | Y | N/A |
| 685.205(a)(6) | Student Loan Debt Burden | 12-month increments; 3 years maximum. | Y | Y |

3

Pltf. 0091

| Types of Forbearance Eligible for PSLF Buy Back | | | | |
|---|---|---|---|---|
| Citation (34 C.F.R § __ ) | Forbearance Type | Forbearance Period | Eligible if Forbearance is before July 1, 2023[1] | Eligible if Forbearance is on or after July 1, 2023 |
| 685.205(a)(5) | Teacher Loan Forgiveness[3] | Period during which borrower performs qualifying teaching service, if the expected forgiveness amount is expected to satisfy the anticipated outstanding balance of eligible loan(s) at the end of qualifying service; 12-month increments. | N | N |
| 685.205(b) | Hardship Forbearance | Can be granted if the borrower's monthly payments are equal to or greater than 20% of their monthly gross income. Can be granted for 12-month intervals not to exceed 36 months collectively with other forbearance types. | Y | Y |
| 685.205(b)(8) | Local or National Emergency | Period specified by the Department plus 30 days following the period. | Y | N/A |

[3] As indicated on the other columns of this chart, this type of forbearance is not eligible for PSLF Buy Back, regardless of timing. Nevertheless, Defendants are including it here for the sake of completeness and transparency.

4

Pltf. 0092

| Types of Forbearance Eligible for PSLF Buy Back | | | | |
|---|---|---|---|---|
| **Citation**<br><br>**(34 C.F.R § __ )** | **Forbearance Type** | **Forbearance Period** | **Eligible if Forbear-ance is be-fore July 1, 2023[1]** | **Eligible if Forbear-ance is on or after July 1, 2023** |
| 685.205(b)(8) | Military Mobilization | Period specified by the Department plus 30 days following the period. | Y | N/A |
| 685.205(b)(8) | Designated Disaster Area | Period specified by the Department plus 30 days following the period. | Y | N/A |
| 685.205(b)(8) | CARES Act/Coronavirus | The period from March 13, 2020, to the end of the pay-ment pause. | N/A | N/A |
| 685.205(b)(5) | Death | Date the loan holder receives reliable noti-fication of death to the date the loan holder receives death certificate or other acceptable documen-tation. | Y | Y |

5

Pltf. 0093

| Types of Forbearance Eligible for PSLF Buy Back | | | | |
| --- | --- | --- | --- | --- |
| **Citation**<br><br>**(34 C.F.R § __ )** | **Forbearance Type** | **Forbearance Period** | **Eligible if Forbear-ance is be-fore July 1, 2023[1]** | **Eligible if Forbear-ance is on or after July 1, 2023** |
| 685.205(b)(6)(v) | Teacher Loan Forgiveness | The period while the loan holder is await-ing a completed Teacher loan for-giveness application, not to exceed 60 days. Date the loan holder receives a completed loan for-giveness application to date the loan holder receives either a denial or the loan forgiveness amount from holder of the loan. | Y | Y |
| 685.219(e)(3) | Public Service Loan For-giveness | The period during which the Depart-ment is processing the PSLF application. | Y | Y |

6

Pltf. 0094

| Types of Forbearance Eligible for PSLF Buy Back | | | | |
|---|---|---|---|---|
| Citation (34 C.F.R § __ ) | Forbearance Type | Forbearance Period | Eligible if Forbearance is before July 1, 2023[1] | Eligible if Forbearance is on or after July 1, 2023 |
| 685.205(b)(5); 685.213(b)(1)(ii), (b)(3)(i), (c)(1)(i) | Total and Permanent Disability | 120 days from the date that the borrower contacts the Department claiming to be totally and permanently disabled and seeking a TPD discharge; an indefinite period during which the Department is evaluating the borrower's materially complete TPD Application. | Y | Y |
| 685.205(b) ("other") | On-Ramp | Beginning date to end date of On-Ramp forbearance. | Y | Y |
| 685.205(b)(1) | Borrower Ineligible for Deferment | Beginning date to ending date of the ineligible deferment. | Y | Y |
| 685.205(b)(2) | Delinquency before a Deferment | First date of overdue payment to the day before the beginning date of deferment | Y | Y |
| 685.205(b) ("other") | Delinquency before a Forbearance | First date of overdue payment to the day before the beginning date of other forbearance type. | Y | Y |

7

Pltf. 0095

| Types of Forbearance Eligible for PSLF Buy Back | | | | |
|---|---|---|---|---|
| Citation (34 C.F.R § __ ) | Forbearance Type | Forbearance Period | Eligible if Forbearance is before July 1, 2023[1] | Eligible if Forbearance is on or after July 1, 2023 |
| 685.205(b)(3) | Late Notification of Out-of-School Dates | Date borrower should have entered repayment to date first or next payment was established. | Y | Y |
| 685.205(b)(4) | Delinquency Prior to Bankruptcy Filing | First date of overdue payment to the day before the borrower filed a bankruptcy petition. | Y | Y |
| 685.205(b) ("other") | Bankruptcy Filing | Period during which the borrower has an active bankruptcy case. | Y | Y |
| 685.218(c)(2) | Spouses and Parents of Victims of September 11, 2001 | 60 days from date application sent to borrower if application is not received by lender, and from date guarantor receives documentation to date of determination. | Y | Y |

8

Pltf. 0096

| Types of Forbearance Eligible for PSLF Buy Back | | | | |
|---|---|---|---|---|
| **Citation**<br><br>**(34 C.F.R § __ )** | **Forbearance Type** | **Forbearance Period** | **Eligible if Forbear-ance is be-fore July 1, 2023[1]** | **Eligible if Forbear-ance is on or after July 1, 2023** |
| 685.205(b)(6)(i), (ii), (iii), (iv), (vi), and (vii); 685.214(f)(2),(4); 685.215(d)(1)-(2); 685.216(e)(1)-(2); 685.222(e)(2) | Borrower Defense, Closed School, False Certification, Unpaid, Refund Bankruptcy | 60 days from date application sent to borrower if application is not received by lender, and from date guarantor receives documentation to date of determination. | Y | Y |
| 685.205(b), 685.215 (d)(1)("other") | Identity Theft | For 120 days following the date that the lender receives an identity theft report or notification from a credit bureau that information reported by the lender was because of identity theft. | Y | Y |
| 685.205(b) ("other") | Delinquency after Deferment or Mandatory Forbearance | Deferment or mandatory forbearance end date to establishment of next payment due date. | Y | Y |
| 685.205(b) ("other") | Change to Repayment Plan | First date of overdue payment to the day before the borrower enters a new repayment plan. | Y | Y |

9

Pltf. 0097

| Types of Forbearance Eligible for PSLF Buy Back | | | | |
|---|---|---|---|---|
| Citation (34 C.F.R § __ ) | Forbearance Type | Forbearance Period | Eligible if Forbearance is before July 1, 2023[1] | Eligible if Forbearance is on or after July 1, 2023 |
| 685.205(b)(9) | Documentation for Deferment, Forbearance, Change to Repayment Plan, or Consolidation | Period of up to 60 days necessary to collect and process documentation supporting borrower's request for deferment, forbearance, change in repayment plan, or consolidation (DL only). | Y | N/A |
| 685.205 (b) ("other") | Loan Sale or Transfer | First date of delinquency to date loan is sold or transferred if the loan is less than 60 days delinquent. | Y | Y |
| 685.205(b) ("other"); DCL GEN-10-16 | Natural Disasters, Local or National Emergency, Military Mobilization | From date borrower affected, not to exceed 3 months for each occurrence. | Y | N/A |
| 685.205(b)(10) | Repayment Alignment – PLUS/Stafford | Until end of in-school deferment or post enrollment deferment on PLUS loan disbursed on or after July 1, 2008, or until end of the grace period on Stafford loan. | Y | Y |

10

| Types of Forbearance Eligible for PSLF Buy Back | | | | |
| Citation (34 C.F.R § __ ) | Forbearance Type | Forbearance Period | Eligible if Forbear-ance is be-fore July 1, 2023[1] | Eligible if Forbear-ance is on or after July 1, 2023 |
|---|---|---|---|---|
| 685.205(a)(8) | Technical Default status re-quires Borrower reaffirma-tion to repay | 270 days or more de-linquent, but not yet transferred to DMCS, limited to 120 days. | Y | Y |
| 685.205 (b) ("other") | Joint Consolidation Loan Separation | From the date in-structed by the Om-budsman until the date on which the Joint Consolidation Loan Separation ap-plication process was made available to the public (application posted and applica-tions being pro-cessed). | Y | Y |
| 685.205 (b) ("other") | IDR Forgiveness Opt Out Period | From the date the ser-vicer receives the Forgiveness Notifica-tion File through the date that the borrower opts out or the for-giveness is com-pleted. | Y | Y |
| 685.205 (b) ("other") | Cancer Treatment forbear-ance – at least 1 qualifying loan | The period of the cancer treatment plus six months. | Y | Y |

11

Pltf. 0099

| Types of Forbearance Eligible for PSLF Buy Back | | | | |
|---|---|---|---|---|
| **Citation**<br><br>**(34 C.F.R § __ )** | **Forbearance Type** | **Forbearance Period** | **Eligible if Forbear-ance is be-fore July 1, 2023[1]** | **Eligible if Forbear-ance is on or after July 1, 2023** |
| 685.205(b) ("other") | Remediation of Servicing Issues | The period of time a loan is put into for-bearance to resolve a servicing issue | Y | N/A |
| 685.205 (b) ("other") | "general" SAVE | The period of time a loan is put into for-bearance as a result of the administrative stay related to the IDR Final Rule | Y | Y |

12

Pltf. 0100

13

Dated:  May 15, 2025

Respectfully submitted,

YAAKOV M. ROTH
Acting Assistant Attorney General

MARCIA BERMAN
Assistant Branch Director

/s/ Stephen M. Pezzi
STEPHEN M. PEZZI (D.C. Bar No. 995500)
Senior Trial Counsel
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20005
Tel: (202) 305-8576
Email: stephen.pezzi@usdoj.gov

*Counsel for Defendants*

Pltf. 0101

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| AMERICAN FEDERATION OF TEACHERS,<br><br>Plaintiff,<br><br>v.<br><br>U.S. DEPARTMENT OF EDUCATION, *et al.*,<br><br>Defendants. | No. 1:25-cv-802-RBW |

**STATUS REPORT**

Pursuant to the Court's order of April 28, 2025, ECF No. 34, the United States Department of Education and Linda McMahon (in her official capacity as Secretary of Education) hereby provide the following information, which was provided to undersigned counsel by the Department of Education:

| Income-Driven Repayment (IDR) Applications | |
|---|---|
| IDR applications decided (*i.e.*, approved or denied) during May 1-31, 2025 | 285,694 |
| IDR applications pending as of May 31, 2025 | 1,582,641[1] |

| Public Service Loan Forgiveness (PSLF) Buy Back Requests | |
|---|---|
| PSLF Buy Back requests decided (*i.e.*, for which the Department of Education has completed processing) during May 1-31, 2025 | 3,312 |
| PSLF Buy Back requests pending as of May 31, 2025 | 58,761 |

---

[1] Defendants' previous status report overstated this figure by 335,852, due to an error by one of the Department of Education's student-loan servicers in reporting data to the Department of Education.

Pltf. 0102

Dated: June 17, 2025

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

MICHELLE R. BENNETT
Assistant Branch Director
Federal Programs Branch

/s/ Stephen M. Pezzi
STEPHEN M. PEZZI (D.C. Bar No. 995500)
Senior Trial Counsel
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20005
Tel: (202) 305-8576
Email: stephen.pezzi@usdoj.gov

*Counsel for Defendants*

2

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

AMERICAN FEDERATION
OF TEACHERS,

        Plaintiff,

    v.

U.S. DEPARTMENT OF EDUCATION,
*et al.*,

        Defendants.

No. 1:25-cv-802-RBW

## STATUS REPORT

Pursuant to the Court's order of April 28, 2025, ECF No. 34, the United States Department

of Education and Linda McMahon (in her official capacity as Secretary of Education) hereby pro-

vide the following information, which was provided to undersigned counsel by the Department of

Education:

| Income-Driven Repayment (IDR) Applications | |
|---|---|
| IDR applications decided (*i.e.*, approved or denied) during June 1-30, 2025 | 186,731 |
| IDR applications pending as of June 30, 2025 | 1,511,504 |

| Public Service Loan Forgiveness (PSLF) Buy Back Requests | |
|---|---|
| PSLF Buy Back requests decided (*i.e.*, for which the Department of Education has completed processing) during June 1-30, 2025 | 2,224 |
| PSLF Buy Back requests pending as of June 30, 2025 | 65,448 |

2

Dated: July 16, 2025

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

MICHELLE R. BENNETT
Assistant Branch Director
Federal Programs Branch

/s/ Stephen M. Pezzi
STEPHEN M. PEZZI (D.C. Bar No. 995500)
Senior Trial Counsel
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20005
Tel: (202) 305-8576
Email: stephen.pezzi@usdoj.gov

*Counsel for Defendants*

2

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| AMERICAN FEDERATION OF TEACHERS,<br><br>            Plaintiff,<br><br>    v.<br><br>U.S. DEPARTMENT OF EDUCATION, *et al.*,<br><br>            Defendants. | No. 1:25-cv-802-RBW |

## STATUS REPORT

Pursuant to the Court's order of April 28, 2025, ECF No. 34, the United States Department of Education and Linda McMahon (in her official capacity as Secretary of Education) hereby provide the following information, which was provided to undersigned counsel by the Department of Education:

| Income-Driven Repayment (IDR) Applications | |
|---|---|
| IDR applications decided (*i.e.*, approved or denied) during July 1-31, 2025 | 304,844 |
| IDR applications pending as of July 31, 2025 | 1,386,406 |

| Public Service Loan Forgiveness (PSLF) Buy Back Requests | |
|---|---|
| PSLF Buy Back requests decided (*i.e.*, for which the Department of Education has completed processing) during July 1-31, 2025 | 3,280 |
| PSLF Buy Back requests pending as of July 31, 2025 | 72,730 |

2

Dated: August 15, 2025

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

MICHELLE R. BENNETT
Assistant Branch Director
Federal Programs Branch

/s/ Stephen M. Pezzi
STEPHEN M. PEZZI (D.C. Bar No. 995500)
Senior Trial Counsel
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20005
Tel: (202) 305-8576
Email: stephen.pezzi@usdoj.gov

*Counsel for Defendants*

2

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

AMERICAN FEDERATION
OF TEACHERS,

        Plaintiff,

    v.

U.S. DEPARTMENT OF EDUCATION,
*et al.*,

        Defendants.

No. 1:25-cv-802-RBW

## STATUS REPORT

Pursuant to the Court's order of April 28, 2025, ECF No. 34, the United States Department of Education and Linda McMahon (in her official capacity as Secretary of Education) hereby provide the following information, which was provided to undersigned counsel by the Department of Education:

| Income-Driven Repayment (IDR) Applications | |
| --- | --- |
| IDR applications decided (*i.e.*, approved or denied) during August 1-31, 2025 | 305,641 |
| IDR applications pending as of August 31, 2025 | 1,076,266 |

| Public Service Loan Forgiveness (PSLF) Buy Back Requests | |
| --- | --- |
| PSLF Buy Back requests decided (*i.e.*, for which the Department of Education has completed processing) during August 1-31, 2025 | 5,600 |
| PSLF Buy Back requests pending as of August 31, 2025 | 74,510 |

Pltf. 0108

Dated: September 15, 2025

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

MICHELLE R. BENNETT
Assistant Branch Director
Federal Programs Branch

/s/ Stephen M. Pezzi
STEPHEN M. PEZZI (D.C. Bar No. 995500)
Senior Trial Counsel
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20005
Tel: (202) 305-8576
Email: stephen.pezzi@usdoj.gov

*Counsel for Defendants*

Pltf. 0109

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

AMERICAN FEDERATION
OF TEACHERS,

      Plaintiff,

    v.

U.S. DEPARTMENT OF EDUCATION,
*et al.*,

      Defendants.

No. 1:25-cv-802-RBW

---

**STATUS REPORT**

Pursuant to the Court's order of October 23, 2025, ECF No. 55, the United States
Department of Education ("ED") and Linda McMahon (in her official capacity as Secretary of
Education) hereby provide the following information, which was provided to undersigned
counsel by the Department of Education:

**I.**    **Ongoing Data Reporting**

    **A.**    **Data Tables**

| Income-Driven Repayment ("IDR") Applications | |
|---|---|
| IDR applications received during November 1-30, 2025 | 157,408[1] |
| IDR applications decided (approved or denied) during November 1-30, 2025 | 245,441[2] |
| IDR applications pending as of November 30, 2025 | 802,730 |
| IDR plan discharges during November 1-30, 2025 | 170[3] |
| -   Discharges under the Income-Based Repayment Plan | 170 |
| -   Discharges under the Original Income Contingent Repayment Plan | 0 |
| -   Discharges under the Pay As You Earn Plan | 0 |

Pltf. 0110

| Public Service Loan Forgiveness ("PSLF") Buyback Applications | |
|---|---|
| PSLF Buyback applications received during November 1-30, 2025 | 3,960[1] |
| PSLF Buyback applications decided (approved or denied) during November 1-30, 2025 | 2,960[2] |
| PSLF Buyback applications pending as of November 30, 2025 | 80,210 |
| PSLF discharges during November 1-30, 2025 | 280[4] |

### B.      Notes to Data Tables

*(1) Applications received.* Defendants agreed to identify the number of IDR and PSLF applications received in a given month. Joint Status Report of October 17, 2025, ECF No. 54 ¶ 13(a), (e). Due to logistical issues related to the government shutdown in October-November 2025, ED was unable to provide hard data for these specific data points for November 2025. For the month of November only, the Department of Justice ("DOJ") has provided estimates for these figures based on data currently available to ED.[1] Defendants have informed undersigned counsel that starting in December, they will provide hard numbers for applications received.

*(2) Applications approved or denied.* Defendants agreed that "if possible," they would provide separate figures for IDR plan application approvals and denials. Joint Status Report of October 17, 2025, ECF No. 54 ¶ 13(c). Defendants also agreed to provide separate figures for PSLF Buyback approvals and denials. *Id.* ¶ 13(g). Due to technical limitations raised by Department staff, the parties are still discussing whether it is possible to provide approval/denial figures for IDR and PSLF, as well as potential workarounds (if any) that might suit Plaintiffs' needs. Accordingly, the parties agree that for this status report, Defendants will provide only the

---

[1] Specifically, DOJ has estimated the number of applications in a given month using the following formula: *Applications in November 2025 = Applications pending as of November 30, 2025 – Applications pending as of October 31, 2025 + Applications decided in November 2025.*

2

Pltf. 0111

total number of IDR and PSLF decisions. After further discussions, the parties will update the Court with proposal(s) to address approvals and denials in future status reports.

*(3) IDR Discharges.* The number of applications decided in a given month will not necessarily line up with the number of loan discharges in that month. A borrower has the opportunity to decline an IDR discharge. As such, when ED notifies IDR borrowers of their discharge eligibility, it provides a two-month opt-out period.

*(4) PSLF Discharges.* In October 2025, ED sent a set of discharges to student loan servicing companies for processing. Many of these discharges were processed in early December 2025, and are not reflected in the November 2025 statistics.

## C.     Correction to August 2025 Report

Defendants' previous status report for August 2025, ECF No. 42 (filed Sept. 15, 2025), did not account for ED's procedural denials of 327,955 applications for individuals who, instead of applying for a specific IDR plan, requested to enroll in the plan with the "lowest monthly payment." After the Eastern District of Missouri enjoined the SAVE Plan, which had envisioned particularly low monthly payments for certain borrowers, the option for "lowest monthly payment" could have meant two possible repayment plans with equal monthly payments, creating an unforeseen ambiguity. In response, ED opted to procedurally deny such applications without prejudice to refiling new applications. These procedural denials were not classified as "decided" in ECF No. 42, but should have been. Accordingly, Defendants respectfully submit the following correction:

- Applications decided in August 2025: 633,596 (previously reported as 305,641)

- Applications pending as of August 31, 2025: 748,311 (previously reported as 1,076,266)

3

## II.     Specific Questions

### A.     The method that the Department of Education used to identify borrowers whose loans are eligible for discharge through the Income-Driven Repayment (IDR) plans.

IDR enrollees become eligible for a loan discharge after reaching a certain number of qualifying months, which may include a mixture of actual monthly loan repayments and/or months subject to a qualifying repayment forbearance or deferment. The word "qualifying" is important, because not all repayment forbearances and deferments count as qualifying progress towards loan forgiveness. *Cf.* 34 C.F.R. §§ 685.209(k)(4), 685.219(c)(2) (identifying specific qualifying forbearances and deferments). ED no longer employs a regularly scheduled process for assessing whether a borrower has reached the qualifying number of months for a discharge.[2] Instead, ED assesses discharge eligibility as follows:

- ED contracts with several loan servicing companies, which as relevant process student loan applications, track the status of existing student loans, and report data to ED.

---

[2] In the past, ED commissioned an online progress-checker tool that automatically tracked how many qualifying months of progress a respective borrower had accrued towards their discharge threshold. On July 10, 2023, ED issued a Final Rule (the "SAVE Plan Final Rule") modifying its criteria for a qualifying forbearance and/or deferment for all income-driven repayment plans. *See Improving Income Driven Repayment for the William D. Ford Federal Direct Loan Program and the Federal Family Education Loan (FFEL) Program*, 88 Fed. Reg. 43820–43905 (July 10, 2023). ED's progress-checker tool was coded to apply the SAVE Plan Final Rule's criteria. However, the SAVE Plan Final Rule simultaneously created the Saving on a Valuable Education (SAVE) Plan, an income-driven repayment plan that was challenged in court. On February 18, 2025, the Eighth Circuit instructed the Eastern District of Missouri to enjoin the entire SAVE Plan Final Rule, including the changes to the criteria for qualifying forbearances and/or deferments for all income-driven repayment plans, not just SAVE. *See Missouri v. Trump*, 128 F.4th 979, 997–98 (8th Cir. 2025) ("The forgiveness provisions undergird the entire SAVE plan and therefore are not severable. Enjoining forgiveness necessitates enjoining the entire rule."). The Eastern District of Missouri entered that injunction two months later. Order of April 14, 2025, *Missouri v. Trump*, No. 4:24-cv-520-JAR (E.D. Mo.), ECF No. 69. Because the accuracy of the progress-checker tool depended on the now-enjoined criteria for qualifying forbearances and deferments, the tool was no longer accurate following the injunction, and ED stopped using it. ED currently has no plans to resume using the tool.

4

Pltf. 0113

- Every month, the loan servicers record when a borrower has accrued progress that month towards loan forgiveness, and report that progress to the National Student Loan Data System ("NSLDS"), a student loan database maintained by ED.

- NSLDS then checks whether borrowers enrolled in IDR plans have reached their particular threshold for a discharge. Currently, NSLDS does not check eligibility on any specific schedule. NSLDS is currently programmed to check eligibility for discharges under the Income-Based Repayment plan, but not any other IDR plans. ED is working on the programming for the other IDR plans, and anticipates that starting in February 2026, NSLDS will check eligibility on a regular basis (every other month).

- NSLDS defines the month when forgiveness becomes effective as the month when the borrower's accrued progress equals the discharge threshold—not the month when the discharge is actually processed. ED understands that there may be a delay between the date a borrower becomes eligible for a discharge and the date ED processes that discharge. During this period, the borrower may end up making excess monthly payments on their loans. As ED previously explained in this litigation, ED reimburses those excess payments after processing the discharge. ECF No. 54 ¶ 9.

**B.** **The number of borrowers whose applications for the Income-Based Repayment plan were denied on or after July 4, 2025, on the ground that the borrower lacked a partial financial hardship.**

9,459.

5

Pltf. 0114

Dated: December 15, 2025

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

MICHELLE BENNETT
Assistant Branch Director

*/s/ Winston Shi*
STEPHEN M. PEZZI (D.C. Bar No. 995500)
Senior Trial Counsel
WINSTON SHI (NY Bar No. 5747068)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20005
202-880-0387
winston.g.shi@usdoj.gov

*Counsel for Defendants*

6

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

AMERICAN FEDERATION
OF TEACHERS, *et al.*,

        Plaintiffs,

v.

U.S. DEPARTMENT OF EDUCATION,
*et al.*,

        Defendants.

No. 1:25-cv-802-RBW

**STATUS REPORT**

Pursuant to the Court's order of October 23, 2025, ECF No. 55, the United States

Department of Education ("ED") and Linda McMahon (in her official capacity as Secretary of

Education) hereby provide the following information, which was provided to undersigned

counsel by the Department of Education:

**I.    Data Tables**

| Income-Driven Repayment ("IDR") Applications | |
|---|---|
| IDR applications received during December 1-31, 2025 | 258,465 |
| IDR applications decided (approved or denied) during December 1-31, 2025 | 277,131 |
| -   Approved | 242,655[1] |
| -   Denied | 34,476 |
| IDR applications pending as of December 31, 2025 | 734,221 |
| IDR plan discharges during December 1-31, 2025 | 3,400 |
| -   Discharges under the Income-Based Repayment Plan | 3,400 |
| -   Discharges under the Original Income Contingent Repayment Plan | 0[2] |
| -   Discharges under the Pay As You Earn Plan | 0[2] |

Pltf. 0116

| Public Service Loan Forgiveness ("PSLF") Buyback Applications | |
|---|---|
| PSLF Buyback applications received during December 1-31, 2025 | 5,090 |
| PSLF Buyback applications decided (approved or denied) during December 1-31, 2025 | 1,930 |
|    -   Approved | 1,690[1][3] |
|    -   Denied | 190[3] |
|    -   Closed without decision due to missing information | 50[3] |
| PSLF Buyback applications pending as of December 31, 2025 | 83,370 |
| PSLF discharges during December 1-31, 2025 | 9,400[4] |

## II.   Notes to Data Tables

*(1) IDR plan applications approved or denied.* Defendants acknowledge that the percentage of IDR plan applications approved (87.560%) is very similar to the percentage of PSLF Buyback applications approved (87.565%). Defendants re-verified and reaffirmed the reported totals. Defendants believe the similar percentages are a coincidence.

*(2) Original ICR and PAYE discharges.* Defendants note that no loans were discharged under either the Income Contingent Repayment ("Original ICR") plan or the Pay As You Earn ("PAYE") plan in both November and December 2025. For the following technical reasons, Defendants have been cancelling loans for Income-Based Repayment ("IBR") borrowers who reached eligibility for cancellation prior to April 2025. However, the Original ICR and PAYE plans remain in effect, and ED reaffirms its commitment to cancel eligible loans under these plans "as long as these plans remain in effect." *See* Order of October 23, 2025 at 2, ECF No. 55.

There are two independent barriers to processing Original ICR and PAYE cancellations at this stage, and ED is working to resolve them. The first is technical and the second is judicial.

2

*First*, as Defendants explained in last month's status report, the National Student Loan Data System ("NSLDS") is "currently programmed to check eligibility for discharges under the Income-Based Repayment plan, but not any other IDR plans. ED is working on the programming for the other IDR plans, and anticipates that starting in February 2026, NSLDS will check eligibility on a regular basis (every other month)." Status Report of Dec. 15, 2025 at 5, ECF No. 58. To clarify, ED expects that the loan servicing companies will resume mailing eligibility letters for Original ICR and PAYE after the NSLDS systems are updated in February. In addition, because ED eligibility letters provide an opt-out period to decline loan forgiveness, ED expects a delay between when eligibility letters are mailed and when cancellations occur. *Id.* at 3.

*Second*, in *Missouri v. Trump*, the U.S. District Court for the Eastern District of Missouri enjoined the SAVE Plan Final Rule, including the revised criteria for a qualifying forbearance and/or deferment for IBR, Original ICR, and PAYE. *See generally id.* at 4 n.2. In response, Defendants focused on processing discharges for borrowers who became eligible for loan cancellation before April 2025, the month the district court expanded its injunction, while evaluating the most effective way to resume discharges for the borrowers who would have become eligible under the SAVE Plan Final Rule criteria after the date of the injunction. Currently, the only cancellations taking place are for IBR borrowers who became eligible before April 2025. The same time limitation would apply to Original ICR and PAYE, but as described above, there are independent technical roadblocks to cancellations under those plans for now.

In December, the parties in *Missouri v. Trump* settled the case on terms that were intended to minimize disruption to the loan discharge process. The parties agreed that the SAVE Plan Final Rule's qualifying forbearance/deferment criteria should be restored, and petitioned the district court to that end. *See* Joint Motion for Entry of Final Judgment at 3, *Missouri v. Trump*,

3

Pltf. 0118

No. 4:24-cv-520-JAR (E.D. Mo. filed Dec. 9, 2025), ECF No. 91. However, the district court's preliminary injunction remains in place, and until the court dissolves that injunction as part of entering final judgment, ED cannot apply the SAVE Plan Final Rule's qualifying criteria to loans that (under those currently-enjoined criteria) would have become eligible for cancellation after April 2025. If and when the relevant part of the injunction is dissolved, ED will be able to begin cancelling loans for all borrowers—regardless of when they became eligible for cancellation— without first having to (for example) re-code its tracking systems to restore the pre-SAVE Plan Final Rule criteria. In addition, given the parties' agreement in *Missouri v. Trump*, it would not make sense for ED to re-code its systems to the old criteria, only for the district court to then grant the joint motion and potentially trigger a further round of re-coding.

*(3) PSLF Buyback applications approved or denied.* Defendants disclose the number of PSLF Buyback approvals and denials for the month of December 2025, subject to the caveats that the PSLF Buyback database is dynamic; approval/denial data is inherently subject to change; and FSA can only see an application's current status, not past statuses. For example, an application might be closed in December because the application package was incomplete, but then reopened and approved in January after the application package is supplemented with the necessary information. FSA would not log the December closure and January approval as separate events in the database. As such, whether the aforementioned application would be categorized as an approval or a denial would depend on the particular day FSA tabulates the approval/denial figures. In plain English, if FSA tabulates approval and denial figures on December 31 and again on January 15, the numbers might be different. Here, FSA pulled approval/denial data several days after December 31 due to the holiday season. FSA does not know what the figures would have been if FSA had pulled the data on December 31.

Pltf. 0119

As with the other PSLF statistics provided by Defendants, the PSLF Buyback approval/denial numbers are rounded.

_(4) PSLF Buyback discharges._ Federal Student Aid does not directly track PSLF Buyback discharges. Instead, FSA receives discharge reports from loan servicing companies, which are the entities that actually implement the discharges. Because the companies report PSLF discharges on a weekly (not daily) basis, it normally takes up to a week for a discharge to be reported to FSA.

Here, Defendants report discharge data in this proceeding roughly two weeks after the end of the month being reported for. As such, a status report for a given month should accurately reflect that month's discharges. However, if there are delays in reporting certain discharges to ED, that may cause inaccuracies in the numbers ED reports here.

Dated: January 14, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

MICHELLE BENNETT
Assistant Branch Director

_/s/ Winston Shi_
STEPHEN M. PEZZI (D.C. Bar No. 995500)
Senior Trial Counsel
WINSTON SHI (NY Bar No. 5747068)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20005
202-880-0387
winston.g.shi@usdoj.gov

_Counsel for Defendants_

5

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| AMERICAN FEDERATION OF TEACHERS, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> U.S. DEPARTMENT OF EDUCATION, *et al.*, <br><br> Defendants. | No. 1:25-cv-802-RBW |

**STATUS REPORT**

Pursuant to the Court's order of October 23, 2025, ECF 55, the United States Department of Education (ED) and Linda McMahon (in her official capacity as Secretary of Education) hereby provide the following information, which ED transmitted to undersigned counsel:

**I.   Data Tables**

| Income-Driven Repayment (IDR) Applications | |
|---|---|
| IDR applications received during January 1-31, 2026 | 260,358 |
| IDR applications decided (approved or denied) during January 1-31, 2026 | 379,702 |
| -   Approved | 325,542 |
| -   Denied | 54,160 |
| IDR applications pending as of January 31, 2026 | 626,412[1] |
| IDR plan discharges during January 1-31, 2026 | 0[2] |
| -   Discharges under the Income-Based Repayment Plan | 0 |
| -   Discharges under the Original Income Contingent Repayment Plan | 0 |
| -   Discharges under the Pay As You Earn Plan | 0 |

| Public Service Loan Forgiveness (PSLF) Buyback Applications | |
| --- | --- |
| PSLF Buyback applications received during January 1-31, 2026 | 5,030 |
| PSLF Buyback applications decided (approved or denied) during January 1-31, 2026 | 2,430 |
| - Approved | 1,980[3] |
| - Denied | 360 |
| - Closed without decision due to missing information | 90 |
| PSLF Buyback applications pending as of January 31, 2026 | 86,520 |
| PSLF discharges during January 1-31, 2026 | 18,160 |

## II.  Notes to Data Tables

*(1) Pending IDR Plan Applications.* The number of applications received and decided are not the only inputs affecting the number of pending applications. For example, when a borrower applies for a new IDR plan while an application they previously filed is pending, the older application is automatically cancelled, but that cancellation is not logged as a denial.

*(2) IDR Discharges.* As previously discussed, ED runs discharge eligibility checks through the National Student Loan Data Service (NSLDS). ED has upgraded NSLDS to check all three of the IBR, Original ICR, and PAYE plans. *See* ECF 60 at 3. In January, ED identified 10,873 IBR borrowers, 10,729 Original ICR borrowers, and 820 PAYE borrowers as eligible for discharges. Those discharges, however, did not *process* in January.

*(3) PSLF Buyback Approvals.* When a borrower files multiple PSLF Buyback requests and one of them is approved, the others are denied, not approved. When a borrower reaches 120 qualifying PSLF payments while their PSLF Buyback request is pending, the request is denied, not approved.

2

### III.    **Corrections**

*(1) Partial Financial Hardship Denials.* Defendants previously reported that 9,459 borrowers' IBR plan applications were denied on or after July 4, 2025, on the ground that the borrower lacked a partial financial hardship. ECF 58 at 5. Defendants re-checked their figures and revise that number to 10,397. Defendants believe that since October 1, 2025, no IBR plan applications have been denied on partial financial hardship grounds, and that the correction stems from a counting oversight.

*(2) December 2025 IDR Denials.* A loan servicer underreported IDR denials for December 2025 by 16,129. Therefore: 293,260 IDR applications were decided that month (previously 277,131), and 50,605 IDR applications were denied (previously 34,476).

Dated: February 13, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

MICHELLE BENNETT
Assistant Branch Director

*/s/ Winston Shi*
STEPHEN M. PEZZI (D.C. Bar No. 995500)
Senior Trial Counsel
WINSTON SHI (NY Bar No. 5747068)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20005
202-880-0387
winston.g.shi@usdoj.gov

*Counsel for Defendants*

3

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

AMERICAN FEDERATION
OF TEACHERS, *et al.*,

        Plaintiffs,

        v.

U.S. DEPARTMENT OF EDUCATION,
*et al.*,

        Defendants.

No. 1:25-cv-802-RBW

### STATUS REPORT

Pursuant to the Court's order of October 23, 2025, ECF 55, the United States Department of Education (ED) and Linda McMahon (in her official capacity as Secretary of Education) hereby provide the following information, which ED provided to undersigned counsel:

### I.    Data Tables

| Income-Driven Repayment (IDR) Applications | |
|---|---|
| IDR applications received during February 1-28, 2026 | 243,258 |
| IDR applications decided (approved or denied) during February 1-28, 2026 | 329,169 |
| -   Approved | 296,118 |
| -   Denied | 33,051 |
| IDR applications pending as of February 28, 2026 | 576,609 |
| IDR plan discharges during February 1-28, 2026 | 0[1] |
| -   Discharges under the Income-Based Repayment Plan | 0 |
| -   Discharges under the Original Income Contingent Repayment Plan | 0 |
| -   Discharges under the Pay As You Earn Plan | 0 |

| Public Service Loan Forgiveness (PSLF) Buyback Applications | |
|---|---|
| PSLF Buyback applications received during February 1-28, 2026 | 4,180 |
| PSLF Buyback applications decided (approved or denied) during February 1-28, 2026 | 2,520 |
| - Approved | 2,040 |
| - Denied | 410 |
| - Closed without decision due to missing information | 70 |
| PSLF Buyback applications pending as of February 28, 2026 | 88,170 |
| PSLF discharges during February 1-28, 2026 | 12,640 |

## II.    Notes to Data Tables

*(1) IDR Discharges.* As previously discussed, every other month, ED runs discharge eligibility checks for the IBR, Original ICR, and PAYE plans through the National Student Loan Data Service (NSLDS). *See* ECF 58 at 5; ECF 61 at 2. The most recent check took place in January. ECF 61 at 2. Discharges from that batch processed in early March.

ED is scheduled to identify the next batch of borrowers in March, after the due date for this status report. ED anticipates that the March batch will include borrowers who became discharge-eligible after April 2025, including borrowers reliant on the criteria for qualifying forbearances and deferments set forth in 34 C.F.R. § 685.209(k)(4)(iv).[1]

*(no further notes; signature block on following page)*

---

[1] For context, NSLDS is coded to apply the § 685.209(k)(4)(iv) criteria set forth in the SAVE Plan Final Rule. As ED previously explained, a combination of legal and technical difficulties prevented ED from using NSLDS to identify borrowers who became eligible for loan discharges in or after April 2025, when the U.S. District Court for the Eastern District of Missouri enjoined the § 685.209(k)(4)(iv) criteria. *See* ECF 60 at 2–4. In January, ED resolved the technical issues. *See* ECF 61 at 2. In March, the district court authorized ED to apply the criteria. *See* Order of March 10, 2026, *Missouri v. Trump*, No. 4:24-cv-520, ECF 102.

Pltf. 0125

Dated: March 16, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

MICHELLE BENNETT
Assistant Branch Director

*/s/ Winston Shi*
STEPHEN M. PEZZI (D.C. Bar No. 995500)
Senior Trial Counsel
WINSTON SHI (NY Bar No. 5747068)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20005
202-880-0387
winston.g.shi@usdoj.gov

*Counsel for Defendants*

3

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

AMERICAN FEDERATION
OF TEACHERS, *et al.*,

        Plaintiffs,

    v.

U.S. DEPARTMENT OF EDUCATION,
*et al.*,

        Defendants.

No. 1:25-cv-802-RBW

**STATUS REPORT**

Pursuant to the Court's order of October 23, 2025, ECF 55, the United States Department of Education (ED) and Linda McMahon (in her official capacity as Secretary of Education) hereby provide the following information, which ED provided to undersigned counsel:

## I.    Data Tables

| Income-Driven Repayment (IDR) Applications | |
|---|---|
| IDR applications received during March 1-31, 2026 | 321,481 |
| IDR applications decided (approved or denied) during March 1-31, 2026 | 424,583 |
| - Approved | 374,572 |
| - Denied | 50,011 |
| IDR applications pending as of March 31, 2026 | 553,966 |
| IDR plan discharges during March 1-31, 2026 | 21,200[1] |
| - Discharges under the Income-Based Repayment Plan | 10,500 |
| - Discharges under the Original Income Contingent Repayment Plan | 9,900 |
| - Discharges under the Pay As You Earn Plan | 800 |

Pltf. 0127

| Public Service Loan Forgiveness (PSLF) Buyback Applications | |
|---|---|
| PSLF Buyback applications received during March 1-31, 2026 | 4,660 |
| PSLF Buyback applications decided (approved or denied) during March 1-31, 2026 | 3,280 |
|    -   Approved | 2,710 |
|    -   Denied | 440 |
|    -   Closed without decision due to missing information | 130 |
| PSLF Buyback applications pending as of March 1-31, 2026 | 89,720 |
| PSLF discharges during March 1-31, 2026 | 10,050 |

## II.    Notes to Data Tables

*(1) IDR Discharge Rounding.* Figures are rounded to the nearest 100.

*(no further notes)*

Dated: April 15, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

MICHELLE BENNETT
Assistant Branch Director

*/s/ Winston Shi*
STEPHEN M. PEZZI (D.C. Bar No. 995500)
Senior Trial Counsel
WINSTON SHI (NY Bar No. 5747068)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20005
202-880-0387
winston.g.shi@usdoj.gov

*Counsel for Defendants*

Pltf. 0128

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

AMERICAN FEDERATION
OF TEACHERS, *et al.*,

Plaintiffs,

v.

U.S. DEPARTMENT OF EDUCATION,
*et al.*,

Defendants.

No. 1:25-cv-802-RBW

## STATUS REPORT

Pursuant to the Court's order of October 23, 2025, ECF 55, the United States Department

of Education (ED) and Linda McMahon (in her official capacity as Secretary of Education)

hereby provide the following information, which ED provided to undersigned counsel:

## I.    Data Tables

| Income-Driven Repayment (IDR) Applications | |
|---|---|
| IDR applications received during April 1-30, 2026 | 444,692 |
| IDR applications decided (approved or denied) during April 1-30, 2026 | 456,594 |
| -    Approved | 401,561 |
| -    Denied | 55,033 |
| IDR applications pending as of April 30, 2026 | 530,295 |
| IDR plan discharges during April 1-30, 2026 | 0[1] |
| -    Discharges under the Income-Based Repayment Plan | 0 |
| -    Discharges under the Original Income Contingent Repayment Plan | 0 |
| -    Discharges under the Pay As You Earn Plan | 0 |

Pltf. 0129

| Public Service Loan Forgiveness (PSLF) Buyback Applications | |
|---|---|
| PSLF Buyback applications received during April 1-30, 2026 | 4,790 |
| PSLF Buyback applications decided (approved or denied) during April 1-30, 2026 | 6,870 |
| - Approved | TBA[2] |
| - Denied | TBA[2] |
| - Closed without decision due to missing information | TBA[2] |
| PSLF Buyback applications pending as of April 30, 2026 | 88,000[3] |
| PSLF discharges during April 1-30, 2026 | 11,500 |

## II.    Notes to Data Tables

(1) IDR cancellations. In March 2026, ED checked for discharge-eligible borrowers using the National Student Loan Data Service. See ECF 62 at 2 & n.1. That check identified 3,600 IBR, 1,400 Original ICR, and 300 PAYE borrowers[1] as discharge-eligible. The numbers are rounded to the nearest hundred. See ECF 63 at 2.

ED encountered delays while validating the data. It was not able to send the final lists to loan servicers until mid-April. Because of the usual waiting period between borrower notifications and discharges, no discharges from the March 2026 batch were processed in April. Loan servicers should be able to process discharges starting in May.

(2) PSLF Buyback decisions. ED plans to produce these statistics but is currently delayed. ED will file a superseding status report once it has the necessary data, which should be next week. Plaintiffs consent.

(3) Pending PSLF Buyback applications. A borrower may receive a Buyback offer only once for a given loan. However, many borrowers have submitted multiple Buyback requests,

---

[1] PAYE borrowers ordinarily should not be eligible for IDR discharges because the PAYE plan is not supposed to cover pre-2007 loans, and provides a 20-year timeline to discharge for non-PSLF borrowers. See 34 C.F.R. § 685.209(b), (c)(4) (eligibility requirements). However, a system error allowed borrowers with pre-2007 loans to enroll in PAYE.

Pltf. 0130

which inflates the number of pending requests. The currently-stated figure of 88,000 pending applications includes duplicate requests.

In past months, such duplicates were resolved at the time of processing: when a borrower received a Buyback offer, ED administratively denied their remaining requests. *See* ECF 61 at 2. Moving forward, ED plans to preemptively identify and remove duplicate requests. Removing duplicates will not alter the substantive analysis ED must conduct for each borrower, or the order in which ED processes requests. ED estimates there are 18,000-19,000 duplicates to be removed.

Dated: May 13, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

MICHELLE BENNETT
Assistant Branch Director

*/s/ Winston Shi*
STEPHEN M. PEZZI (D.C. Bar No. 995500)
Senior Trial Counsel
WINSTON SHI (NY Bar No. 5747068)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20005
202-880-0387
winston.g.shi@usdoj.gov

*Counsel for Defendants*

3

Pltf. 0131

# EXHIBIT 18

# IRS Filing Statistics for Week Ending May 8, 2026

Pltf. 0132

Case 3:26-cv-00543-ART-CSD Document 9-2 Filed 08/06/26 Page 133 of 137

Here's how you know

 **IRS**

# Filing season statistics for week ending May 8, 2026

## 2026 Filing season statistics — individual income tax returns

**Cumulative statistics comparing May 9, 2025, and May 8, 2026.**

| Return/Refund Category | 2025 | 2026 | %Change |
|---|---|---|---|
| Total **returns received** | 145,855,000 | 144,992,000 | -0.6 |
| Total **returns processed** | 143,556,000 | 143,925,000 | 0.3 |
| Total **e-filing returns received** (may not equal subtotals due to rounding) | 139,496,000 | 141,046,000 | 1.1 |
| **E-filing returns received** from tax professionals | 74,896,000 | 75,316,000 | 0.6 |
| **E-filing returns received** from self-prepared | 64,601,000 | 65,730,000 | 1.7 |
| **Web usage, IRS.gov visits** | 351,491,000 | 571,527,000 | 62.6 |
| Total **number of refunds** | 93,569,000 | 99,138,000 | 6.0 |
| Total **amount refunded** | $274.979 billion | $324.757 billion | 18.1 |

Pltf. 0133

Case 3:26-cv-00543-ART-CSD   Document 9-2   Filed 08/06/26   Page 134 of 137

| Return/Refund Category | 2025 | 2026 | %Change |
|---|---|---|---|
| Average **refund amount** | $2,939 | $3,276 | 11.5 |
| Total number of **direct deposit** refunds | 86,937,000 | 99,225,000 | 14.1 |
| Total amount refunded with **direct deposit** | $263.726 billion | $324.744 billion | 23.1 |
| Average **direct deposit** refund amount | $3,034 | $3,273 | 7.9 |

[1] Total refunds issued represents refunds for returns received and processed in 2026 – current year returns only. The number of direct deposit refunds represents refunds for current and prior year returns processed in 2026.

*Page Last Reviewed or Updated: 18-May-2026*

Pltf. 0134

# EXHIBIT 19

Screenshot of Office of Personnel Management Data, https://data.opm.gov/explore-data/analytics/workforce-size-and-composition, accessed August 3 & 4, 2026



Source URL: https://data.opm.gov/explore-data/analytics/workforce-size-and-composition
Accessed August 3, 2026



Source URL: https://data.opm.gov/explore-data/analytics/workforce-size-and-composition
Accessed August 4, 2026

Pltf. 0137